**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| REVOLUTION WIND, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:25-cv-02999-RCL |
| v. | ) | |
| | ) | Hon. Royce C. Lamberth |
| DOUGLAS J. BURGUM, et al., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF GREEN OCEANS' MOTION TO INTERVENE AS**
**DEFENDANT AND MOTION FOR EXTENSION OF TIME**

Roger J. Marzulla, Bar No. 394907
Nancie G. Marzulla, Bar No. 400985
Mollie A. Jackowski, Bar No.
1780535 Marzulla Law, LLC
1150 Connecticut Ave.,
NW Suite 1050
Washington, DC 20036
Tel: (202) 822-6760
roger@marzulla.com
nancie@marzulla.com
mollie@marzulla.com

September 12, 2025                    Attorneys for Green Oceans

i

**Table of Contents**

Table of Authorities....................................................................................................... iii

Table of Abbreviations ................................................................................................. vii

Factual Background ......................................................................................................... 2

    1.    Department of Interior's Recent Repudiation of the Statutory Interpretation Used to Approve the Project ...................................................................................................... 3

    2.    Green Oceans' Interests ......................................................................................... 5

Standard of Review .......................................................................................................... 6

Argument .......................................................................................................................... 7

    1.    Green Oceans Has Legally Protected Interests and Is Entitled to Intervene as of Right.... 7

        A.    Green Oceans Has Standing......................................................................... 8

        B.    Green Oceans Motion Is Timely ...............................................................11

        C.    Green Oceans Has Protectable Interests Relating to the Subject of this Action............11

        D.    An Adverse Decision Will Substantially Impair Green Oceans' Legally Protected Interests ..................................................................................................... 13

        E.    The Government Does Not Adequately Represent Green Oceans' Interests in This Case ........................................................................................................ 14

    2.    In the Alternative, the Court Should Grant Permissive Intervention ................................ 16

    3.    Green Oceans Should Be Permitted to File Its Answer by the Same Deadline as Federal Defendants ................................................................................................................ 18

    4.    Green Oceans Is Entitled to a Brief Extension of Time.................................................... 19

Conclusion ...................................................................................................................... 19

**Table of Authorities**

**Cases**

*Am. Anti-Vivisection Soc'y v. United States Dep't of Agric.*,
  946 F.3d 615 (D.C. Cir. 2020)..........................................................................9

*Am. Soybean Ass'n v. Env't Prot. Agency*,
  No. 20-cv-03190 (RCL), ECF No. 20 (D.D.C. Nov. 13, 2020).............................18

*Aref v. Holder*,
  774 F. Supp. 2d 147 (D.D.C. 2011) ................................................................6, 7

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
  714 F. Supp. 2d 1 (D.D.C. 2010) ....................................................................17

*Arizona v. California*,
  460 U.S. 605 (1983)..........................................................................................7

*Atl. Sea Island Grp. LLC v. Connaughton*,
  592 F. Supp. 2d 1 (D.D.C. 2008). ...................................................................12

*Biden v. United States Internal Revenue Serv.*,
  752 F. Supp. 3d 97 (D.D.C. 2024). ...................................................................8

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,
  344 F. Supp. 2d 108 (D.D.C. 2004). ...............................................................10

*Center for Biological Diversity v. U.S. Department of the Interior*,
  640 F.Supp.3d 59 (2022)..................................................................................15

*Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*,
  100 F.3d 837 (10th Cir. 1996) ........................................................................14

*\*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015)......................................................................8, 11

*District of Columbia v. Potomac Elec. Power Co.*,
  826 F.Supp.2d 227 (D.D.C. 2011). ...................................................................6

*EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998)........................................................................17

*Equal Rts. Ctr. v. Uber Techs., Inc.*,
  525 F. Supp. 3d 62 (D.D.C. 2021). ...................................................................9

*Fisheries Survival Fund v. Jewell*,
  No. 16-CV-2409 (TSC), 2018 WL 4705795 (D.D.C. Sept. 30, 2018).....................9

*Fund For Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003)......................................................................8, 11

*Green Oceans v. United States Department of the Interior*,
  No. 1:24-CV-00141-RCL, 2024 WL 1556005 (D.D.C. Apr. 10, 2024)..............6, 18

*\*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)..........................................................................................8

*Idaho Farm Bureau Fed'n v. Babbitt*,

   58 F.3d 1392 (9th Cir. 1995). ........................................................................................ 14

*John R. Sand & Gravel Co. v. United States*,

   59 Fed. Cl. 645 (2004). ................................................................................................. 14

*Karsner v. Lothian*,

   532 F.3d 876 (D.C. Cir. 2008) ................................................................................... 6, 8

*Klamath Irr. Dist. v. United States*,

   64 Fed. Cl. 328 (2005) ................................................................................................ 14

*Mausolf v. Babbitt*,

   85 F.3d 1295 (8th Cir. 1996) ...................................................................................... 12

*Mova Pharm. Corp. v. Shalala*,

   140 F.3d 1060, (D.C. Cir. 1998)................................................................................8, 11

*Nat'l Tr. for Historic Pres. v. Semonite*,

   No. 17-cv-01574 (RCL), ECF Nos. 24, 26 (D.D.C. Sept. 12, 2017)........................... 18

*Nuesse v. Camp*,

   385 F.2d 694 (D.C. Cir. 1967)................................................................................. 7, 17

*Red Lake Band of Chippewa Indians v. United States Army Corps of Eng'rs*,

   338 F.R.D. 1 (D.D.C. 2021). .......................................................................................11

*Roane v. Leonhart*,

   741 F.3d 147 (D.C. Cir. 2014)...................................................................................... 7

*Sagebrush Rebellion, Inc. v. Watt*,

   713 F.2d 525 (9th Cir. 1983). ..................................................................................... 12

*San Juan Cnty., Utah v. United States*,

   503 F.3d 1163 (10th Cir. 2007) ................................................................................... 12

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,

   331 F.R.D. 5 (D.D.C. 2019).......................................................................................... 7

*SEC v. Prudential Sec. Inc.*,

   136 F. 3d 153 (D.C. Cir. 1998).................................................................................... 8

*Sierra Club v. E.P.A.*,

   292 F.3d 895 (D.C. Cir. 2002)...................................................................................... 8

*Sierra Club v. Van Antwerp*,

   523 F. Supp. 2d 5 (D.D.C. 2007). ................................................................................ 6

*Sw. Ctr. for Biological Diversity v. Berg*,

   268 F.3d 810 (9th Cir. 2001) ...................................................................................... 17

*Trbovich v. United Mine Workers of Am.*,

   404 U.S. 528 (1972)..................................................................................................... 14

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,

   164 F.3d 1080 (8th Cir. 1999) .................................................................................... 17

*Utah Ass'n of Ctys. v. Clinton*,

   255 F.3d 1246 (10th Cir. 2001).................................................................................... 12

*Waterkeeper All., Inc. v. Wheeler*,

330 F.R.D. 1 (D.D.C. 2018) ........................................................................................11, 15

*Wildearth Guardians v. Salazar*,
272 F.R.D. 4 (D.D.C. 2010) ...............................................................................11

**Other Authorities**

Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing
and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects,
90 Fed. Reg. 8363. ...................................................................................... 4

**Rules**

*Fed. R. Civ. P. 24(a)(2). ...........................................................................................11
*Fed. R. Civ. P. 24(b)(2) ...................................................................................... 6, 16
*Fed. R. Civ. P. 24(b)(3). ...................................................................................... 7

**Table of Exhibits**

| Exhibit No. | Description |
| --- | --- |
| Ex. 1 | Declaration of Elizabeth Quattrocki Knight |
| Ex. 2 | Declaration of Richard Hittinger |
| Ex. 3 | Declaration of William Vanderhoop |
| Ex. 4 | Declaration of Barbara Chapman |

**Table of Abbreviations**

**Glossary**

| Abbreviation | Definition |
| --- | --- |
| APA | Administrative Procedure Act |
| BOEM | Bureau of Ocean Energy Management |
| NOAA | National Oceanic and Atmospheric Administration |
| OCSLA | Outer Continental Shelf Lands Act |

Green Oceans moves to intervene as of right as a defendant in this action under Federal Rule of Civil Procedure 24(a)(2), or, alternatively, seeks permissive intervention under Rule 24(b). Green Oceans is a nonprofit dedicated "to protecting the ocean from industrialization, and in particular, to protect Cox Ledge, a unique ocean habitat that supports a plethora of diverse marine life off the coast of Rhode Island."[1]

Green Oceans is also the lead plaintiff in *Green Oceans v. Department of the Interior*, Case No. 1:24-cv-00141-RCL, an Administrative Procedure Act challenge to the Revolution Wind Project. On September 10, 2025, the parties in that case filed a Joint Status Report addressing whether the stop work order affects that case's justiciability. The Court's disposition of the stop work order will determine whether the litigation in the related case continues. Lifting the stop work order currently in place, as Revolution Wind requests, will significantly affect Green Oceans' related case, undermine its mission, cause irreparable harm to its members, and effectively predetermine the review BOEM is now conducting.

Because this case directly affects Green Oceans' organizational mission,[2] Green Oceans seeks intervention of right, or, in the alternative, permissive intervention in this case to protect its interests. Green Oceans meets the requirements for intervention as of right because it has standing, a legally protected interest in the waters and resources affected by the Revolution Wind

---

[1] Ex. 1, Decl. of E. Knight ¶ 1.

[2] *See* Ex. 1, Decl. of E. Knight ¶ 1 ("Our mission is to educate the public about the ocean's ecological importance and to promote its continued health and biodiversity. Our members are like-minded individuals and organizations that share a desire to protect the natural habitat of the ocean from industrialization and to preserve the marine ecosystem, from the smallest plankton to the largest whale. This includes protecting food sources and water supply from contamination by industrialization and from invasive species that are a byproduct of industrialization. Industrial development in the ocean directly interferes with our ability to carry out that mission and harms the interests of our members, who seek to use, enjoy, and protect these marine resources.").

1

Project, and its interests are not adequately represented by the existing parties. In the alternative, Green Oceans satisfies the criteria for permissive intervention, as its defenses raise the same legal and factual questions under OCSLA and the APA already before the Court. Green Oceans also requests leave to file its responsive pleading on the same schedule as the Federal Defendants and asks for an additional five days to respond to Revolution Wind's motion for preliminary injunction.

**Factual Background**

Green Oceans is a Rhode Island–based nonprofit organization formed to protect the ocean, coastal communities, and public health from the harms of large-scale offshore wind development.[3] Its membership includes scientists, educators, doctors, commercial and recreational fishermen, boaters, sailors, bird watchers, whale enthusiasts, the Wampanoag Tribe of Gay Head/Aquinnah, tribal members, local business leaders, veterans, and coastal homeowners, all of whom maintain a deep connection to the coastal waters where the Revolution Wind Project is being built.[4]

On August 22, 2025, BOEM's Director issued a stop work order for the Revolution Wind Project, halting all construction activities until BOEM completes "its necessary review," citing concerns including protection of national security interests and preventing interference with reasonable uses of U.S. waters under the Outer Continental Shelf Lands Act (OCSLA).[5] Green

---

[3] *See* Ex. 1, Decl. of E. Knight ¶ 1-3.
[4] *See* Ex. 1, Decl. of E. Knight ¶ 6 (identifying members, Chris Brown (commercial fisherman), Richard Hittinger (recreational fisherman), William Vanderhoop (charter fishing and whale watching tours), Lauren Knight (recreational sailor), Michael Lombardi (diver and marine scientist), Barbara Chapman (historic property owner), and the Wampanoag Tribe of Gay Head/Aquinnah); Ex. 2, Decl. of R. Hittinger, Ex. 3, Decl. of W. Vanderhoop; Ex. 4, Decl. of B. Chapman.
[5] Department of the Interior, *Director's Order* (Aug. 22, 2025), https://www.boem.gov/sites/default/files/documents/renewable-

Oceans, a Rhode Island-based nonprofit environmental organization, is the lead plaintiff in the related case of *Green Oceans v. Department of the Interior*, Case No. 1:24-cv-00141-RCL, challenging the federal approval of this same Revolution Wind Project, which is currently in the midst of summary judgment briefing on the merits. And on September 2, 2025, Green Oceans filed its motion for summary judgment as directed by the Court.

**1.    Department of Interior's Recent Repudiation of the Statutory Interpretation Used to Approve the Project**

When BOEM approved the Project, it relied on and cited a 2021 Solicitor's Opinion interpreting the "shall ensure" provision in Section 1337(p)(4) of OCSLA to require only a "rational balance" among the various "shall ensure" factors.[6] Applying this balancing test, BOEM acknowledged serious adverse impacts to fishing, the environment, safety, and navigation but treated those impacts as acceptable tradeoffs for wind energy.[7] This unlawful interpretation allowed BOEM to prioritize offshore wind over the commercial fishing uses Congress sought to protect in the Act.

On May 1, 2025, the Interior Department formally withdrew and repudiated the Solicitor's Opinion that BOEM relied on as its statutory authority for approving the Project,

---

energy/Director%26%23039%3BsOrder-
20250822.pdf?VersionId=VO3AWAHsV_kDvT048xf8dG7A.Rsj6HZJ.

[6] Bureau of Ocean Energy Management, *Record of Decision Revolution Wind Farm and Revolution Wind Export Cable Project Construction and Operations Plan* (Aug. 21, 2023) at 5-6, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Revolution-Wind-Record-of-Decision-OCS-A-0486_3.pdf.

[7] *Id.* at 20 (alternative chosen by "striking a reasonable balance between" impacts to varied resources.); *Id.* at 25 ("Today's decision balances the orderly development of OCS renewable energy with the prevention of interference with other uses of the OCS and the protection of the human, marine, and coastal environments. A decision that balances these goals where they conflict and does not hold one as controlling over all others is consistent with the duties required under subsection 8(p)(4) of OCSLA, which requires the Secretary to ensure that approved activity is carried out in a manner that provides for Congress's enumerated goals.").

stating that because legal analysis BOEM relied on "conflicts with the best reading of OCSLA," that interpretation "is hereby withdrawn . . . and any other Departmental action taken in reliance on the now withdrawn M-Opinion 37067, should be re-evaluated in light of this Memorandum."[8]

On January 20, 2025, the President issued a Presidential Memorandum ordered that the Secretary of the Interior, for existing leases on federal lands (which includes the Outer Continental Shelf), "shall conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases," and that no new or renewed "approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects" shall be issued "pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices."[9]

In response to that Presidential Memorandum, the Secretary of the Interior issued a Secretarial Order describing BOEM's prior offshore wind approvals as being "egregious misinterpretations" of the law and that the "prior Department's leadership chose to misapply section [1337(p)(4)] of OCSLA when making decisions to approve . . . offshore wind energy projects," and "[r]ather than recognizing that each section [1337(p)(4)] criterion constitutes an independent, affirmative obligation," the prior Department "operated under the erroneous assumption that it could meet some criteria while ignoring or minimizing others."[10]

---

[8] *See* Off. of the Solicitor, U.S. Dep't of the Interior, Memorandum Opinion on the Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059 (May 1, 2025), https://www.doi.gov/sites/default/files/documents/2025-05/m-37086.pdf.
[9] Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects, 90 Fed. Reg. 8363.
[10] Department of the Interior, *Secretarial Order 3437–Ending Preferential Treatment for Unreliable, Foreign Controlled Energy Sources in Department Decision-Making* (July 29, 2025) at 2-3, https://www.doi.gov/document-library/secretary-order/so-3437-ending-preferential-treatment-unreliable-foreign.

On August 22, 2025, BOEM's Director issued a stop work order for the Project, halting construction to "ensure that all activities authorized under the Outer Continental Shelf Lands Act . . . are carried out in a manner that provides for protection of the environment, among other requirements."[11]

## 2.    Green Oceans' Interests

Green Oceans and its members have been at the forefront of efforts to safeguard Cox Ledge, one of the most important spawning and fishing grounds in southern New England. The organization submitted thousands of signatures supporting the designation of Cox Ledge as a Habitat Area of Particular Concern, filed comments on BOEM's environmental reviews and NOAA's whale protection strategy, and conducted independent research into the impacts of offshore wind development on marine ecosystems and property values.

Green Oceans' members are directly harmed by Revolution Wind and any lift to the Government's work stop order. Commercial fisherman Chris Brown explains that Cox Ledge is "one of the most productive cod grounds in the region," and further turbine work will drive fish from the area and devastate his livelihood.[12] Recreational fisherman Richard Hittinger warns that continued construction will make Cox Ledge permanently unproductive, citing that there are already "no cod or sea bass close to the turbines."[13] Whale-watching and charter operator William Vanderhoop, a member of the Wampanoag Tribe of Gay Head (Aquinnah), testifies that further construction will desecrate sacred viewsheds and destroy traditional fishing grounds.[14]

---

[11] Department of the Interior, *Director's Order* (Aug. 22, 2025), https://www.boem.gov/sites/default/files/documents/renewable-energy/Director%26%23039%3BsOrder-20250822.pdf?VersionId=VO3AWAHsV_kDvT048xf8dG7A.Rsj6HZJ.
[12] Ex. 1, E. Knight ¶ 6.
[13] Ex. 2, Decl. of R. Hittinger ¶ 4-6.
[14] Ex. 3, Decl. of W. Vanderhoop ¶ 5-8.

Recreational sailor Lauren Knight has been forced to reroute her sailing trips because of the Project's lights, noise, and navigational hazards.[15] And historic homeowner Barbara Chapman explains that the installation of additional turbines will permanently degrade the historic Ocean Drive views that give her property national significance.[16] For the Wampanoag Tribe, the Project threatens burial grounds, sacred sites, and cultural landscapes essential to the Tribe's identity, while also placing the North Atlantic right whale—a species of profound cultural and spiritual significance—at heightened risk from construction noise and vessel traffic.[17]

**Standard of Review**

To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), an applicant must demonstrate that the application is timely; that the applicant has a legally protected interest; that the action threatens to impair the interests of the applicant; and that no party to the action adequately represents the applicants interests.[18] The burden of showing inadequate representation is "not particularly onerous" and requires only a minimal showing that representation "may be adequate."[19] The party seeking to intervene must demonstrate Article III standing.[20]

Permissive intervention under Rule 24(b) is also available where the applicant's defenses share a common question of law or fact with the main action[21] and the motion is timely.[22] The

---

[15] Ex. 1, Decl. of E. Knight ¶ 6.

[16] Ex. 4, Decl. of B. Chapman ¶ 6.

[17] Ex. 1, Decl. of E, Knight ¶ 6.

[18] *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008); *see also Green Oceans v. United States Department of the Interior*, No. 1:24-CV-00141-RCL, 2024 WL 1556005, *3 (D.D.C. Apr. 10, 2024).

[19] *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) ("The applicant bears the burden of demonstrating that the plaintiffs will inadequately represent their interests. . . this burden is not onerous.").

[20] *See Green Oceans v. United States Department of the Interior*, No. 1:24-CV-00141-RCL, 2024 WL 1556005, *3 (D.D.C. Apr. 10, 2024).

[21] Fed. R. Civ. P. 24(b)(2); *see Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007).

[22] *See District of Columbia v. Potomac Elec. Power Co.*, 826 F.Supp.2d 227, 233 (D.D.C. 2011).

rule directs courts to consider whether intervention will unduly delay or prejudice the existing parties.[23] Where, as here, intervention will aid the Court by ensuring all affected interests are before it, permissive intervention is proper.[24]

Under Rule 24, the applicant for intervention bears the burden of showing entitlement to intervene, but that burden is not heavy.[25] Courts in this Circuit generally agree that intervention should be granted where practical to ensure all affected interests are represented.[26]

Green Oceans has met the standard for intervention of right and for permissive intervention.

**Argument**

**1.    Green Oceans Has Legally Protected Interests and Is Entitled to Intervene as of Right**

Under the Federal Rules of Civil Procedure,

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[27]

The D.C. Circuit interprets the rule to require that: "'(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate

---

[23] Fed. R. Civ. P. 24(b)(3).

[24] *See, e.g.*, *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 13 (D.D.C. 2019) (granting permissive intervention to tribe because "Indian tribes' 'participation in litigation critical to their welfare should not be discouraged.'" (quoting *Arizona v. California*, 460 U.S. 605, 615 (1983)).

[25] *Aref*, 774 F. Supp. 2d at 172; *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967) (underscoring the need for liberal application of Rule 24(a) to permit intervention).

[26] *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).

[27] Fed. R. Civ. P. 24(a)(2).

representative of the applicant's interests.'"[28] Additionally, the applicant must have Article III standing.[29]

### A.      Green Oceans Has Standing

In the D.C. Circuit, "the standing analysis for intervention as of right" is "equivalent to determining whether the intervenor has a 'legally protected' interest under Rule 24(a)."[30] "The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability."[31]

Green Oceans has associational standing. To establish associational standing, an organization must show that "(a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members."[32] As described above, Green Oceans' members—including Brown, Hittinger, Knight, Vanderhoop, Chapman, and the Wampanoag Tribe of Gay Head Aquinnah—suffer direct injuries to their livelihoods, cultural traditions, and recreational use of the ocean. Protecting ocean health, fisheries, navigation, marine mammals, and cultural resources is the core mission of Green Oceans, making these interests plainly germane.[33] And because Green Oceans seeks only

---

[28] *Karsner v. Lothian*, 532 F. 3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F. 3d 153, 156 (D.C. Cir. 1998)).

[29] *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015); *see also Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998).

[30] *Biden v. United States Internal Revenue Serv.*, 752 F. Supp. 3d 97, 114 n.8 (D.D.C. 2024).

[31] *Crossroads Grassroots Policy Strategies*, 788 F.3d at 316; *see also Sierra Club v. E.P.A.*, 292 F.3d 895, 898–99 (D.C. Cir. 2002).

[32] *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

[33] *See* Ex. 1, Decl. of E. Knight ¶ 1-2, 6.

declaratory and injunctive relief, no individualized proof is required from members for the Court to grant relief, satisfying the third prong.[34]

Green Oceans also has organizational standing in its own right. To establish organizational standing, an organization must make "the same showing required of individuals: an actual or threatened injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by a favorable court decision."[35] Its mission is to protect Rhode Island's coastal waters from industrialization, and Revolution Wind directly frustrates that purpose by degrading Cox Ledge and displacing marine life. Maintaining the stop work order prevents further harm to those interests, making Green Oceans' injury redressable.

Green Oceans' members suffer concrete injuries when Revolution Wind is allowed to construct and operate turbines on Cox Ledge. The project degrades essential and valuable fish and marine habitat, displaces cod and lobster, threatens the critically endangered North Atlantic Right Whale with harmful underwater noise, and creates navigational hazards for commercial and recreational vessels. The Project scars coastal viewsheds and diminishes property values for residents and Tribal members who have cultural and spiritual ties to the seascape. These harms directly impair members' ability to fish, sail, whale-watch, dive, and enjoy Rhode Island's coastline. Courts have long recognized these types of injuries as sufficient for standing.[36] And this Court held that "those who use or depend on the use of the wind farm area and the natural resources contained therein for fishing, navigation, and associated economic and recreational benefits" are within OCSLA's zone of interest and have standing.[37] In addition, "[t]he use or

---

[34] *See Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 81 (D.D.C. 2021).
[35] *Am. Anti-Vivisection Soc'y v. United States Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020).
[36] *Fisheries Survival Fund v. Jewell*, No. 16-CV-2409 (TSC), 2018 WL 4705795, at *5–6 (D.D.C. Sept. 30, 2018).
[37] *Id.*

9

enjoyment of wildlife is a cognizable interest for standing purposes."[38] And when Government action threatens economic and recreational interests—including the "livelihood of [commercial] fishermen"—a justiciable injury in fact exists.[39]

The Stop Work Order has halted alleviated some of Green Oceans' injuries. Construction vessels have left the area, making navigation safer and restoring access to fishing grounds. Pile-driving noise that displaces and endangers whales has ceased, improving conditions for members who rely on opportunities to view and study marine mammals.[40] Further environmental damage and loss of historic viewsheds have paused.[41] If Revolution Wind succeeds in setting aside the Stop Work Order, these harms will immediately resume, causing direct injury to Green Oceans' members. These environmental, cultural, recreational, and economic harms are precisely the type of injuries the D.C. Circuit has recognized as sufficient for Article III standing.[42]

Causation and redressability are also clear. If the Court grants Revolution Wind the relief it seeks and sets aside the stop work order, Green Oceans' members will once again continue to suffer the harms caused by Project construction. Where a suit challenges an agency's decision that was in the intervenor applicant's favor, "it rationally follows [that] the injury is directly

---

[38] *Id.*

[39] *See Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004).

[40] Ex. 3, Decl. of W. Vanderhoop ¶ 1.

[41] Ex. 4, Decl. of B. Chapman ¶ 7–9.

[42] *Fisheries Survival Fund v. Jewell*, No. 16-CV-2409 (TSC), 2018 WL 4705795, *5–6 (D.D.C. Sept. 30, 2018) ("[T]hose who use or depend on the use of the wind farm area and the natural resources contained therein for fishing, navigation, and associated economic and recreational benefits" are injured under OCSLA and "[t]he use or enjoyment of wildlife is a cognizable interest for standing purposes."); *Cape Hatteras Access Pres. All. v. Dep't of Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004) (when Government action threatens economic and recreational interests—including the "livelihood of fishermen"—a justiciable injury in fact has occurred.).

traceable to [plaintiffs'] challenge."[43] By contrast, denying Revolution Wind's request will prevent those harms by keeping the stop work order in place.

**B.    Green Oceans Motion Is Timely**

Green Oceans filed this motion eight days after Revolution Wind filed its Complaint and before any responsive pleadings have been filed and although Revolution Wind has asked for expedited review, granting this motion to intervene will not unreasonably delay resolution of this case. Courts in this Circuit have found that motions to intervene are timely when filed less than two months after the commencement of a suit.[44]

**C.    Green Oceans Has Protectable Interests Relating to the Subject of this Action**

Green Oceans has an "interest relating to the property or transaction that is the subject of the action."[45] The fact that Green Oceans has constitutional standing is "alone sufficient to establish . . . '[its] interest in the property or transaction which is the subject of the action.'"[46] Green Oceans is also "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ."[47]

This inquiry is "not a rigid one," and it focuses on the "'practical consequences' of denying intervention."[48] It is satisfied where the lawsuit seeks "to set aside agency action that

---

[43] *Crossroads*, 788 F.3d at 316.

[44] *See Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018); *Red Lake Band of Chippewa Indians v. United States Army Corps of Eng'rs*, 338 F.R.D. 1, 5 (D.D.C. 2021).

[45] Fed. R. Civ. P. 24(a)(2).

[46] *Fund For Animals, Inc.*, 322 F.3d at 735; *see also Crossroads*, 788 F. 3d at 320 (because the movant "has constitutional standing, it a fortiori has 'an interest relating to the property or transaction which is the subject of the action'" (quoting *Fund For Animals*, 322 F. 3d at 735)); *Mova Pharma*, 140 F. 3d at 1076 (movant "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for the purpose of Rule 24(a)").

[47] Fed. R. Civ. P. 24(a)(2).

[48] *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010) (quoting *Fund for Animals*, 322 F. 3d at 735).

affects a proposed intervenor" so "the proposed intervenor could no longer rely on the agency's announced decision."[49] That is the situation here, where Plaintiff is asking the Court to vacate BOEM's stop-work order and allow construction of the Revolution Wind Project—and the environmental devastation it will cause—to continue.

Green Oceans' interests also arise from the same property and the same transaction at issue in this case. The property is the area of the Outer Continental Shelf occupied by the Revolution Wind Project—waters that Green Oceans' members use for fishing, navigation, recreation, and cultural practices. The transaction is BOEM's approval of Revolution Wind's construction and operations plan, and BOEM's subsequent decision to suspend those approvals through the August 22, 2025 stop work order. Because both Green Oceans and Revolution Wind are contesting the lawfulness of agency action affecting the same project approvals on the same lease area, Green Oceans' interests are directly tied to the subject matter of this case.

Environmental interests, like those represented here by Green Oceans, have been repeatedly recognized as legally protectable interests.[50] Courts have been particularly inclined to find such an interest sufficient where the applicant has a history of advocating or litigating to protect the resource in question.[51]

---

[49] *Atl. Sea Island Grp. LLC v. Connaughton*, 592 F. Supp. 2d 1, 7 (D.D.C. 2008).

[50] *See*, *e.g.*, *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc) ("We think it indisputable that SUWA's environmental concern [in protecting Salt Creek Canyon from the negative impacts of vehicular traffic] is a legally protectable interest."); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001) ("[W]e find persuasive those opinions holding that organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens those goals." (citing *Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th Cir. 1983))).

[51] *See San Juan County*, 503 F.3d at 1199; *Utah Ass'n of Counties*, 255 F.3d at 1252.

Here, Green Oceans and its members have a significant record of protecting marine resources like the North Atlantic Right Whale, the essential habitat of Cox Ledge, recreational and commercial ocean fishing, and the aesthetic interests of historic preservation and open ocean views.[52]

### D.    An Adverse Decision Will Substantially Impair Green Oceans' Legally Protected Interests

"It generally is agreed that in determining whether disposition of the action will impede or impair the movants ability to protect its interest[,] the question must be put in practical terms rather than in legal terms."[53] Here, Green Oceans' environmental, cultural, and aesthetic interests form the gravamen of their pending suit to reverse and set aside the Government's approval of the Revolution Wind Project. The stop-work order has given Green Oceans temporary relief by halting the Project's injury to marine mammals and other endangered animals;[54] the destruction of the irreplaceable Cox Ledge fisheries and benthic habitat;[55] and the impairment of the ocean vistas that are part and parcel of Newport's historic Gilded Age homes.[56] Lifting the stop-work order to allow construction to resume will irreparably impair Green Oceans' protected interests as the Company fires up its pile-drivers and massive construction vessels to continue destroying the ocean environment.

---

[52] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 13-27 (D.D.C.); *see also id*. at 8-13; *id*. at 32-39.
[53] 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1908.2 (3d ed. 2010).
[54] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 13-27 (D.D.C.).
[55] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 8-9 (D.D.C.); *see also id*. at 12-13.
[56] *See*, *e.g.*, *Green Oceans v. United States*, Case No. 1:24-cv-00141-RCL, ECF No. 87-1 at 32-29 (D.D.C.).

**E.    The Government Does Not Adequately Represent Green Oceans' Interests in This Case**

The burden of demonstrating inadequacy of representation is not heavy: according to the Supreme Court, this requirement, is "satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."[57]

Although, as a general matter, "[w]hen applicants seek to intervene as a party on the side of the United States, the government is presumed adequately to represent the applicants' interest," a showing of "adversity of interest" rebuts that presumption.[58] Such "adversity of interest" may exist, for example, where there is a long history of contentious litigation between the applicants for intervention and the government over the same matters at issue in the case.[59] Environmental groups may argue that their interests in protecting specific ecosystems, species, or natural resources are distinct from the broader regulatory or administrative interests of government agencies. This distinction can support their claim for intervention as of right under Rule 24(a)(2).

To qualify for intervention as of right, environmental groups must demonstrate that the disposition of the action may impair or impede their ability to protect their interests. In *Center for Biological Diversity v. U.S. Department of the Interior*, the court recognized that environmental organizations challenging the approval of thousands of applications for permits to drill (APDs) for oil and gas had an interest in preventing environmental harm that could be

---

[57] *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

[58] *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645 (2004).

[59] *See Klamath Irr. Dist. v. United States*, 64 Fed. Cl. 328, 336 (2005); *Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995).

impaired if the permits were upheld.[60] In *Waterkeeper Alliance, Inc. v. Wheeler*, environmental advocacy groups sought to vacate the EPA's approval of a state program regulating coal combustion residuals, which could impede their access to environmental protections.[61]

Green Oceans represents the concrete interests of its members, which include recreational and commercial fishermen, marine scientists, whale watchers, members of the Wampanoag Tribe of Gay Head (Aquinnah), and coastal residents. These members depend on a healthy marine environment that sustains fishing and navigation, provides opportunities to observe and study whales, and protects cultural resources and sacred species such as the North Atlantic right whale. Their livelihoods, cultural traditions, and ability to enjoy Rhode Island's coastal waters turn on the protection of these resources, all of which are directly threatened by the continuation of the Revolution Wind Project.[62]

The Federal Defendants are charged with defending the broad public interest in administering OCSLA and other environmental statutes. That general duty does not encompass the specific, localized harms Green Oceans and its members face from Revolution Wind's construction. Green Oceans represents commercial and recreational fishermen, whale watchers, boaters, and coastal residents who rely on Cox Ledge and surrounding waters for their livelihoods, recreation, and cultural practices. These injuries are unique and concrete: lost access to spawning grounds, reduced catch and revenue, diminished whale watching opportunities, and

---

[60] *Center for Biological Diversity v. U.S. Department of the Interior*, 640 F.Supp.3d 59 (2022)
[61] *Waterkeeper Alliance, Inc. v. Wheeler*, 330 F.R.D. 1 (2018).
[62] *See* Ex. 1, Decl. of E. Knight ¶ 6 (identifying members, Chris Brown (commercial fisherman), Richard Hittinger (recreational fisherman), William Vanderhoop (charter fishing and whale watching tours), Lauren Knight (recreational sailor), Michael Lombardi (diver and marine scientist), Barbara Chapman (historic property owner), and the Wampanoag Tribe of Gay Head/Aquinnah); Ex. 2, Decl. of R. Hittinger, Ex. 3, Decl. of W. Vanderhoop; Ex. 4, Decl. of B. Chapman.

threats to navigation and safety. The Federal Defendants cannot be expected to advance these grassroots, community-based concerns with the same vigor as Green Oceans. Their responsibility to balance competing national energy and policy interests creates an inherent divergence.

Nor can Revolution Wind represent Green Oceans' interests. Revolution Wind's entire goal in this action is to lift the stop work order and proceed with construction and then operation of Revolution Wind. Green Oceans' mission has been to prevent Revolution Wind from degrading the marine environment, harming biodiversity, fishing and navigation interests, and protected species and to ensure that offshore development complies with OCSLA's safeguards and does not sacrifice biodiversity, fisheries, or cultural resources. Without intervention, the specific interests of those most directly affected—local fishermen, mariners, property owners, and those with aesthetic and recreational interests in protected species—will go unheard.

Green Oceans meets the minimal burden of showing that its interests "may be" inadequately represented, and intervention as of right is warranted.

## 2.    In the Alternative, the Court Should Grant Permissive Intervention

In the alternative, the Court should grant Green Oceans permissive intervention because it has met the requirements of Rule 24(b). Under that rule, a would-be party can intervene: "when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[63] In applying this discretionary standard, courts consider whether the applicant has "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of

---

[63] Fed. R. Civ. P. 24(b)(2).

law or fact in common with the main action."[64] This "'inherently discretionary enterprise'"[65] is

not restrictive,[66] and Rule 24(b) "provides basically that anyone may be permitted to intervene if

his claim and the main action have a common question of law or fact."[67]

The first two elements are easily satisfied. Because Green Oceans asserts defenses under

federal statutes already at issue in this case, OCSLA and the APA, and, as discussed above,

Green Oceans has Article III standing, this Court has independent subject matter jurisdiction.

And this motion is timely, as discussed above, because Green Oceans filed its motion eight days

after Revolution Wind's complaint was filed.

The third element—common questions of law and fact—is satisfied. Revolution Wind

claims BOEM exceeded its authority under OCSLA by issuing the August 22, 2025 stop work

order. Green Oceans, as a Defendant, will defend by showing that OCSLA requires BOEM to

ensure offshore projects are carried out with adequate safeguards for safety, the environment, and

other uses of the ocean such as fishing and navigation. Both sides will therefore put before the

Court the same legal issue: the scope of BOEM's authority under OCSLA and whether the

statute allows the agency to act when those safeguards are at risk. The factual issues also overlap.

Both Revolution Wind's claims and Green Oceans' defenses turn on the same project—the

---

[64] *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

[65] *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (*EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)).

[66] *See also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors."); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors"); *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (Rule 24 should be "broadly construed in favor of potential intervenors").

[67] *Nuesse v. Camp*, 385 F. 2d 694, 704 (D. C. Cir. 1967).

Revolution Wind facility—and its effects on the same ocean space and resources, including Cox Ledge, a vital fishing ground and whale habitat.

Without Green Oceans' participation, the Court risks inconsistent rulings on OCSLA compliance. Revolution Wind asks the Court to hold that BOEM acted unlawfully in suspending construction, while Green Oceans, as a Defendant, will defend that BOEM was fulfilling its duty under OCSLA to protect other ocean uses and the environment. Both perspectives are essential for the Court to resolve the same question: whether BOEM complied with OCSLA's substantive requirements. Green Oceans also brings the unique perspective of a local, grassroots organization whose members directly rely on the waters affected by the project for their livelihoods, recreation, and culture.

### 3.    Green Oceans Should Be Permitted to File Its Answer by the Same Deadline as Federal Defendants

Green Oceans seeks leave to file its Answer or other responsive briefing under Federal Rule Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as the Federal Defendants. This motion fully informs the Court and the parties of the nature and basis for Green Oceans' participation, enabling the Court to evaluate intervention without the need for contemporaneous responsive pleading. Courts in this Circuit routinely grant such requests.[68] Aligning Green Oceans' filing deadline with that of the Federal Defendants promotes judicial economy by avoiding premature or duplicative filings.

---

[68] *See, e.g.*, *Green Oceans v. United States Department of the Interior*, No. 1:24-cv-00141-RCL, 2024 WL 1556005, *5 (D.D.C. Apr. 10, 2024) (J. Lamberth) (granting motion to intervene and to defer filing responsive pleading to same date as federal defendant); *Am. Soybean Ass'n v. Env't Prot. Agency*, No. 20-cv-03190 (RCL), ECF No. 20 (D.D.C. Nov. 13, 2020) (granting motion to intervene of right and permitting intervenors to respond to plaintiffs' complaint by the same deadline as federal defendants); *Nat'l Tr. for Historic Pres. v. Semonite*, No. 17-cv-01574 (RCL), ECF Nos. 24, 26 (D.D.C. Sept. 12, 2017) (same).

**4.      Green Oceans Is Entitled to a Brief Extension of Time**

Green Oceans requests a five-day extension of time to respond to Revolution Wind's

motion for preliminary injunction, making its response due September 17, 2025. Good cause

exists for this request. Revolution Wind filed its motion on September 5, 2025, only one day

after initiating this lawsuit. Revolution Wind, LLC did not notify Green Oceans that it had filed

this case—Green Oceans only became aware of the filing by happenstance. Green Oceans moved

promptly to intervene, and requires a short period to coordinate with counsel and prepare a

complete response to assist the Court.

This modest extension will not prejudice any party or disrupt the expedited schedule.

Revolution Wind has asked the Court to hear its motion by September 22, 2025. Granting Green

Oceans until September 17, 2025 leaves the Court ample time to consider full briefing before

that date, while ensuring that Green Oceans' members—who are directly affected by the

outcome—have their interests represented.

**Conclusion**

For the foregoing reasons, Green Oceans requests that the Court grant its motion to

intervene as of right, or, in the alternative, to grant permissive intervention; to grant Green

Oceans leave to file its Answer or other responsive pleading on the same schedule as the Federal

Defendants; and to grant Green Oceans' motion for a brief extension of time to respond to

Revolution Wind's Motion for Preliminary Injunction.

Respectfully submitted,

s/ Roger J. Marzulla
Roger J. Marzulla, Bar No. 394907
Nancie G. Marzulla, Bar No. 400985
Mollie A. Jackowski, Bar No. 1780535
Marzulla Law, LLC
1150 Connecticut Ave., NW

Suite 1050
Washington, DC 20036
Tel: (202) 822-6760
roger@marzulla.com
nancie@marzulla.com
mollie@marzulla.com

September 12, 2025                    Attorneys for Green Oceans