IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REVOLUTION WIND, LLC, )
)
    *Plaintiffs*, )
v. ) Case No.: 1:25-cv-02999-RCL
)
DOUGLAS J. BURGUM *et al.*, )
)
    *Federal Defendants*, )
)

## DECLARATION OF ADAM SUESS

1. My name is Adam Suess. I have been the acting Assistant Secretary for Land and Minerals Management (ASLM) for the Department of the Interior since April 2025.

2. As part of my responsibility as the acting ASLM, I oversee the Bureau of Ocean Energy Management (BOEM) and the Bureau of Safety and Environmental Enforcement (BSEE).

3. In the course of my oversight of BOEM activities, I have been involved in the review of offshore wind leases and projects, which have either been approved and/or are under consideration by BOEM. Regardless of the stage of approval for these offshore wind projects, BOEM has a continuing responsibility to ensure that these activities meet the statutory requirements.

4. BOEM issued a lease to Revolution Wind, LLC's predecessor Deepwater Wind New England in 2013. After a partial assignment in 2020 and a name change, Revolution Wind, LLC, currently holds lease OCS-A 0486. A true and correct copy of Lease OCS-A 0486 is attached as Exhibit A. Revolution Wind initially submitted a Construction and Operations Plan (COP) to BOEM in 2020, and it then submitted an amended COP in April 2021.

5. On August 21, 2023, the then-acting ASLM signed a Record of Decision (ROD), announcing the decision to approve the COP[1] with modifications and setting out initial conditions of approval. A true and correct copy of the ROD with its appendices is attached as Exhibit B. Attached to the ROD as an appendix, is a memorandum with BOEM's discussion of the Outer Continental Shelf Lands Act (OCSLA) 43 U.S.C. § 1337(p)(4).

6. BOEM then issued a letter to Revolution Wind on November 17, 2023, with the final approval and final conditions of COP approval. The COP approval was reissued on April 25, 2024, with corrections. A true and correct copy of the November 17, 2023 letter together with the April 25, 2024, corrected conditions is attached as Exhibit C.

7. In 2024, Revolution Wind communicated to BOEM staff about a series of delays associated with aspects of construction and other issues that prompted BOEM to approve several requests for "variances" that would allow Revolution Wind to take actions that did not conform to conditions of COP approval. For example, BOEM approved a variance allowing Revolution Wind to take an additional year to comply with a condition of approval that required Revolution Wind to either agree with the National Oceanic and Atmospheric Administration (NOAA) on a plan to mitigate the impacts of its project on NOAA's scientific surveys or submit its own plan to do so. Letter from David Diamond, Deputy Chief for Operations, Atlantic Outer Continental Shelf, Office of Renewable

---

[1] The final, approved version of the COP was submitted to BOEM in March 2023, it is available at https://www.boem.gov/renewable-energy/state-activities/revolution-wind.

2

Energy Programs to Ms. Patricia DiOrio, Revolution Wind, LLC, May 3, 2024. A true and correct copy this letter is attached as Exhibit D.[2]

8. BOEM included Conditions of Approval 4.3 and 4.4, requiring Revolution Wind to reach further mitigation agreements with the Department of Defense (n/k/a/ Department of War (DoW)), but BOEM's conditions did not require the concerns to be addressed before construction could begin. See Exhibit C. Thereafter, DoW similarly stated that "[a]dditional mitigation, implemented as part of BOEM's approval of the Construction of Operations Plan, will also be sought by the DoD to de-conflict the [Revolution Wind] Project with national defense interests. Those measures address the following concerns: 1. Coordination between Project Owner and DoD at-sea operators during construction and operation of the Project; 2. DoD efforts to evaluate and mitigate risk from distributed optical fiber sensing and acoustic monitoring equipment deployed as part of the project; and 3. Evaluation and mitigation of risk related to foreign investment." To date, the Department of the Interior has not received any information that any of these national security concerns referenced in this paragraph have been addressed by Revolution Wind. A true and correct copy of the Department of Air Force Agreement is attached as Exhibit E.

9. On January 20, 2025, President Trump issued a Presidential Memorandum entitled, Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects (Presidential Wind Memo). Section 1 of the Presidential Wind Memo

---

[2] Two additional letters approving variances related to other conditions of approval are available, here: https://www.boem.gov/renewable-energy/state-activities/rev0486variance-5105fjuly-2024signed and here: https://www.boem.gov/renewable-energy/state-activities/rev0486variance-5105105fsigned.

3

directs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases for such removal, and submit a report with recommendations to the President." 90 Fed. Reg. 8363 (Jan. 29, 2025).

10. On January 31, 2025, Revolution Wind submitted to the Department of the Interior an annual report regarding its compliance with the approved COP. Based on that report, the concerns about national security expressed by DoW that are referenced in paragraph 8 above were still unaddressed. For example, as of that date, Revolution Wind had not satisfied two National Security Conditions in Sections 4.3 and 4.4 required by the Department of Navy. As of the date of this declaration, the Department of the Interior has not received any information that these requirements have been satisfied and, given how long they have remained pending, the Department has concerns as to whether they will ever be met. Further, Revolution Wind still has not mitigated NOAA's concerns as to the impacts to NOAA's National Marine Fisheries Service (NMFS) surveys as required in Section 6.3 of the COP. Again, the Department has concerns as to whether this requirement will ever be satisfied. A true and correct copy of Revolution Wind's January 2025 annual compliance report is attached as Exhibit F.

11. Between April 2025 and mid-August 2025, I have met numerous times with other federal agencies, such as NOAA, DoW, and the U.S. Environmental Protection Agency, among others, that have expressed their concerns regarding: the adverse environmental impacts of offshore wind projects; the prior lack of responsiveness from BOEM to those concerns in the COP review process up until now; the national security problems posed by offshore wind projects; and the interference that these offshore wind projects cause with other

reasonable uses of the areas where they are sited. For example, NOAA officials have expressed to me that BOEM has not yet sufficiently addressed the project's impacts on Atlantic cod spawning areas and other sensitive habitats, and on NOAA's ability to conduct scientific surveys. Those concerns were set forth in NOAA's October 17, 2022, and March 15, 2023, letters to BOEM. A true and correct copies of these letters are attached as Exhibits G and H.

12. Further, on May 1, 2025, the Acting Solicitor for the Department issued Solicitor's Opinion M-37086, which concluded that a previous Solicitor's Opinion M-37067, issued in 2021, does not, in the Department's view, reflect a permissible interpretation of OCSLA § 8(p)(4). M-37067 was withdrawn and Solicitor's Opinion M-37059, issued in 2020, was reinstated. Pursuant to M-37086, section 8(p) "counsels a Secretary to err on the side of ensuring less interference with reasonable uses." Further, M-37086 directed bureaus and offices within the Department, including BOEM, to re-evaluate any action taken in reliance on M-37067. One of the actions that was taken in accordance with M-37067 was a 2024 change to 30 C.F.R. § 585.102(a). 89 Fed. Reg. 42602 (May 15, 2024). Prior to 2024, that regulation's language was consistent with section 8(p)(4) of OCSLA. However, in 2024, BOEM promulgated a final rule to amend the language to be consistent with the now-withdrawn M-37067. BOEM is currently beginning preparations for a rulemaking that will propose amendments to that provision of the regulations to be consistent with M-37086. A true and correct copy of M-37086 is attached as Exhibit I.

13. Secretary of the Interior Order 3437 was issued on July 29, 2025. Section 5(c) of that order directs the Department of the Interior's Solicitor's Office to consider whether

5

remand is appropriate in any cases challenging Departmental approvals associated with wind projects. A true and correct copy of Secretary's Order 3437 is attached as Exhibit J.

14. BOEM issued the Stop Work Order on August 22, 2025, to assess how Revolution Wind's continued inability to reach a mitigation agreement with NOAA and its apparent continuing inability to reach certain mitigation agreements with DoW, as required in the COP approval, may be impacting or will impact the environment, national security, and other reasonable uses of the waters. The Department has been in touch with NOAA and the DoW to gather more information.

15. In addition, the Department is in the process of undertaking the review of the Revolution Wind lease and COP approval that is called for in Section 1 of the Presidential Wind Memo and Section 5(c) of Secretarial Order 3437, and re-evaluating the decision to approve the COP as called for in M-37086. As part of this ongoing review and reconsideration of the COP approval, the Department may seek remand of the COP approval in separate litigation challenging that COP approval, among other options.

16. The scope of BOEM's August 22nd order applies only to activities on the lease, and not to components of the project outside the lease. Revolution Wind has informed BSEE that it is continuing to perform certain activities on its lease that Revolution Wind has identified as necessary to prevent impacts to health, safety, and the environment, as well as to maintain compliance with conditions of the relevant permits as required by the COP approval conditions.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 12th day of September, 2025

_____
Adam Suess
Acting Assistant Secretary
Land and Minerals Management