IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVOLUTION WIND, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>DOUGLAS J. BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior;<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR;<br><br>MATTHEW GIACONA, in his official capacity as Acting Director of the Bureau of Ocean Energy Management;<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT;<br><br>KENNETH STEVENS, in his official capacity as Principal Deputy Director Exercising the Delegated Authorities of the Director of the Bureau of Safety and Environmental Enforcement; and<br><br>BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT,<br><br>*Defendants*. | Case No.: 1:25-cv-02999-RCL |

**PLAINTIFF REVOLUTION WIND, LLC'S OPPOSITION TO
GREEN OCEANS' MOTION TO INTERVENE**

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| | A. The Project | 2 |
| | B. Green Oceans Case | 3 |
| | C. Green Oceans' Successful Lobbying Against the Project | 4 |
| III. | ARGUMENT | 5 |
| | A. Green Oceans Is Not Entitled To Intervene Of Right | 5 |
| | 1. Any Interest Related to Project Construction that Already Occurred, or Future Project Operation, Is Not at Issue or Redressable Here | 6 |
| | 2. Any Interest Related to the Remaining Construction Is Not Impaired Absent Intervention Here | 8 |
| | 3. Even If There Were a Potential Interest Specific to this Case it Is Adequately Represented by the Federal Government | 10 |
| | B. Green Oceans Is Not Entitled to Permissive Intervention | 11 |
| | 1. Green Oceans' Intervention Would Cause Undue Prejudice and Delay | 11 |
| | 2. Green Oceans' Intervention Would Not Contribute to Just and Equitable Adjudication | 12 |
| | C. If Green Oceans Is Permitted to Intervene, it Should Not Be Permitted to Oppose Revolution Wind's Motion for a Preliminary Injunction | 13 |
| CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*,
   40 F.3d 1275 (D.C. Cir. 1994) ...................................................................................... 5, 10

*\*Ctr. for Biological Diversity v. EPA*,
   274 F.R.D. 305 (D.D.C. 2011) ..................................................................................... 11, 12

*\*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
   340 F.R.D. 1 (D.D.C. 2021) .......................................................................................... 11, 12

*\*D.C. v. Potomac Elec. Power Co.*,
   826 F. Supp. 2d 227 (D.D.C. 2011) ................................................................................ 8, 9

*\*Defs. of Wildlife v. Jackson*,
   284 F.R.D. 1 (D.D.C. 2012), *aff'd in part, appeal dismissed in part sub nom.
   Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013) ..................................... 6, 9

*Dimond v. D.C.*,
   792 F.2d 179 (D.C. Cir. 1986) ............................................................................................ 10

*Env't Integrity Project v. McCarthy*,
   319 F.R.D. 8 (D.D.C. 2016), *aff'd sub nom. Env't Integrity Project v. Pruitt*,
   709 F. App'x 12 (D.C. Cir. 2017) ....................................................................................... 12

*\*In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*,
   704 F.3d 972 (D.C. Cir. 2013) .............................................................................................. 8

*\*Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms &
   Explosives*,
   738 F. Supp. 3d 1 (D.D.C. 2024) ......................................................................................... 9

*New Hampshire v. Holder*,
   293 F.R.D. 1 (D.D.C. 2013) ................................................................................................. 8

*Norfolk S. Ry. Co. v. Solis*,
   915 F. Supp. 2d 32 (D.D.C. 2013) ..................................................................................... 12

*Scotts Valley Band of Pomo Indians v. Burgum*,
   No. 1:25-CV-00958 (TNM), 2025 WL 1178598 (D.D.C. Apr. 23, 2025) .......................... 13

*Sierra Club v. McCarthy*,
   308 F.R.D. 9 (D.D.C. 2015) ............................................................................................... 11

**RULES**

Fed. R. Civ. P. 24(a)(2)...........................................................................................................5

Fed. R. Civ. P. 24(b)(3)..........................................................................................................11

I.      INTRODUCTION

Green Oceans is an anti-offshore wind organization that, for nearly two years, has been litigating claims in this Court challenging federal approvals issued for the Revolution Wind Farm and Revolution Wind Export Cable (together, the "Project"). In a "Director's Order" issued on August 22, 2025 (hereinafter the "Stop Work Order"), the federal Defendants abruptly and unlawfully halted ongoing construction of the Project, which was 80% complete, without notice or hearing. Plaintiff Revolution Wind, LLC ("Revolution Wind") filed this lawsuit seeking to vacate the unlawful Stop Work Order, and promptly moved for a preliminary injunction and stay pending review of the Stop Work Order. The relief Revolution Wind seeks in this action is limited to the Stop Work Order; Revolution Wind is not seeking relief related to the underlying Project approvals. Now, Green Oceans seeks to intervene in Revolution Wind's challenge to the Stop Work Order to delay resolution of Revolution Wind's pending request for a preliminary injunction and stay, threatening significant prejudice to Revolution Wind. Green Oceans is not entitled to intervention.

Green Oceans asserts it must intervene here because this case will adjudicate the Project's approvals, but it will not. A distinct and narrower legal question is before the Court here: whether the Bureau of Ocean Energy Management's ("BOEM's") August 22, 2025 Stop Work Order was unlawful. The propriety of the Project's approvals and the Project's purported impacts on Green Oceans are the subject of Green Oceans' own nearly two-year-old case that is so advanced that Green Oceans has already filed its summary judgment motion. *Green Oceans v. Dep't of the Interior*, Case No. 1:24-cv-00141-RCL (D.D.C.) ("Green Oceans Case"), Dkt. 87. Green Oceans need not participate in this case, nor could its interests in challenging the Project's approvals be impaired here, because the legality of those approvals is not before the Court in this case. Green Oceans admitted as much just last week, signing a Joint Status Report in the Green Oceans Case

1

stating, "[t]he parties agree that Interior's August 22, 2025 stop work order does not at this point have any legal impact on Plaintiffs' claims," *id.*, Dkt. 88—before contradicting itself in the instant Motion.

Even if Green Oceans had a significantly protectible interest in the Stop Work Order (they do not), that interest would be adequately represented by the federal Defendants—with whom Green Oceans is not only aligned but successfully lobbied for that action, as Freedom of Information Act ("FOIA") records recently revealed. Therefore, Green Oceans does not meet the test for intervention of right in *this* case, which is significantly narrower than their pending action. Nor is this a case where permissive intervention is warranted, because Green Oceans' intervention would cause undue prejudice and delay while failing to assist the Court in resolving the narrow legal question at issue here.

Finally, even if Green Oceans were entitled to intervene (they are not), they should not be allowed to belatedly file an opposition to Revolution Wind's pending preliminary injunction motion. Federal Defendants timely filed their opposition on September 8, 2025 and Green Oceans' request is an attempt to delay resolution of Revolution Wind's request for the emergency relief that is necessary to prevent irreparable harm.

## II.   BACKGROUND

### A.   The Project

The Project involves the construction and operation of an approximately 704-megawatt ("MW") commercial-scale offshore wind energy facility with 65 wind turbines, two offshore substations, associated inter-array cabling between the wind turbines, and an export cable that will bring domestically produced, reliable energy to Connecticut and Rhode Island pursuant to five Power Purchase Agreements. Declaration of Paul Murphy ("Murphy Declaration") in Support of Revolution Wind's Motion for Preliminary Injunction and Stay Pending Review ("PI Motion"),

2

Dkt. 9-6, ¶ 8. In reliance on the Project's approvals, construction of the Project has been underway for nearly two years, and is now 80% complete. At the time the Stop Work Order was issued, all of the Project's monopile foundations had been installed, approximately 70% of the wind turbines had been installed and the first offshore substation had been installed. *Id*. ¶ 10. The Project's cable installation was also substantially complete, as its two export cables have been installed, with only connection to the second offshore substation remaining, and more than half of the Project's inter-array cables installed with the remainder currently scheduled to be installed by the end of the year. *Id*. ¶ 12. Furthermore, one of the Project's two offshore substations was fully installed and is prepared to be commissioned, and the Project's second substation, a key component of the construction program, was in the middle of installation at the time of the Stop Work Order. *Id*. ¶ 13.

Revolution Wind has carefully sequenced its construction schedule to account for seasonal weather variations, and has contracted specialized vessels necessary for Project construction. Dkt. 9, PI Mot. at 34-37. These specialized vessels are in limited supply globally and are tightly scheduled, with limited or no availability to work beyond the contracted reservation dates. Even a short-term delay risks the ability to ensure Project completion. *Id.* at 37-40. If the work that had been scheduled for August and September 2025 cannot be completed soon, lack of specialized vessel availability and harsh winter weather will materially delay the Project, significantly risking Project cancellation. *Id.* at 3-4. Revolution Wind also conservatively estimates that the Stop Work Order is currently causing losses of more than $2 million per day to the Project (which are expected to increase significantly with the passage of time). Murphy Decl. ¶¶ 18, 21.

    **B.**     **Green Oceans Case**

Green Oceans filed its challenge to the Project's approvals on January 16, 2024. *Green Oceans v. Dep't of the Interior*, Case No. 1:24-cv-00141-RCL, Dkt. 1. On April 18, 2024, Green

3

Oceans first moved to stay the Project's approvals. *Id.*, Dkt. 26. The Court denied that motion on April 30, 2024. *Id.*, Dkt. 32. On May 14, 2024, Green Oceans then moved for a second stay or preliminary injunction against the Project's construction. *Id.*, Dkt. 35. The Court denied Green Oceans' motion on June 24, 2024. *Id.*, Dkt. 49. Green Oceans filed its motion for summary judgment earlier this month. *Id.*, Dkt. 87. Just last week, on September 10, 2025, Green Oceans signed a Joint Status Report that said, "[t]he parties agree that Interior's August 22, 2025 stop work order does not at this point have any legal impact on Plaintiffs' claims, including with respect to justiciability." *Id.*, Dkt. 88.

### C. Green Oceans' Successful Lobbying Against the Project

Records released in response to a FOIA request show that, on May 2, 2025, Christina Culver, a Green Oceans lobbyist, provided a 68-page report, entitled "Cancelling Offshore Wind Leases," to Interior's Acting Assistant Secretary and Principal Deputy Assistant Secretary for Land and Minerals Management Adam G. Suess (Federal Defendants' declarant in this case). Schneider Decl., Ex. 1, at 3. The email noted a meeting scheduled for May 7, 2025 to discuss the report. *Id.* Mr. Suess replied, "Thank you, Christina. I appreciate it. We'll talk soon." *Id.* at 1-2. That report was circulated by BOEM's Chief of Staff to BOEM's leadership the same day of that meeting. *Id.* at 1. Green Oceans' report specifically discusses the Revolution Wind Project. Moreover, that private meeting with BOEM and discussion of Green Oceans' report occurred a month before Green Oceans released the report to the public on June 3, 2025.[1] After the meeting, in July 2025, Green Oceans told its supporters that, "Our recent, direct communication with the Department of Interior has struck a chord—and we are now more optimistic than ever that they will act to **end**

---

[1] https://www.green-oceans.org/updates-and-events ("On June 3, 2025, Green Oceans released its comprehensive report . . . for consideration by the U.S. Department of the Interior . . . .").

4

**the industrialization of our coastal waters."** Schneider Decl., Ex. 2, at 1 (emphasis in original); *see also* Green Oceans, June 2025 Newsletter[2] (reporting that "Green Oceans leaders" had been "personally" lobbying "top officials at The Department of the Interior, BOEM and Congress"). The next month—during a phase of construction highly sensitive to delay—the federal Defendants issued the Stop Work Order. In a press release, a representative for Green Oceans was quoted as saying, "We are grateful for BOEM's decisive action to halt the construction. This pause validates what we've been saying for two years …."[3]

### III. ARGUMENT

Green Oceans fails to demonstrate entitlement to either intervention as of right or permissive intervention. And Green Oceans' request for an extension to file its own opposition to Revolution Wind's motion for a preliminary injunction, five days after the federal Defendants responded, would cause delay and prejudice to Revolution Wind.

#### A. Green Oceans Is Not Entitled To Intervene Of Right

Federal Rule of Civil Procedure 24(a)(2) permits intervention of right only upon a showing: (1) that the motion to intervene was timely; (2) that the intervenor has a substantial legal interest in the subject matter of the case; (3) that the intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties before the court may not adequately represent the intervenor's interest. *See* Fed. R. Civ. P. 24(a)(2); *Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994).

Green Oceans references a variety of potential interests, but Green Oceans has not

---

[2] https://www.green-oceans.org/campaigns/view-campaign/dHKPLdPpGT4mifIAGEHWwnM8PWZ_QR3sNRPBQ_IeNHtK9-XzNya-iYzrFXFBWkkgaF-gBUNrla6aCA0o_RG0ftLY7OM1pX1n.

[3] https://www.businesswire.com/news/home/20250903221909/en/Green-Oceans-Files-Motion-for-Summary-Judgment-to-Vacate-Federal-Approvals-for-Revolution-Wind.

5

identified any substantial legal interest it has in this case, that is redressable within this action, that would be impaired in the absence of intervention here, and that would not be adequately represented by the Defendants.

### 1. Any Interest Related to Project Construction that Already Occurred, or Future Project Operation, Is Not at Issue or Redressable Here

A prospective intervenor of right must have a substantial interest in the subject matter of the case. This prerequisite is satisfied "not [by] any interest the applicant can put forward, but only [by] a legally protectable one. A legally protectable interest is of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012), *aff'd in part, appeal dismissed in part sub nom. Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013).

Most of Green Oceans' purported interests stem from the unsupported claims[4] underlying Project approvals that are the subject of the Green Oceans Case. *See* Mot. at 8-11. Green Oceans fails to show that its interests will be implicated "by the direct legal operation and effect of the judgment" on the Stop Work Order, as opposed to a judgment on the Project approvals at issue in the separate Green Oceans Case. As an initial matter, any alleged injury flowing from Project construction that has already occurred cannot constitute an interest in this case, because such injuries are not redressable even if the Stop Work Order remains in effect. And Green Oceans

---

[4] Green Oceans reiterates here, as it alleged in the Green Oceans Case, that the Project has "devastated" Cox Ledge and claims "there are already 'no cod or sea bass close to the turbines'" as a result of prior construction. Mot. at 5. Post-construction photography at a nearby, fully-constructed offshore wind farm shows fish and other species thriving around and even on the WTG foundations themselves just a year after construction is completed. https://storymaps.arcgis.com/stories/43138bdb3826449bbc4ce2b3eba49bb0 (photos showing a flourishing ecosystem on and around the WTG foundations, including cod and sea bass).

6

already sought (twice) to halt construction in their own case and did not succeed. *See supra* at 3-4.

As examples, Green Oceans falsely claims that the Stop Work Order alleviated harm by stopping pile-driving and that "[l]ifting the stop-work order to allow construction to resume will irreparably impair Green Oceans' protected interests as the Company fires up its pile-drivers." Mot. at 13. But the Project's pile-driving was completed before the Stop Work Order was issued and will not resume even if the Stop Work Order is stayed or vacated. This fact was apparent on the face of both Revolution Wind's Complaint, *see* Dkt. 1 ¶ 111 ("Monopile foundation installation . . . concluded in August 2025"), and Motion for Preliminary Injunction, *see* Dkt. 9, at 4-5 ("At the time the Stop Work Order was issued, all of the Project's monopile foundations had been installed").[5] Therefore, the outcome of this case has no impact on any interest Green Oceans may claim related to pile-driving (*e.g.,* concern for acoustic impacts to marine mammals).

Similarly, Green Oceans claims that "the stop-work order has given Green Oceans temporary relief by halting . . . the impairment of ocean vistas," Mot. at 13, but that is not accurate either because approximately 70% of the Project's wind turbine generators ("WTGs") are already fully installed, and to the extent they are visible, they will remain so now regardless of the outcome of this case challenging the Stop Work Order. In other words, the Stop Work Order has no impact on visibility.

Nor did the Stop Work Order remedy any Green Oceans members' interest in traversing Cox Ledge or fishing in the Project site without the purported "navigational hazards" of having to sail between WTGs, Mot. at 6, because 100% of the WTG monopiles are installed and remain in

---

[5] Green Oceans' failure to respond to the operative filings, relying on old facts from its own case, reinforces that Green Oceans' intervention here would not be helpful to the Court and, at best, duplicative.

7

place while construction is improperly paused. As these examples prove, any potential interest traceable to Project construction that has already occurred is not a part of the Stop Work Order case and would not be redressable even if it were. Green Oceans cannot intervene as of right on any such basis as movants who lack standing are ineligible to intervene of right. *In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*, 704 F.3d 972, 979 (D.C. Cir. 2013).

Similarly, Green Oceans asserts that its "members suffer concrete injuries when Revolution Wind is allowed to construct *and operate* turbines on Cox Ledge." Mot. at 9 (emphasis added). But, again, the relief Green Oceans seeks in their pending litigation, vacatur of the Project's approvals, would impact Revolution Wind's entitlement to operate the Project once completed.

### 2. Any Interest Related to the Remaining Construction Is Not Impaired Absent Intervention Here

Even to the extent Green Oceans seeks to intervene based on interests in avoiding whatever marginal injuries would be allegedly attributable to the remaining construction, its arguments fare no better. A prospective intervenor must show it "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." *New Hampshire v. Holder*, 293 F.R.D. 1, 3–4 (D.D.C. 2013). That is not the case here, where Green Oceans admits the Stop Work Order offers only "temporary relief" (Mot. at 13), and the Court already considered and rejected Green Oceans' lengthy arguments for enjoining the Project's construction during the pendency of the Green Oceans Case. Green Oceans Case, Dkts. 32, 49. Indeed, as a practical matter, there is no possible outcome of this case concerning the Stop Work Order that will deliver a final adjudication of the claims in the Green Oceans Case.

Moreover, potential impairment can be avoided such that intervention of right is not warranted or necessary when a proposed intervenor has another opportunity make its argument. *E.g.*, *D.C. v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011) ("denying

8

intervention here will not practically impair the proposed intervenors' ability to protect their interests because they will be able to present their critiques of the consent decree to the Court."). Even an amicus brief is often sufficient to avoid impairment. *See id.* Here, Green Oceans previously filed its own lawsuit, actively pursuing the very same interest that it seeks to vindicate here. In that case, Green Oceans already received *two* fuller opportunities to present its arguments regarding the purported impacts of the Project's construction. Green Oceans Case, Dkts. 26 & 35. Green Oceans is not entitled to intervene here just for another bite at that apple. *Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 738 F. Supp. 3d 1, 13 (D.D.C. 2024) (denying amicus's renewed motion to intervene where "the Foundation has already—with leave of the Court—filed an amicus brief, and there is no reason to believe that it would have any argument to add if permitted to participate as a party."). Green Ocean's ability to protect any interests related to future impacts is not impaired in the absence of intervention in this case.[6] This defect alone is a sufficient basis to deny the Motion.

Green Oceans' asserts, without explanation, that absent their intervention here, "the Court risks inconsistent rulings on OCSLA compliance." Mot. at 18. Not only is that wrong, it contradicts their own filing in the Green Oceans Case from just last week. Green Oceans Case, Dkt. 88, at 1 ("[t]he parties agree that Interior's August 22, 2025 stop work order *does not at this point have any legal impact* on Plaintiffs' claims, including with respect to justiciability.") (emphasis added). That filing was made with full awareness that this case had been filed. This case will decide only whether BOEM had the authority to issue the Stop Work Order. There is no

---

[6] This is not an instance concerning the "possibility of future challenge," *see Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 8 (D.D.C. 2012), *aff'd in part, appeal dismissed in part sub nom. Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013); Green Ocean filed its own case almost two years before seeking intervention here, and that case is so far advanced that summary judgment briefing is ongoing.

chance of inconsistent rulings because the cases address separate issues (*e.g.*, should an unlawful Stop Work Order be lifted and should lawfully issued permits be vacated), nor does Green Oceans offer any reason to believe this Court would contradict itself in concurrent, related cases.

### 3. Even If There Were a Potential Interest Specific to this Case it Is Adequately Represented by the Federal Government

While the Motion should be denied based on the defects above, there is an additional reason why Green Oceans is not entitled to intervention of right. Even if Green Oceans had an interest specific to this case, as opposed to the Green Oceans Case, any such interest is indistinguishable from the Defendants' interest. While the burden of showing inadequate representation by existing parties has been described as "not onerous," the prospective intervenor bears the burden. *Dimond v. D.C.*, 792 F.2d 179, 192 (D.C. Cir. 1986). Green Oceans fails to clear that bar because the Motion fails to identify any way in which the federal Defendants' representation even "may be" inadequate—in a way that impacts the narrow legal issues and expected arguments in this case.

As Green Oceans admits, this case concerns "the scope of BOEM's authority under OCSLA . . . ." Mot. at 17. If allowed to intervene, Green Oceans says it "will defend that BOEM was fulfilling its duty under OCSLA." Mot. at 18. There is no daylight between that position and the government's, which shows adequate representation. *See, e.g., Bldg. & Const. Trades Dep't, AFL-CIO*, 40 F.3d at 1282 (affirming denial of intervention of right to a private party where it "offered no argument not also pressed by" the defendant federal agency defending its own actions). Nor does Green Oceans' "unique perspective of a local, grassroots organization" have any bearing on the statutory interpretation of OCSLA. Mot. at 18.

There is additional proof that Green Oceans and the federal Defendants are not only completely aligned but Green Oceans is actively engaging in support of federal Defendants' opposition to the Project. Records released in response to a FOIA request show Green Oceans

10

and/or its lobbyist met with BOEM's leadership—indeed, with the Federal Defendants' declarant in this case—in private in May 2025, Schneider Decl, Ex. 1, at 1-3, to discuss a report containing Green Oceans' proposed roadmap to reverse offshore wind approvals; and this was before that report was made public in June, *id.* at 4-6; then Green Oceans reported to supporters that its "direct communication with the Department of Interior ha[d] struck a chord" in July, Schneider Decl., Ex. 2; before the BOEM issued its Stop Work Order in August, prompting Green Oceans to say that the Stop Work Order "validates what we've been saying."[7] Thus, even if Green Oceans had raised cognizable interests specific to this case, the federal Defendants—with whom Green Oceans has actively engaged in opposition to the Project—adequately represent any such interests.

### B. Green Oceans Is Not Entitled to Permissive Intervention

In evaluating a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts in this District have also considered "whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal question presented." *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015) (quoting *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 313 (D.D.C. 2011)). Even where the criteria for permissive intervention are met, courts have the discretion to deny permissive intervention. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 340 F.R.D. 1, 6 (D.D.C. 2021).

#### 1. Green Oceans' Intervention Would Cause Undue Prejudice and Delay

Green Oceans' intervention would prejudice Revolution Wind by seeking to cause avoidable delay and additional costs. As set forth in Revolution Wind's Motion for Preliminary

---

[7] https://www.businesswire.com/news/home/20250903221909/en/Green-Oceans-Files-Motion-for-Summary-Judgment-to-Vacate-Federal-Approvals-for-Revolution-Wind.

11

Injunction, the Stop Work Order is already imposing costs conservatively estimated at more than $2 million per day. Dkt. 9, PI Mot. at 1. Each additional day of construction delay substantially increases the risk of Project cancellation, and Revolution Wind will suffer irreparable harm if the Stop Work Order is not lifted by September 22. *Id*. at 1. Moreover, Green Oceans' request for five days to file its own opposition to Revolution Wind's preliminary injunction motion, *see* Mot. at 19, exacerbates the prejudice given that federal Defendants timely filed their opposition on September 12, 2025.

### 2. Green Oceans' Intervention Would Not Contribute to Just and Equitable Adjudication

Green Oceans offers nothing to assist the Court in evaluating whether BOEM has the authority to reverse its position and halt a fully-approved, nearly-completed project as it did. *See, e.g., Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 340 F.R.D. at 6 (denying intervention of right and permissively where intervenor seeking to support a government agency in defense of its actions "has failed to demonstrate that it has information or expertise regarding the legal issue in this case."); *Ctr. for Biological Diversity v. U.S. E.P.A.*, 274 F.R.D. at 313 (denying intervention of right and permissively where a prospective intervenor, though knowledgeable about ancillary issues, "[w]ith regard to the[] questions [before the court] offer no more than conclusory assertions that their participation will be helpful." (internal quotation marks and citations omitted)); *Norfolk S. Ry. Co. v. Solis*, 915 F. Supp. 2d 32, 41 (D.D.C. 2013) (denying permissive intervention where proposed intervenors' "positions merely support that of the Secretary without adding anything new, and their interests are speculative at best."). Even if Green Oceans had a claim or defense in common with the federal Defendants, their involvement as an intervenor would be unhelpful given the scope of this action. *See, e.g., Env't Integrity Project v. McCarthy*, 319 F.R.D. 8, 17 (D.D.C. 2016), *aff'd sub nom. Env't Integrity Project v. Pruitt*, 709 F.

12

App'x 12 (D.C. Cir. 2017) ("the Court does not think [Movants] input will be particularly helpful in achieving the just resolution of the narrower procedural question posed here. Movants' desire to inject their substantive concerns into this procedural case, moreover, threatens to delay resolution of the claims pending between the original parties."). Through its two motions for a stay or preliminary injunction and now a summary judgment motion in the Green Oceans Case, Green Oceans has already had multiple opportunities to raise the arguments it would raise here, before the same Court. *Scotts Valley Band of Pomo Indians v. Burgum*, No. 1:25-CV-00958 (TNM), 2025 WL 1178598, at *11 (D.D.C. Apr. 23, 2025) (denying permissive intervention because "the intervenor tribes have filed related cases and they will have their turn to raise concerns in their own cases. For now, fairness to the existing parties in this case counsels against more chefs in the kitchen."). Allowing Green Oceans to intervene in favor of the Stop Work Order would be unwarranted and prejudicial.

### C. If Green Oceans Is Permitted to Intervene, it Should Not Be Permitted to Oppose Revolution Wind's Motion for a Preliminary Injunction

In the event the Court grants Green Oceans' motion to intervene, Revolution Wind respectfully requests the Court deny Green Oceans additional time to file its own opposition to Revolution Wind's Motion for Preliminary Injunction. The federal Defendants have already articulated the opposition position in their brief. Dkt. 17. Given the irreparable harm and existential risk to both the Project and Revolution Wind faced here unless an injunction is granted before September 22, further delay from Green Oceans' delayed opposition brief would significantly prejudice Revolution Wind.

13

## CONCLUSION

For the foregoing reasons, this Court should deny Green Oceans' Motion to Intervene as of right or permissively or, if intervention is granted, the Court should deny Green Oceans' request for time to file its own opposition to Revolution Wind's Motion for Preliminary Injunction.

Dated:  September 16, 2025              Respectfully submitted,

By */s/  Janice M. Schneider*
Janice M. Schneider (D.C. Bar No. 472037)
Stacey L. VanBelleghem (D.C. Bar No. 988144)
Roman Martinez (D.C. Bar No. 1001100)
Devin. M. O'Connor (D.C. Bar No. 1015632)
Rachael L. Westmoreland (D.C. Bar No. 90034032)
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, D.C. 20004
Tel:  (202) 637-2200
Fax:  (202) 637-2201
Email: janice.schneider@lw.com
         stacey.vanbelleghem@lw.com
         roman.martinez@lw.com
         devin.o'connor@lw.com
         rachael.westmoreland@lw.com

*Counsel for Plaintiff Revolution Wind, LLC*