# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REVOLUTION WIND, LLC,      )
)
      *Plaintiff*,     )
)     Case No. 1:25-cv-02999-RCL
v.        )
)     Hon. Royce C. Lamberth
DOUGLAS J. BURGUM, et al.,   )
)
      *Defendants*,   )
)
and      )
)
GREEN OCEANS,     )
)
      *Defendant-Intervenor*.  )

## DEFENDANT-INTERVENOR'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION AND STAY PENDING REVIEW

Roger J. Marzulla, Bar No. 394907
Nancie G. Marzulla, Bar No. 400985
Mollie A. Jackowski, Bar No. 1780535
Marzulla Law, LLC
1150 Connecticut Ave., NW
Suite 1050
Washington, DC 20036
Tel: (202) 822-6760
roger@marzulla.com
nancie@marzulla.com
mollie@marzulla.com

September 17, 2025     Attorneys for Green Oceans

**Table of Contents**

Table of Authorities.................................................................................................................. iii

Glossary ..................................................................................................................................... v

Factual Background .................................................................................................................... 1

Procedural Background............................................................................................................... 3

Standard of Review.................................................................................................................... 3

Argument .................................................................................................................................... 5

    1.    The Company Has Not Exhausted Its Administrative Remedies, So Its APA Case Is Not Likely to Succeed on the Merits ................................................................................. 5

    2.    The Company's Financial Losses, Resulting from Its Own Risky Business Decisions, Are Not the Irreparable Injury Required for Preliminary Injunction................................. 6

    3.    The Company Has Few Equities to Counterbalance the Environmental Devastation Its Construction Is Causing........................................................................................... 10

    4.    The Public Interest Is Best Served by Taking a Good Look at the Project During the Brief and Temporary Term of the Stop Work Order ....................................................... 12

Conclusion ............................................................................................................................... 13

**Table of Authorities**

**Cases**

*Air Transps. Ass'n of Am. v. Export-Import Bank of the U.S.*,
    840 F. Supp. 2d 327 (D.D.C. 2012) ........................................................................... 6

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987) ............................................................................................. 10

*Animal Legal Def. Fund, Inc. v. Vilsack*,
    111 F.4th 1219 (D.C. Cir. 2024) ........................................................................... 9

*Brady Campaign to Prevent Gun Violence v. Salazar*,
    612 F.Supp.2d 1 (D.D.C. 2009) ........................................................................... 10

Classic Cab, Inc. v. District of Columbia,
    288 F. Supp. 3d 218 (D.D.C. 2018) ....................................................................... 7

*Climate United Fund v. Citibank, N.A.*,
    778 F. Supp. 3d 90 (D.D.C. 2025) ......................................................................... 6

*Conservation Force v. Salazar*,
    919 F. Supp. 2d 85 (D.D.C. 2013) ..................................................................... 5, 6

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985) ............................................................................... 3

*Darby v. Cisneros*,
    509 U.S. 137 (1993) ............................................................................................... 5

*Dist. of Columbia v. U.S. Dep't of Agric.*,
    444 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................... 4

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C.Cir.1999) ................................................................................... 5

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ............................................................................... 10

*Lee v. Christian Coal. Of America, Inc.*,
    160 F. Supp. 2d 14 (D.D.C. 2001) ......................................................................... 8

*M.V. Music v. V.P. Recs. Retail Outlet, Inc.*,
    653 F. Supp. 3d 31 (E.D.N.Y. 2023) ..................................................................... 9

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ............................................................................................... 4

*Merriweather v. Lappin*,
    680 F. Supp. 2d 142 (D.D.C. 2010). ...................................................................... 4

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
    708 F. Supp. 2d 527 (D. Md. 2010) ....................................................................... 9

*National Mining Ass'n v. Jackson*,
    768 F. Supp. 2d 34 (D.D.C. 2011). ........................................................................ 7

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,

468 F.3d 826 (D.C. Cir. 2006)............................................................................. 9

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................................. 4, 5

*RFE/RL, Inc. v. Lake*,
  780 F. Supp. 3d 269 (D.D.C. 2025). .......................................................... 6

*Safari Club Int'l v. Salazar*,
  852 F. Supp. 2d 102 (D.D.C. 2012). .......................................................... 8

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011)..................................................................... 4

*Sierra Club v. Jackson*,
  833 F. Supp. 2d 11 (D.D.C. 2012) .............................................................. 4

*Singh v. Berger*,
  56 F.4th 88 (2022)........................................................................................ 4

*Soundboard Ass'n v. FTC*,
  254 F. Supp. 3d 7 (D.D.C. 2017). ............................................................... 7

*TK Servs., Inc. v. RWD Consulting, LLC*,
  780 F. Supp. 3d 269 (D.D.C. 2025). .......................................................... 7

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008)......................................................................................... 4

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985)..................................................................... 9

**Statutes**

5 U.S.C. § 705................................................................................................. 4, 5

**Other Authorities**

89 Fed. Reg. 7633 (Feb. 5, 2024). ................................................................... 10

**Rules**

Fed. R. Civ. P. 65(c) ........................................................................................... 5

**Glossary**

| Abbreviation | Definition |
| --- | --- |
| APA | Administrative Procedure Act |
| BOEM | Bureau of Ocean Energy Management |
| BSEE | Bureau of Safety and Environmental Enforcement |
| COP | Construction and Operations Plan |
| EIS | Environmental Impact Statement |
| NMFS | National Marine Fisheries Service |
| OCSLA | Outer Continental Shelf Lands Act |
| ROD | Record of Decision |

In the guise of a motion for preliminary injunction—and without first pursuing its administrative appeal remedy—Revolution Wind, LLC (the Company) asks this Court (without an administrative record) to order "that the [Stop Work] Order violates the Administrative Procedure Act, the Outer Continental Shelf Lands Act, and Revolution Wind's Fifth Amendment Due Process rights[,]" and that "the [Stop Work] Order is therefore arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory jurisdiction and authority, and short of statutory right."[1] But the preliminary injunction remedy is not the way to invalidate a Government action; that is the purpose of the Administrative Procedure Act (APA).

Due to limited time and to avoid unnecessary repetition, Defendant-Intervenor, Green Oceans, adopts the Government's Opposition to Plaintiff's Motion for Preliminary Injunction,[2] and adds the following points.

**Factual Background**

In March 2021, the Administration launched an unprecedented push to industrialize the Outer Continental Shelf along the Atlantic coast.[3] Labeled as a "bold" initiative,[4] the program includes construction and operation of over 30 massive offshore wind projects stretching from Maine to Virginia. Revolution Wind (the Project), a 65-turbine complex covering 83,798 acres

---

[1] Revolution Wind's Proposed Order in Support of Mot. for Preliminary Injunction at 2, ECF No. 9-7 (Sept. 5, 2025).
[2] Federal Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 17 (Sept. 12, 2025).
[3] *FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs*, (March 29, 2021), https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-offshore-wind-energy-projects-to-create-jobs/.
[4] *Id.*

(about 131 square miles) of federal waters offshore Rhode Island,[5] is one part of an extensive Federal offshore wind program with plans for more than 30 projects along the Outer Continental Shelf.[6] Most will be concentrated off the coasts of New York, Rhode Island, Massachusetts, and Maine, displacing traditional fishing and navigation and disrupting the established marine environment supporting endangered whales, migratory birds, and vital fish stocks.

On August 21, 2023, the Bureau of Ocean Energy Management (BOEM) signed its Record of Decision (ROD) approving construction and operation of the sprawling Revolution Wind Project.[7] BOEM fast-tracked approval of four adjacent offshore wind projects[8] that together span about 430,557 acres of ocean—an area ten times the size of Washington, DC—and represent the largest coordinated transformation of federal waters in U.S. history. While over two dozen additional projects are pending at BOEM,[9] recent Administration developments call the future of offshore wind into question.

On August 22, 2025, BOEM's Director issued a Stop Work Order for the Project, halting all construction activities until BOEM completes "its necessary review," citing concerns

---

[5] Record of Decision, (August 21, 2023) at 3, B-4, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Revolution-Wind-Record-of-Decision-OCS-A-0486_Redacted.pdf.
[6] *FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs*, (March 29, 2021), https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-offshore-wind-energy-projects-to-create-jobs/.
[7] Record of Decision, (August 21, 2023), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Revolution-Wind-Record-of-Decision-OCS-A-0486_Redacted.pdf.
[8] Vineyard Wind (March 2021), South Fork Wind (January 2022), Empire Wind (November 2023), and Sunrise Wind (March 2024).
[9] BOEM, *BOEM Interactive Lease Statistics Dashboard*, https://www.boem.gov/regions/gulf-america-ocs-region/leasing-and-plans/boem-interactive-lease-statistics-dashboard (last visited Sept. 17, 2025).

including protection of national security interests and preventing interference with reasonable uses of U.S. waters under the Outer Continental Shelf Lands Act (OCSLA).[10]

**Procedural Background**

Plaintiff, the Company, filed its Complaint for Declaratory and Injunctive Relief under the Administrative Procedure Act (APA) on September 4, 2025.[11] On September 5, 2025, the Company filed its Motion for Preliminary Injunction, seeking to enjoin the Stop Work Order issued by BOEM.[12] On September 12, 2025, Defendant-Intervenor, Green Oceans, filed a Motion to Intervene and requested an extension of time to respond to the Motion for Preliminary Injunction filed by the Company.[13] On September 17, 2025, the Court granted Green Oceans' Motion to Intervene and ordered Green Oceans to file its opposition to the Company's Motion for Preliminary Injunction by September 17, 2025.[14]

**Standard of Review**

A party seeking a preliminary injunction must demonstrate it meets the following four factors: (1) a substantial likelihood of success on the merits; (2) that they would suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.[15] These factors are considered on a sliding scale, meaning that a strong showing on one factor may compensate for a weaker

---

[10] Department of the Interior, *Director's Order* (Aug. 22, 2025), https://www.boem.gov/sites/default/files/documents/renewable-energy/Director%26%23039%3BsOrder-20250822.pdf?VersionId=VO3AWAHsV_kDvT048xf8dG7A.Rsj6HZJ.
[11] *See* Complaint (Sept. 4, 2025), ECF No. 1.
[12] *See* Mot. for Preliminary Injunction (Sept. 5, 2025), ECF No. 9.
[13] *See* Mot. to Intervene (Sept. 12, 2025), ECF No. 16.
[14] *See* Order Granting Motion to Intervene (Sept. 17, 2025), ECF No. 27.
[15] *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

showing on another.[16] However, the movant must at least demonstrate some likelihood of success on the merits and irreparable harm.[17]

Preliminary injunctions are "extraordinary remed[ies] never awarded as of right."[18] For a plaintiff to be awarded the extraordinary remedy of a preliminary injunction, that plaintiff must make a "clear showing" that it is entitled to such relief.[19] The Supreme Court has held that "it frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."[20]

Preliminary injunctions are intended to maintain the relevant positions of the parties until proceedings on the merits can be held, and they are not meant to provide the full relief sought in the complaint.[21]

Similarly, the APA permits a court reviewing agency actions to "issue all necessary and appropriate process[es] to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."[22] The test for an administrative stay under Section 705 is the same as the test for preliminary injunction.[23] In considering whether to stay agency actions under the APA, the reviewing court should consider that the public is "generally

---

[16] *See Merriweather v. Lappin*, 680 F. Supp. 2d 142, 143 (D.D.C. 2010).
[17] *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20-21 (2008); *Sherley v. Sebelius*, 644 F.3d 388, 392-393 (D.C. Cir. 2011).
[18] *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008).
[19] *Id.* at 22.
[20] *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation and quotations omitted).
[21] *See Singh v. Berger*, 56 F.4th 88, 95 (2022) ("Preliminary injunctions are generally a 'stopgap measure' meant only to 'preserve the relative positions of the parties' until trial." (quoting *Sherley v. Sebelius*, 689 F.3d 776, 781–782 (D.C. Cir. 2012))).
[22] 5 U.S.C. § 705.
[23] *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012); *Dist. of Columbia v. U.S. Dep't of Agric*., 444 F. Supp. 3d 1, 15 (D.D.C. 2020); *Nken v. Holder*, 556 U.S. 418, 433 (2009).

entitled to the prompt execution" of an agency action "that the legislature has made final[,]" so a stay "is not a matter of right, even if irreparable injury might otherwise result to the [plaintiff.]"[24] However, unlike a preliminary injunction, which requires a movant to post a bond, a stay under 5 U.S.C. § 705 has no such requirement.[25]

**Argument**

The Company fails on all four requirements for the grant of preliminary relief.

**1.    The Company Has Not Exhausted Its Administrative Remedies, So Its APA Case Is Not Likely to Succeed on the Merits**

"Under the APA, administrative exhaustion is required when it is mandated by statute or agency rule."[26] This Court has held that the availability of an administrative procedure for appealing an adverse decision is sufficient to establish an exhaustion requirement, which a party aggrieved by an agency action must pursue before suing in federal court under the APA.[27] "In other words, if the APA and/or an agency rule provides for a review process, an aggrieved party must exhaust that process before seeking judicial review."[28] This requirement is aimed at preventing an aggrieved party from circumventing the administrative appeal or review process

---

[24] *Nken v. Holder*, 556 U.S. 418, 433 (2009).

[25] *Compare* 5 U.S.C. § 705 ("the reviewing court . . . may issue all necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings") *with* Fed. R. Civ. P. 65(c) (requiring that the "court may issue a preliminary injunction . . . only if the movant gives a security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.")

[26] *Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 89 (D.D.C. 2013); see also *see also, DSE, Inc. v. United States,* 169 F.3d 21, 26–27 (D.C.Cir.1999) ("[u]nder the [APA], a party can seek judicial review from a final agency action without pursuing an intra-agency appeal unless required to do so by statute or by regulation"); *Darby v. Cisneros,* 509 U.S. 137, 146–47 (1993).

[27] *See Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 90 (D.D.C. 2013).

[28] *Id.*

by simply not partaking in the process, because allowing a party to do so "would defeat the very purpose of the review procedure."[29]

Here, the Stop Work Order issued to Revolution Wind explicitly provided for an administrative procedure to appeal BOEM's decision: "Pursuant to 30 C.F.R. § 585.118, you may appeal this determination. If you elect to file an appeal under 30 C.F.R. § 590.4, your Notice of Appeal must be filed with this office and served on the Associate Solicitor, Division of Mineral Resources, within 60 days of receipt of this letter (see 43 C.F.R. § 4.413)."[30] Having failed to engage in the administrative appeal procedure established by the Secretary, Revolution Wind is precluded from judicial review of BOEM's Stop Work Order—and is more likely to be dismissed than to succeed in its APA challenge.

## 2.     The Company's Financial Losses, Resulting from Its Own Risky Business Decisions, Are Not the Irreparable Injury Required for Preliminary Injunction

A preliminary injunction requires a "clear showing" of irreparable harm, and purely economic loss almost never suffices.[31] Courts recognize only narrow exceptions where financial injury is so severe and so imminent that it threatens the very existence of the movant's business or imposes extreme hardship.[32] Economic losses may also be considered in rare cases where they

---

[29] *Id.*

[30] *See* BOEM, *Director's Order*, https://www.boem.gov/sites/default/files/documents/renewable-energy/Director%26%23039% 3BsOrder-20250822.pdf?VersionId=Y674sNo8zi7jLu3VWRvq2hFb_8KtMldc (Aug. 22, 2025).

[31] *See Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 116 (D.D.C. 2025) ("[O]rdinary economic injuries are usually insufficient to require injunctive relief."); *Air Transps. Ass'n of Am. v. Export-Import Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012) ("It is well settled in this Circuit that economic loss does not, in and of itself, constitute irreparable harm." (internal quotation marks and citations omitted)).

[32] *Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 116 (D.D.C. 2025); *RFE/RL, Inc. v. Lake*, 780 F. Supp. 3d 269, 282 (D.D.C. 2025).

are certain, imminent, and unrecoverable, but even then the harm must still be certain, great, and imminent.[33]

To meet this threshold, the movant bears the burden of providing detailed and concrete evidence that the challenged action will imminently cause financial harm threatening the business's survival.[34] The mere fact that losses may be unrecoverable does not automatically establish irreparable harm; courts demand proof that the injury is both certain and existential. In *National Mining Association v. Jackson*,[35] the court rejected claims that EPA permitting changes would cause "substantial economic losses" because plaintiffs had not shown the losses would "threaten the survival of the business" or were "imminent or certain."[36] Here too, the Company is a multibillion-dollar enterprise; it has made no showing that temporary delay threatens its survival or that of its parent company, Orsted. Rather, the Company offers only generalized assertions of construction delays, increased costs, and contractual penalties. None of these demonstrate imminent financial peril to the company's survival. The Company is a multibillion-dollar enterprise that has already committed billions to this Project. It cannot plausibly contend that a temporary continuation of BOEM's Stop Work Order will destroy its business. The alleged harms raised are precisely the types of ordinary financial injuries courts hold insufficient to justify the extraordinary relief of preliminary injunction.

Second, the Company's alleged harms are entirely self-inflicted. The Company chose to advance construction knowing that multiple lawsuits against the Project's approvals were pending and that BOEM's approvals were under active challenges. At any time from when the

---

[33] *TK Servs., Inc. v. RWD Consulting, LLC*, 780 F. Supp. 3d 269, 281 (D.D.C. 2025).
[34] *Classic Cab, Inc. v. District of Columbia*, 288 F. Supp. 3d 218, 231 (D.D.C. 2018); *Soundboard Ass'n v. FTC*, 254 F. Supp. 3d 7, 13-14 (D.D.C. 2017).
[35] *National Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011).
[36] *Id.* at 53–54.

Project's approvals were under challenge, BOEM, the National Marine Fisheries Service

(NMFS), Bureau of Safety and Environmental Enforcement (BSEE), and the Army Corps of

Engineers could have remanded and or vacated any of the approvals for a number of reasons.

Revolution Wind voluntarily committed billions to a project dependent on legally vulnerable

approvals, attempting to push it past the point of reversal before courts or agencies could

respond. Those business decisions were entirely its own. The fact that the Company faces these

financial harms now, after it voluntarily went ahead and took the risk of construction even

though the approvals could have been (and still could be held) to be arbitrary, capricious, and

contrary to law, does not entitle the Company to such extraordinary relief.

The D.C. Circuit has held that it is "'well-settled that a preliminary injunction movant

does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.'"[37] In

*Safari Club*,[38] the court denied preliminary relief where plaintiffs could have protected their

interests by applying for permits but chose not to do so, finding their alleged injuries were the

product of their own decisions rather than agency action.[39]

Revolution Wind cannot manufacture urgency by racing to construct turbines in the face

of known uncertainty, then cite the costs of its own decisions as justification for extraordinary

relief. Self-inflicted harms of this kind are not irreparable, and they cannot justify an injunction.

Revolution Wind also suggests that it will suffer reputational injury and that construction

delays from the Stop Work Order undermine investor confidence, contractual relationships, or its

standing in the renewable energy market. But reputational harm, like economic harm, must be

---

[37] *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012) (quoting *Lee v. Christian Coal. Of America, Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001)).
[38] *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102 (D.D.C. 2012).
[39] *Id.* at 123–24.

imminent, certain, and severe to justify extraordinary relief. Courts consistently hold that generalized assertions of reputational or goodwill injury are insufficient.[40]

Revolution Wind offers no concrete evidence that a temporary continuation of the Stop Work Order will cause reputational collapse, much less threaten the company's existence. Its assertions rest on speculation that delay might weaken its market position or complicate relationships with counterparties. But as the D.C. Circuit has emphasized, injunctive relief cannot be based on theoretical or speculative injury.[41]

Nor are reputational harms irreparable when they arise from a party's own strategic decisions. Revolution Wind chose to invest in construction and contracts before its approvals were judicially secure. To the extent delay now complicates its relationships or affects its image, that is the predictable consequence of its own gamble. Self-inflicted reputational consequences cannot justify the extraordinary remedy of a preliminary injunction.[42]

Revolution Wind has shown no imminent, non-speculative, existential reputational injury. Its allegations amount to little more than business inconvenience. That is not irreparable harm.

---

[40] *See*, *e.g.*, *M.V. Music v. V.P. Recs. Retail Outlet, Inc.*, 653 F. Supp. 3d 31, 39 (E.D.N.Y. 2023) ("[C]onclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm."); *see also Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 533 (D. Md. 2010) (rejecting irreparable harm argument based on speculative harm to goodwill and reputation).

[41] *See*, *e.g.*, *Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) (holding that pipeline was not entitled to stay of FERC orders based upon unsubstantiated and speculative allegations of recoverable economic injury).

[42] *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1227-8 (D.C. Cir. 2024) (alleged harm supporting a claim for injunctive relief "cannot be a 'self-inflicted harm' or one 'largely of [one's] own making'" (quoting *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006))).

3.    **The Company Has Few Equities to Counterbalance the Environmental Devastation Its Construction Is Causing**

Revolution Wind's asserted harms—lost revenues, project delays, and reduced energy production—are speculative, financial, and long-term. They are also self-inflicted: the Company chose to move forward with construction despite active litigation and the possibility that BOEM's approvals would be reevaluated. Courts consistently hold that economic losses do not outweigh environmental and statutory harms.[43] By contrast, if the Stop Work Order is lifted as the Company asks, the harms from continued construction are immediate—continuing and permanent destruction of Cox Ledge, threatening navigation and safety, and harming marine mammals and fisheries.

The Project is built atop one of the most commercially productive and ecologically valuable fishing grounds along the mid-Atlantic and New England coasts. Cox Ledge is a federally recognized Habitat Area of Particular Concern[44] with extensive "complex benthic habitat that supports several commercially and recreationally important species."[45] It is among the most important spawning grounds for Atlantic cod, as well as lobster, sea scallop, monkfish, summer flounder, and numerous other federally managed species. Cox Ledge's complex habitats—from boulder-strewn seafloor to soft-bottom areas—provide the

---

[43] *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable'"); *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F.Supp.2d 1, 25 (D.D.C. 2009); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 755-56 (9th Cir. 2014).
[44] 89 Fed. Reg. 7633 (Feb. 5, 2024).
[45] Bureau of Ocean Energy Management, *Revolution Wind Farm and Revolution Wind Export Cable Project Final Environmental Impact Statement* (July 2023) at 3.13-75, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Revolution_Wind_FEIS_Vol1-and-2_Redacted.pdf (Final EIS).

structural diversity essential for spawning, juvenile development, and foraging.[46] Fish that spawn and thrive in Cox Ledge disperse throughout New England and the Mid-Atlantic, replenishing stocks and sustaining commercial and recreational fisheries far beyond the immediate area.[47] The pause required by the Stop Work Order has prevented further degradation of this essential fish habitat.

If construction continues, Revolution Wind will cause irreversible damage to marine mammals that depend on these waters, including the endangered North Atlantic Right Whale. Fewer than 360 individuals remain, including only about 70 females capable of reproduction, and the population continues to decline.[48] BOEM and NMFS have warned that the loss of even a single whale per year may prevent recovery.[49] The Right Whale, which migrates through the Project area this fall, is particularly vulnerable and continued construction should the Stop Work Order be lifted would displace them from feeding grounds and expose them to noise and other disturbances at a moment when the population is least able to absorb losses.[50] Stopping construction means these whales will not encounter the activity and underwater noise that can injure and displace them. If construction resumes, those harms will occur immediately and will further weaken an already vulnerable population.

Allowing construction to resume by lifting the Stop Work Order will increase

---

[46] Final EIS at 3.13-1; *id.* at 3.13-2; *id.* at 3.6-4.
[47] Final EIS at 3.6-57–58.
[48] Bureau of Ocean Energy Management and National Marine Fisheries Service , *North Atlantic Right Whale and Offshore Wind Strategy* (Jan. 2024) at 7, https://www.boem.gov/sites/default/files/documents/environment/BOEM_NMFS_NARW_OSW_0.pdf (Right Whale Strategy)
[49] Right Whale Strategy at 8.
[50] Final EIS at 3.15-37.

navigational complexity and safety hazards for commercial, fishing, and recreational vessels operating in and around the lease area. The COP and the Final Environmental Impact Statement (EIS) identify "major adverse impacts" to commercial and recreational fishing, including permanent displacement of fisheries, navigational hazards, gear loss, and diminished safety.[51] The Project's lease area overlaps with historic and economically critical cod, squid, scallop, and mixed-use fishing grounds.[52] With construction paused, vessels are spared from the dangerous conditions that accompany heavy construction activity. If construction resumes, vessel traffic will again obstruct navigation, delay travel, force detours, and increase risks of collisions with construction equipment and turbines.[53] These hazards extend beyond the lease area, affecting nearby ports and offshore routes, and they will make navigation less safe for all who rely on these waters.

The Stop Work Order prevents immediate and irreparable harms that will occur if construction resumes—destruction of benthic habitat at Cox Ledge, displacement of fisheries, heightened risks to navigation and safety, and disruption to already vulnerable whale populations. These impacts, once inflicted, cannot be reversed, and avoiding them now is precisely what tips the balance of equities against lifting the Stop Work Order.

**4.    The Public Interest Is Best Served by Taking a Good Look at the Project During the Brief and Temporary Term of the Stop Work Order**

The Company's headlong rush to complete construction—and to avoid Government oversight of its actions—is not in the public's interest. What is in the public's interest is taking a good look at the environmental, cultural, national defense, fishing, and navigation impacts of the

---

[51] Final EIS at 3.9-81; *id.* at 3.9-61; *id.* at 3.16-16; *id.* 3.16-20-21.
[52] Revolution Wind, LLC, *Construction and Operations Plan: Revolution Wind Farm* (Mar. 1, 2023) at 668; *id.* at 655-658.
[53] Final EIS at 3.16-18.

Project as it now stands to determine whether the Construction and Operations Plan approved years ago is being properly implemented and whether it is—or is not—causing damage to the public seabed on which it is being built.

This Project is not being built on land owned by the Company (as would be the case with onshore facilities), but on seabed and open ocean belonging to the people of the United States. Nor do impacts to the ocean's waters or its creatures remain localized, as land-based projects are. A brief pause—to ensure that the environment is being protected, that other uses of the ocean and seabed, including fishing, are not being impaired, and that radar interference and navigation essential to our national defense are not hindered—is in the public interest, weighing heavily against a grant of the Company's requested preliminary injunction.

**Conclusion**

For the reasons set forth in the Government's Opposition and the additional points above, the Company has not met its burden for the extraordinary remedy of preliminary injunction. The Company's alleged harms are speculative and financial, while the harms from continued construction should the Stop Work Order be lifted—destruction of Cox Ledge, disruption to fisheries, navigation and safety risks, and harm to vulnerable whale populations—are immediate and irreversible. The balance of equities and the public interest therefore weigh decisively against lifting the Stop Work Order. Green Oceans asks this Court to deny the Company's motion.

Respectfully submitted,

s/ Roger J. Marzulla
Roger J. Marzulla, Bar No. 394907
Nancie G. Marzulla, Bar No. 400985
Mollie A. Jackowski, Bar No. 1780535
Marzulla Law, LLC
1150 Connecticut Ave., NW

13

Suite 1050
Washington, DC 20036
Tel: (202) 822-6760
roger@marzulla.com
nancie@marzulla.com
mollie@marzulla.com

September 17, 2025                    Attorneys for Green Oceans