# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF COLUMBIA

REVOLUTION WIND, LLC,

       *Plaintiff*,

    v.

DOUG BURGUM, in his official capacity as
Secretary of the U.S. Department of the Interior;

UNITED STATES DEPARTMENT OF THE
INTERIOR;

MATTHEW GIACONA, in his official capacity
as Acting Director of the Bureau of Ocean Energy
Management;

BUREAU OF OCEAN ENERGY
MANAGEMENT;

KENNETH STEVENS, in his official capacity as
Principal Deputy Director Exercising the
Delegated Authorities of the Director of the
Bureau of Safety and Environmental Enforcement;
and

BUREAU OF SAFETY AND
ENVIRONMENTAL ENFORCEMENT,

       *Defendants*,
and

GREEN OCEANS,

       *Defendant-Intervenor*.

Case No.: 1:25-cv-02999-RCL

Hearing: September 22, 2025,
11:00 AM, Courtroom 15

## REBUTTAL DECLARATION OF EDWARD LEBLANC IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND STAY PENDING REVIEW

Pursuant to 28 U.S.C. § 1746(2), I, Edward LeBlanc, declare as follows:

1.      I am employed by Orsted North America Inc. ("Ørsted") as the Head of Marine Affairs, in which role I direct and oversee a range of activities, such as deconfliction of offshore wind construction and operations with other uses of the seas, compliance with navigational safety requirements, interactions with the U.S. Coast Guard, U.S. Navy, U.S. Air Force, the Department of Defense ("DOD"), and the Federal Aviation Administration, and mitigation of impacts on commercial and recreational fishing, including for the commercial-scale Revolution Wind Farm and Revolution Wind Export Cable (together, the "Project").

2.      I have been employed at Ørsted since August of 2019 as a manager of marine affairs, and have held the position of Head of Marine Affairs since November of 2021.  Prior to joining Ørsted, I served for more than 40 years in military and civilian positions with the U.S. Coast Guard.  I served on multiple sea tours patrolling the Northeastern U.S. fishing grounds.  I also served in a special assignment with the U.S. Navy as the Anti-Submarine Warfare Officer aboard the USS Connole (home-quartered in Newport, Rhode Island), where I actively hunted Russian submarines in the North Atlantic and Mediterranean Sea.   In this role, I was also responsible for the ship's nuclear weapons administration program.  I also served as head of the U.S. Coast Guard search and rescue mission for New England.  I retired from the U.S. Coast Guard with the rank of Commander after 28 years of active military service.  I then served in a civilian position as Chief of the Waterways Management Division, Coast Guard Sector Southeastern New England, from 2003 until my retirement in 2019.  In that role, among other responsibilities, I led the U.S. Coast Guard's review of offshore wind farm proposals off the coast of southeastern New England, including the proposed Cape Wind offshore wind farm and the now-operational Block Island Wind Farm.  Beginning in 2010, I participated in the Department of the Interior's Bureau

of Ocean Energy Management's ("BOEM") Joint Rhode Island/Massachusetts Renewable Energy Task Force. Collectively, I have more than 20 years' experience working on offshore wind deconfliction and navigational safety matters, including more than six years working on the Revolution Wind Project.

3.    I obtained my Bachelor of Science in General Studies from George Washington University's Columbian College of Arts & Sciences and a Master's Degree in Quality Management from the National Graduate School of Quality Management.

4.    As Ørsted's Head of Marine Affairs, I am and have been directly involved in, have directed and overseen, and am and have been otherwise aware of numerous aspects of the Project, including: Project layout; coordination with the U.S. Navy, U.S. Air Force, and DOD regarding Project design, construction, and operations; permitting and regulatory requirements from the U.S. Coast Guard and the Federal Aviation Administration; compliance with navigational safety requirements; communication with the maritime community including through weekly notices of Project construction activities; and mitigation of Project impacts on commercial and recreational fishing.

5.    I have reviewed the August 22, 2025 Order issued by the Acting Director of BOEM to Revolution Wind, LLC ("Revolution Wind") "to halt all ongoing activities related to the Revolution Wind Project on the outer continental shelf" and to "not resume activities until BOEM informs [Revolution Wind] that BOEM has completed its necessary review" (the "Stop Work Order"). I have also reviewed the Federal Defendants' Opposition to Revolution Wind's Motion for Preliminary Injunction, as well as the declaration of the Department of the Interior's Acting Assistant Secretary and Principal Deputy Assistant Secretary for Land and Minerals Management Adam G. Suess ("Suess Declaration") and the exhibits attached to that declaration.

6.    I am personally familiar with the Project's development history, its permitting, including compliance with BOEM's Conditions of Construction and Operations Plan Approval ("COP Conditions") referenced in the Suess Declaration, its interactions with the DOD and its agencies, and the ongoing and future impacts of the Stop Work Order on the Project if not enjoined.

7.    I execute this Declaration in support of Revolution Wind's Reply in Support of its Motion for a Preliminary Injunction and Stay Pending Review in this case based on my personal knowledge of the matters referred to herein and, if called upon to do so, could and would testify truthfully thereto.  I am over 18 years of age and competent to testify about the matters set forth herein.

8.    According to Mr. Suess, as of January 31, 2025, "Revolution Wind had not satisfied two National Security Conditions in Sections 4.3 and 4.4. [of the COP Conditions] required by the Department of Navy."  Suess Decl. ¶ 10.  In response, I provide the following summary and information regarding Revolution Wind's compliance with these COP Conditions, and ongoing coordination with DOD and the Department of the Navy.[1]

COP Condition 4.3 Regarding Distributed Fiber-Optic Sensing Technology

9.    With respect to Mr. Suess's statements regarding COP Condition 4.3 in paragraphs 8 and 10 of his Declaration, COP Condition 4.3 requires: "To mitigate potential impacts on the Department of the Navy's (DON's) operations, the Lessee [Revolution Wind] must coordinate with the DOD/DON on any proposal to use distributed fiber-optic sensing technology as part of the Project or associated transmission cables. The DON point-of-contact for coordination is Matthew Senska; matthew.senska@navy.mil; 571-970-8400."  Suess Decl., Ex. C at 31, Dkt. 17-4 (COP Condition 4.3).  Revolution Wind complied with this condition by coordinating with the

---

[1] The Department of the Navy is referred to as the U.S. Navy or the "DON".

DOD and U.S. Navy on this topic. I provide the following summary of this coordination based on my direct involvement and my supervision of employees and consultants acting on behalf of Revolution Wind at my direction.

10.    In describing the mitigation measures resulting from national security consultations, BOEM's Final Environmental Impact Statement ("FEIS") for the Project noted that "[d]istributed fiber-optic sensing technology proposed for the Project or associated transmission cables would be reviewed by the DOD to ensure that distributed fiber-optic sensing technology is not used to detect sensitive data from DOD activities, to conduct any other type of surveillance of U.S. government operations, or to otherwise pose a threat to national security."[2] I understand that there has been concern on the U.S. Navy's part that certain distributed fiber-optic sensing technology, referred to as "Distributed Acoustic Sensing," may be used to detect nearby vessel activities or other operations. Mindful of this concern, and after consultation with DOD and the U.S. Navy, including the Director of the Navy's Seafloor Cable Protection Office, Distributed Acoustic Sensing capability, which could be a component of distributed fiber-optic technology, is *not* incorporated into the Revolution Wind export and array cables. Rather, the Revolution Wind export and array cables only use "Distributed Temperature Sensing" systems, which monitor the internal temperature of the cable itself, and can be used to identify, for example, locations where the cable has become unburied (which could be evidenced by a cold spot), but cannot be used to detect nearby vessel activities.

---

[2] BOEM, Revolution Wind Farm and Revolution Wind Export Cable Project Final Environmental Impact Statement at 3.17-44 (July 2023), available at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Revolution_Wind_FEIS_Vol1-and-2_Redacted.pdf.

11.     The distributed fiber-optic sensing systems for the Project's export cable and array cables are capable of Distributed Temperature Sensing only, and are not capable of Distributed Acoustic Sensing.

12.     On May 8, 2024, Revolution Wind sent a letter via email to the U.S. Navy point of contact identified in COP Condition 4.3, Matthew Senska, noting that the Project "utilizes distributed fiber-optic sensing equipment," and attaching five specifications documents for the hardware and software used in the distributed fiber-optic sensing system in the Project's cables, totaling over 300 pages.  Attached to this Declaration as Exhibit 1 is a true and correct copy of Revolution Wind's May 8, 2024 letter and transmittal email.  This letter was sent to the U.S. Navy several months before inter-array cable installation began (in August 2024) and export cable installation began (in October 2024) for the Project.  The cable specifications included as attachments to the letter show that the distributed fiber-optic sensing system in the Project's export cable and array cables is capable of Distributed Temperature Sensing technology only, not the Distributed Acoustic Sensing technology as to which I understand the U.S. Navy has previously expressed concerns.

13.     In the communications that Revolution Wind employees and consultants have had with the U.S. Navy on this topic, the U.S. Navy has not expressed any concerns over the use of Distributed Temperature Sensing technology for the Revolution Wind export cable.  In the cover email for the May 8, 2024 letter, the Compliance Manager on my staff requested that Mr. Senska "[p]lease advise if any additional information is requested to satisfy this condition [4.3]".  Ex. 1 at 1.  And in the letter itself, my colleague asked for Mr. Senska to contact Revolution Wind "if any additional coordination with the DOD/DON is required with regards to the use of this equipment." Ex. 1 at 3.  No response was received by Revolution Wind.  In October 2024, the Department of

the Interior's Bureau of Safety and Environmental Enforcement ("BSEE") (which had also been informed of the cables' Distributed Temperature Sensing system) authorized Revolution Wind to proceed with export cable installation. A true and correct copy of BSEE's authorization is attached as Exhibit 2.

14.    In the Revolution Wind 2024 Annual Certification of Compliance, dated January 31, 2025, which is Exhibit F to the Suess Declaration, Dkt. 17-7, Revolution Wind provided information to BOEM regarding this coordination with the U.S. Navy under COP Condition 4.3 (on PDF page 22):

> "[Revolution Wind] submitted information regarding DFOS equipment used for Revolution Wind to Matthew Senska via email on May 8, 2024. [Revolution Wind] requested that Mr. Senska advise the Project if additional information is requested and no request for additional information was received."[3]

15.    In the time period since submittal of the Annual Certification of Compliance on January 31, 2025 and up until the Suess Declaration was filed in this case on September 12, 2025, the Department of the Interior had not asked for additional information from Revolution Wind regarding satisfaction of COP Condition 4.3. COP Condition 4.3 does not require Revolution Wind to "to reach further mitigation agreements" with DOD, contrary to the statement in Suess Declaration paragraph 8.

16.    In March 2025, during discussions related to another COP Condition, a different contact at the U.S. Navy asked the Compliance Manager on my staff, "[i]s there fiber-optic monitoring cable also being installed with the transmission cables?" A true and correct copy of

---

[3] Exhibit F to the Suess Declaration was filed under seal. The text referenced here, which was submitted by Revolution Wind to the Department of the Interior, is not confidential.

March 2025 email communications between representatives of Ørsted and the U.S. Navy is attached as Exhibit 3. The Compliance Manager responded by confirming "[t]here are some fiber-optic monitoring components to the cables" and noting that this information had previously been provided to the U.S. Navy in May 2024; in response, the U.S. Navy representative stated, "appreciate the feedback." Ex. 3 at 1. To date, the U.S. Navy has not requested any additional information from Revolution Wind regarding the Project's use of fiber-optic monitoring components or expressed any concerns to Revolution Wind with the Project's use of this equipment as specified in Revolution Wind's May 8, 2024 letter and technical specifications sent to the U.S. Navy.

COP Condition 4.4 Regarding Electromagnetic Emissions for Survey Activities

17.    With respect to Mr. Suess's statements regarding COP Condition 4.4 in paragraphs 8 and 10 of his Declaration, Condition 4.4 requires: "Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee [Revolution Wind] must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 days of entering into the agreement." Dkt. 17-4 at 31 (COP Condition 4.4).

18.    In 2022, Ørsted's consultant began coordination with the U.S. Navy regarding a potential agreement relating to electromagnetic emissions from survey activities in connection with another offshore wind project (approved before and located in the vicinity of the Revolution Wind Project). In an email on January 25, 2023 to Ørsted's consultants, Mr. Senska of the U.S.

Navy noted that "I looked into this with the Navy team and we're not anticipating much potential for negative effects from survey activities. The likely outcome is requesting a notification when conducting surveys or maybe a schedule for survey activities planned." A true and correct copy of an email exchange between Ørsted's consultants and a U.S. Navy representative between January 2023 and October 2024 is attached as Exhibit 4. During a phone conference on January 25, 2023 that I participated in, Mr. Senska stated that survey activity for a different Ørsted offshore wind project using the same survey technology as the Revolution Wind Project was unlikely to be a concern, and that notifications regarding survey activities will likely be sufficient for the U.S. Navy's awareness of Ørsted's activities.

19. Following this discussion, on February 6, 2023, Ørsted's consultant sent the U.S. Navy (Mr. Senska) a draft agreement between DOD and Ørsted (with me as the planned signatory) to satisfy the obligation to coordinate electromagnetic emissions associated with survey activities with the appropriate command headquarters. Ex. 4 at 7-8.[4] For efficiency, the agreement was proposed to cover all of Ørsted's U.S. offshore wind projects, specifically including the Revolution Wind Project. Under the terms of the draft agreement, Ørsted notifies the public of its activities, including DOD and other federal, state, and local authorities, through its Mariners' Briefings and agrees to share forecasts of survey activity with DOD and the appropriate command headquarters. Ex. 5 at 3.

20. Ørsted's consultant followed up with the U.S. Navy regarding the draft agreement on February 21, March 27, and May 1, 2023. Ex. 4 at 5-7. On May 2, 2023, Mr. Senska of the U.S. Navy responded that "[t]his looks pretty straight forward on a quick read" and stated, "I'll

---

[4] A true and correct copy of the draft agreement regarding notification of survey activities shared with the U.S. Navy on February 6, 2023 is included as Exhibit 5.

share with a couple of the folks who will be on the receiving end of the notifications for any thoughts." Ex. 4 at 5. Ørsted's consultant continued to follow-up with the U.S. Navy regarding the draft agreement. On February 27, 2024, Ørsted's consultant asked Mr. Senska, "would you like to finalize the draft agreement between Navy and Orsted? Alternatively, would Orsted survey notifications and coordination be sufficient?" Ex. 4 at 3. On March 15, 2024, Mr. Senska responded that "I don't think there would be an objection to completing the agreement" but also that "I am not against considering an alternative." Ex. 4 at 2. Mr. Senska indicated that he would follow up with the DOD Clearinghouse. Ex. 4 at 2. On October 25, 2024, Ørsted's consultant re-sent the draft agreement to the U.S. Navy explaining again that "the agreement would apply to all Orsted offshore wind lease agreements" and seeking "clarity on whether the Navy would like to finalize such an agreement, or alternatively if Orsted monthly survey notifications and coordination are sufficient for the Navy." Ex. 4 at 1. Ørsted's consultant has not received any comments on the draft agreement in response from the U.S. Navy.

21. Revolution Wind has been following the terms of the draft agreement. Specifically, from March 2024 onwards, Ørsted has been providing the U.S. Navy on a periodic (usually monthly, but occasionally bi-monthly) basis with a proposed schedule of upcoming surveys for the Project. A true and correct copy of an example of the monthly offshore windfarm survey schedule from March 14, 2024 is attached in Exhibit 6. The transmittal email from Ørsted notes— as every such email from Ørsted has noted—that "[t]he attached survey schedule is provided to the U.S. Navy in an effort to comply with the intent of the COP Condition while an agreement is finalized." Ex. 6 at 1. On those occasions when the U.S. Navy has responded to Ørsted's periodic survey schedule emails, U.S. Navy representatives have never raised any concerns. For example, in December 2024, the U.S. Navy acknowledged receipt and indicated "[n]o questions or concerns

with the activities scheduled." True and correct copies of emails between Ørsted and U.S. Navy representatives in December 2024, January 2025, March 2025, and July 2025 are attached as Exhibit 7. In January 2025, the U.S. Navy responded that they "[w]ill review and get back to you if there are any concerns." Ex. 7 at 3. In March 2025, the U.S. Navy representative responded that there are "no significant concerns for this activity." Ex. 7 at 5. In July 2025, the U.S. Navy representative responded noting that "I have reviewed the schedule and charts, at this time no additional information required." Ex. 7 at 8. To date, Revolution Wind has not received any communication from the U.S. Navy that it has concerns regarding the electromagnetic emissions from the Project's survey activities.

22.    In the Revolution Wind 2024 Annual Certification of Compliance, dated January 31, 2025 (Dkt. 17-7 at PDF page 23), Revolution Wind provided information to BOEM regarding its efforts under COP Condition 4.4:

> "A draft agreement was provided to the Navy in May of 2023. [Revolution Wind] has since continued to request review or finalization of the agreement; however, the Navy has not provided feedback regarding their desired path forward. [Revolution Wind] has been submitting a monthly report to the Navy with survey activity that could potentially cause EMF [electromagnetic emissions]."[5]

23.    In the time period since submittal of the Annual Certification of Compliance and up until the Suess Declaration was filed in this case on September 12, 2025, the Department of the Interior had not asked for additional information from Revolution Wind regarding satisfaction of

---

[5] Exhibit F to the Suess Declaration was filed under seal. The text referenced here, which was submitted by Revolution Wind to the Department of the Interior, is not confidential.

COP Condition 4.4.  Revolution Wind will continue to coordinate with the U.S. Navy regarding survey activities going forward.

<u>2024 Mitigation Agreement with DOD and Department of the Air Force</u>

24.    Paragraph 8 of the Suess Declaration also references the mitigation agreement that Revolution Wind entered into with DOD, acting through DOD's Military Aviation and Installation Assurance Siting Clearinghouse ("DOD Clearinghouse"), and the Department of the Air Force to minimize national security risks and to mitigate potential impacts on military operations and readiness, including to protect military radar systems ("2024 DOD Agreement").  The background and purpose for this agreement were discussed in the Declaration of Melanie Gearon in Support of Revolution Wind's Motion for Preliminary Injunction, *see* Dkt. 9-1 at ¶ 17, and the 2024 DOD Agreement was included as an exhibit, *see* Dkt. 9-2.[6]

25.    Mr. Suess quotes a portion of the "Purpose" section of the 2024 DOD Agreement, which notes that, in addition to the mitigation included in the 2024 DOD Agreement:

"Additional mitigation, implemented as part of BOEM's approval of the Construction and Operations Plan, will also be sought by the DoD to de-conflict the Project with national defense interests.  Those measures address the following concerns: 1. Coordination between the Project Owner and DoD at-sea operators during construction and operation of the Project; 2. DoD efforts to evaluate and mitigate risk from distributed optical fiber sensing and acoustic monitoring equipment deployed as part of the project; and 3. Evaluation and mitigation of risk related to foreign investment."  Dkt. 9-2 at 3.

---

[6] The 2024 DOD Agreement is also Exhibit E to the Suess Declaration, Dkt. 17-6.

26.     From November 2024 when the 2024 DOD Agreement was executed and up until the Suess Declaration was filed on September 12, 2025, the Department of the Interior had not communicated to Revolution Wind that it required any further information about the 2024 DOD Agreement—to which the Department of the Interior is not a party.

27.     With respect to "1. Coordination between the Project Owner and DoD at-sea operators," weekly Mariners Briefings are sent to DOD and other federal, state, and local authorities detailing the Project's offshore activities.[7]  There are four representatives from the U.S. Navy that receive these Mariners Briefings, and each has been a subscriber since the Spring of 2023.  As described above, we also notify the U.S. Navy of proposed survey activities for the Project on a monthly (or occasionally bi-monthly) basis.  In addition, Ørsted participates in various Port Safety Committees, which frequently have DOD representation.  Ørsted also has established a productive working relationship with leadership at the Naval Submarine Base New London, and Ørsted coordinates with and defers to the U.S. Navy regarding vessel movement, including to remain clear of the Thames River channel regarding submarine vessel movements.  To date, Revolution Wind has never received a notice or any indication that it has failed to coordinate with DOD regarding its offshore activities, or that the U.S. Navy or DOD has any concerns with the ongoing coordination.

28.     Revolution Wind's Maritime Stakeholder Communication and Outreach Plan, which was approved by BOEM on June 25, 2024, includes the following overview of the Project's coordination with DOD:

"5.4 Coordination with Department of Defense (DOD)

---

[7] For reference, Revolution Wind's latest Mariners' Briefing is available at https://a2f3e3.emailsp.com/frontend/nl_preview_window.aspx?idNL=1032 (last accessed Sept. 17, 2025).

In addition to general distribution communications such as the U.S. Coast Guard's weekly [Local Notice to Mariners], Orsted participates in various Port Safety Committees, which frequently have DOD representation. Orsted also develops relationships with those DOD entities without dedicated participation in such committees. Orsted makes full use of the DOD military Aviation and Installation Assurance Siting Clearinghouse ('The Clearinghouse') to ensure relevant project information is communicated to appropriate DOD elements and offices. Where impacts to DOD activities are identified, Orsted establishes and maintains relationships with the cognizant commands (local military bases, Fleet Forces, etc.) to deconflict activities."[8]

29.     With respect to "2. DoD efforts to evaluate and mitigate risk from distributed optical fiber sending and acoustic monitoring equipment," this corresponds to COP Condition 4.3 (requiring Revolution Wind to "coordinate with the DOD/DON on any proposal to use distributed fiber-optic sensing technology as part of the Project or associated transmission cables"). As described above in Paragraphs 9–16 of my Declaration, Revolution Wind has coordinated with DOD on this topic and satisfied COP Condition 4.3.

30.     With respect to "3. Evaluation and risk related to foreign investment," Revolution Wind has and will continue to comply with federal investment laws and regulations, and has received no notice or indication from any federal agency that Revolution Wind is in violation of any federal investment laws or regulations, including any applicable rules from the U.S.

---

[8] Revolution Wind's approved Maritime Stakeholder Communication and Outreach Plan at 11 (June 2024) is available at https://cdn.orsted.com/-/media/www/docs/corp/us/mariners/maritime-stakeholder-communication-and-outrea.pdf?rev=a5f18a6a05684f0bbf5f146f770ffd3c&hash=06746A96CB29E183BB7F48EC591C958B (last accessed Sept. 17, 2025).

Committee on Foreign Investment in the United States ("CFIUS").  In addition, the 2024 DOD

Agreement requires Revolution Wind to notify CFIUS of proposed assignment of the agreement

when doing so is "required by applicable regulations (31 CFR Parts 800 and 802) and provide a

copy of the notice to the DoD Parties" who are not limited by the 2024 DOD Agreement from

"objecting to the transaction before CFIUS".  Dkt. 9-2 at 7.

     31.     The 2024 DOD Agreement notes these three areas (referenced in the paragraph 8

of the Suess Declaration) as relating to additional mitigation measures to be sought by DOD.

However, to date, DOD has not sought additional mitigation in any of these three areas.

     32.     Revolution Wind submits a monthly Navigation Safety Complaint and

Correspondence report to BOEM, BSEE, and the U.S. Coast Guard.  In those reports, there have

been no credible complaints to report regarding Project vessels causing collisions, fully obstructing

a navigable waterway, or forcing unreasonable detours as Green Oceans suggests.  Nor has the

Coast Guard instructed Revolution Wind to take corrective actions or make improvements with

respect to navigational safety in response to those reports.

     I declare under penalty of perjury pursuant to 28 U.S.C. § 1746(2) that the foregoing is true

and correct.

     Executed on September 18, 2025, at Northborough, Massachusetts.

                                 Edward LeBlanc

# EXHIBIT 1

| | |
|---|---|
| **From:** | Laura Gould |
| **Sent:** | Wednesday, May 8, 2024 11:02 AM |
| **To:** | matthew.senska@navy.mil |
| **Cc:** | Whitney Marsh; Kirsten Holland Nantz; Amanda Zuniga; Elliott Reid |
| **Subject:** | Revolution Wind Distributed Optical Fiber Sensing Equipment |
| **Attachments:** | Revolution Wind DFOS Equipment Submission.pdf; Cable Monitoring System.pdf; DITEST INTERROGATOR.pdf; DATA VIEWER.pdf; LYNX_COBRA.pdf; COBRA RTTR.pdf |

Dear Mr. Senska,

The Conditions of Construction and Operations Plan Approval for Lease Number OCS-A-0486, Revolution Wind Project, Condition 4.3, Distributed Fiber-Optic Sensing Technology, requires Ørsted to coordinate with the Department of the Navy for the use of distributed fiber-optic sensing technology as part of the project. The Revolution Wind Project utilizes distributed fiber-optic sensing equipment which is described in attachments (5) to this email.

Please find attached correspondence regarding the DFOS equipment used for Revolution Wind. (BOEM OCS-A-0486) Please advise if any additional information is requested to satisfy this condition and confirm receipt of this email for our records.

Reference:

Conditions of Construction and Operations Plan Approval for Lease Number OCS-A-0486, Revolution Wind Project: To mitigate potential impacts on the Department of the Navy's (DON's) operations, the Lessee must coordinate with the DOD/DON on any proposal to use distributed fiber-optic sensing technology as part of the Project or associated transmission cables. The DON point-of-contact for coordination is Matthew Senska; matthew.senska@navy.mil; 571-970-8400.

Thank you,

Laura Gould


Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Region Americas

Tel. +18572082922
lgoul@orsted.com



Learn more at us.orsted.com

399 Boylston St., 12th Floor
Boston, MA 02116

1



Ørsted handles personal data as stated in our [Privacy Policy](#) for business relations



Mr. Matthew Senska
Director, Marine Resources and At-Sea Policy
Office of the Deputy Assistant Secretary of the Navy
(Environment and Mission Readiness)
1000 Navy Pentagon
Washington, DC 20350

**8 May 2024**
Doc. Id: Deca00006954-
627010838-1606

# Revolution Wind DFOS Equipment

Dear Mr. Senska,

The Conditions of Construction and Operations Plan Approval for Lease Number OCS-A-0486, Revolution Wind Project, Condition 4.3, Distributed Fiber-Optic Sensing Technology, contains the following requirement:

> To mitigate potential impacts on the Department of the Navy's (DON's) operations, the Lessee must coordinate with the DOD/DON on any proposal to use distributed fiber-optic sensing technology as part of the Project or associated transmission cables. The DON point-of-contact for coordination is Matthew Senska; matthew.senska@navy.mil; 571-970-8400.

The Revolution Wind Project utilizes distributed fiber-optic sensing equipment which is described in attachments (1-5) to this document. Please contact Laura Gould, Marine Affairs Compliance Manager at LGOUL@orsted.com or 847-208-2922 if any additional coordination with the DOD/DON is required with regards to the use of this equipment.

Yours sincerely,

Elliott Reid
Senior Asset Manager, Revolution Wind

EREID@orsted.com
(857)-286-1949

Attachments:

The following attachments are marked as:

CONFIDENTIAL - This file contains trade secrets and/or commercial or financial information that is exempt from the public disclosure under the Freedom of Information Act, (5 U.S.C. § 552(b)(4)).

(1) Omnisens Cobra Power Cable Integrity Monitoring System, Standard Technical Description
(2) Omnisens User Manual DITEST INTERROGATOR, Fiber Optic Distributed Temperature and Strain Analyzer
(3) Omnisens User Manual Data Viewer
(4) Omnisens User Manual LYNX/COBRA
(5) Omnisens User Manual COBRA RTTR

# EXHIBIT 2

| | |
|---|---|
| **From:** | Whitney Marsh <WHIMA@orsted.com> |
| **Sent:** | Thursday, October 17, 2024 12:27 PM |
| **To:** | Kozak, Mark S; Kaitlin Eames; Lan, Christy M; Gareth Ellis; Robert Soden; Melanie Gearon |
| **Cc:** | Kirsten Holland Nantz; Arzt, Tamara; Hauer, Whitney B; Wolfson, Laura Lee W; Aspromonti, Lauren N; Amanda Zuniga; Clayton Starr; Hunter, Cheri; Head, Jill M; Mary Colbert; Sauls, Marilyn M |
| **Subject:** | RE: [EXTERNAL] Submitted in TIMSWeb - Post-Storm Event Monitoring Plan-Cables |

Hi Mark,

Orsted can agree to update the Plan to reflect the language as featured in COP Approval Condition 2.13.  Our team would like to continue discussions pertaining to adjusting the frequency as featured in COP Approval Condition 2.13.1.  I will send around availability for us to continue this discussion.

Thank you for the allowance of our team to proceed with Export Cable Installation activities, and looking forward to chatting further.

Thank you!

Best regards,
**Whitney Marsh**
Permit Manager, Revolution Wind
Northeast Permitting
Commercial

Ørsted
Tel. +18572603248

---

**From:** Kozak, Mark S <Mark.Kozak@bsee.gov>
**Sent:** Thursday, October 17, 2024 2:06 PM
**To:** Kaitlin Eames <KAIEA@orsted.com>; Lan, Christy M <Christy.Lan@bsee.gov>; Whitney Marsh <WHIMA@orsted.com>
**Cc:** Kirsten Holland Nantz <KIRHO@orsted.com>; Arzt, Tamara <Tamara.Arzt@bsee.gov>; Hauer, Whitney B <whitney.hauer@boem.gov>; Wolfson, Laura Lee W <Lauralee.Wolfson@boem.gov>; Aspromonti, Lauren N <Lauren.Aspromonti@boem.gov>; Amanda Zuniga <AZUNI@orsted.com>; Clayton Starr <CLSTA@orsted.com>; Hunter, Cheri <Cheri.Hunter@bsee.gov>; Head, Jill M <Jill.Head@bsee.gov>; Mary Colbert <MACOL@orsted.com>; Sauls, Marilyn M <Marilyn.Sauls@bsee.gov>
**Subject:** Re: [EXTERNAL] Submitted in TIMSWeb - Post-Storm Event Monitoring Plan-Cables

Hi Whitney,

We received the response to the remaining comment on the cables post storm monitoring plan; however further discussion is needed to resolve this topic. The comment is focused on the inspection frequency and at this time, BSEE holds its position on the Post Storm Monitoring Requirement of monitoring surveys along federal sections of the cable routing after significant storm events (as defined in the Rev Wind PSMP). In accordance with COP Condition 2.13, the Lessee must conduct an inspection of each inter-array, interconnector, and export cable to determine cable location, burial depths, the state of the cable, and site conditions within 180 days of a storm event.  Can you confirm via email that Orsted will update the plan to reflect the requirement, as requested in the original comment.   Confirmation via email will be sufficient for you to begin cable work and we can continue discussion on adjusting the frequency via 2.13.1.

Mark

---

**From:** Kaitlin Eames <KAIEA@orsted.com>
**Sent:** Tuesday, October 15, 2024 12:52 PM
**To:** Kozak, Mark S <Mark.Kozak@bsee.gov>; Lan, Christy M <Christy.Lan@bsee.gov>
**Cc:** Whitney Marsh <WHIMA@orsted.com>; Kirsten Holland Nantz <KIRHO@orsted.com>; Arzt, Tamara <Tamara.Arzt@bsee.gov>; Hauer, Whitney B <whitney.hauer@boem.gov>; Wolfson, Laura Lee W <Lauralee.Wolfson@boem.gov>; Aspromonti, Lauren N <Lauren.Aspromonti@boem.gov>; Amanda Zuniga <AZUNI@orsted.com>; Clayton Starr <CLSTA@orsted.com>; Hunter, Cheri <Cheri.Hunter@bsee.gov>; Head, Jill M <Jill.Head@bsee.gov>; Mary Colbert <MACOL@orsted.com>
**Subject:** RE: [EXTERNAL] Submitted in TIMSWeb - Post-Storm Event Monitoring Plan-Cables

**CONFIDENTIAL**

Hi Mark and Christy,

For your attention, we are hoping to start cables works on 18th October 2024. Please could you provide an update on your review and your comments to us on the Post-Storm Event Monitoring Plan – Cables, as soon as possible?

Many thanks,

Kaity

Best regards,
**Kaitlin Eames**
Environment Manager
NA Permitting
Commercial

Ørsted
Tel. +44 79 1 7174617

*Please note, whilst I work on US projects - I am UK based and therefore may work different hours to you. If you receive an email from me out of your office hours, please do not feel pressured to respond to it until your working hours.*

# EXHIBIT 3

| | |
|---|---|
| **From:** | Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil> |
| **Sent:** | Saturday, March 22, 2025 8:00 AM |
| **To:** | Laura Gould |
| **Subject:** | RE: Orsted Offshore Windfarm Survey Activity Report March 2025 |

<span style="color:blue">**INTERNAL**</span>

<span style="color:blue">**INTERNAL**</span>

Thank you Laura, appreciate the feedback.

Warm regards,

Dan

**From:** Laura Gould <LGOUL@orsted.com>
**Sent:** Friday, March 21, 2025 3:17 PM
**To:** Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>
**Subject:** [Non-DoD Source] RE: Orsted Offshore Windfarm Survey Activity Report March 2025

<span style="color:blue">**INTERNAL**</span>

Good Morning Dan,

There are some fiber-optic monitoring components to the cables. We provided the technical documents to opnavn4imissioncompatibility@us.navy.mil for South Fork Wind on 3/27/24 and to Matt Senska via email for Revolution Wind on 5/8/24. I am working with the Cable Installation team for Sunrise Wind to determine if the cables for that project also have some fiber-optic monitoring components. I will have the information for SRW soon.

Please let me know if there are any questions.

Thanks,

Laura

Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Commercial

Ørsted
Tel. +18572082922

**From:** Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>
**Sent:** Tuesday, March 18, 2025 10:01 AM

1

**To:** Laura Gould <LGOUL@orsted.com>
**Subject:** RE: Orsted Offshore Windfarm Survey Activity Report March 2025

Laura – quick question on the cable installation. Is there fiber-optic monitoring cable also being installed with the transmission cables?

Thanks very much!

V/r,

Dan Hurley
SAIC Contractor Support
USFF N46524
Encroachment Management
(757) 836-5040 (desk)
(757) 685-1459 (cell)
Daniel.j.hurley.ctr@us.navy.mil
Daniel.j.hurley1.ctr@navy.smil.mil

---

**From:** Laura Gould <LGOUL@orsted.com>
**Sent:** Friday, March 7, 2025 10:03 AM
**To:** Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>; matthew.senska@navy.mil
**Cc:** Colin Macomber <COMAC@orsted.com>; Jeff Westermeyer <JEFWE@orsted.com>
**Subject:** [Non-DoD Source] Orsted Offshore Windfarm Survey Activity Report March 2025

INTERNAL

Dear Mr. Senska and Mr. Hurley,

In accordance with the Conditions of Construction and Operations Plan Approval for Ørsted's Offshore Wind Farm Projects, South Fork Wind, Revolution Wind, and Sunrise Wind, Ørsted must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with survey activities taking place within any designated defense operating area, warning area, or water test area. Ørsted's windfarm projects are located within the Narragansett Defense Operating Area. Ørsted is currently in the process of negotiating an agreement with the U.S. Navy to comply with this condition. The attached survey schedule is provided to the U.S. Navy in an effort to comply with the intent of the COP Condition while an agreement is finalized.

Attached to this email is the windfarm survey schedule for February 2025.  Please let me know if any additional information is required. Thank you.

Reference: Conditions of Construction and Operations Plan Approval South Fork Wind, Revolution Wind, and Sunrise Wind, Condition 4.4:
*Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 days of entering into the agreement.*

Laura Gould

Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Commercial

Tel. +18572082922
lgoul@orsted.com



Learn more at us.orsted.com

399 Boylston St., 12th Floor
Boston, MA 02116



Ørsted handles personal data as stated in our [Privacy Policy](Privacy Policy) for business relations

# EXHIBIT 4

Ashley patterson beaty - Mail - Orsted - OSW Electromagnetic Emissions Agreement                    9/14/25, 12:00 PM

 Gmail                                                    Ashley Patterson Beaty <ashley@ardeidaegroup.com>

## Orsted - OSW Electromagnetic Emissions Agreement

**Tom Hicks** <tom.hicks@h4egroup.com>                              Fri, Oct 25, 2024 at 10:45 AM
To: "Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA)" <matthew.c.senska.civ@us.navy.mil>
Cc: Ashley Patterson Beaty <ashley@ardeidaegroup.com>

Matt,

In accordance with BOEM requirements in the Lease and COP, Orsted must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with survey activities taking place within any designated defense operating area, warning area, or water test area.

In MAY 2023, Orsted presented a draft agreement (see Attached) to the Navy to establish a protocol for Orsted to notify Navy stakeholders of its planned survey activities. To be efficient, the agreement would apply to all Orsted offshore wind lease agreements. In the interim, Orsted has sent the Navy a monthly notification of planned survey activities for its OSW projects beginning in MAR 2024.

With three projects affected by this BOEM requirement, Orsted ideally would like clarity on whether the Navy would like to finalize such an agreement, or alternatively if Orsted monthly survey notifications and coordination are sufficient for the Navy.

Best,

Tom
Thomas Hicks
H4E
1050 30th Street NW, Suite 223
Washington, DC  20002
703.300.7430

Mailing Address
1100 Wythe Street, #25871
Alexandria, VA 22313


---------- Forwarded message ---------
From: **Ashley Patterson Beaty** <ashley@ardeidaegroup.com>
Date: Fri, Mar 15, 2024 at 9:25 PM
Subject: Re: [Non-DoD Source] Re: Orsted - OSW Electromagnetic Emissions Agreement (Narragansett Bay OPAREA)
To: Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA) <matthew.c.senska.civ@us.navy.mil>
Cc: Tom Hicks <tom.hicks@h4egroup.com>


Hi Matt,

Yea, we have COP approvals for South Fork and Revolution. For Sunrise, BOEM published a target COP date of mid-June 2024.

In the meantime, Orsted will notify Fleet Forces (Dan Hurley) by email on a monthly cadence with all

planned OSW surveys for its projects. The most recent notification went out yesterday 14 MAR.

Have a great weekend.

Thank you,
Ashley

Ashley Patterson Beaty
Principal
Ardeidae Group
www.ardeidaegroup.com

> On Mar 15, 2024, at 8:25 PM, Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA)
> <matthew.c.senska.civ@us.navy.mil> wrote:

Ashley – Sorry, looks like I missed the earlier email from you.

I don't think there would be an objection to completing the agreement.  It will require OSD to sign it though, so even with a fast track, it will still take some time to complete.

With that said, I am not against considering an alternative.  I just don't know if I have any ideas for what that could be that is "executing an agreement" when it involves both Navy and Air Force.  I'll talk to the Clearinghouse and see what they might have to offer.

For Orsted, they have COP approvals for South Fork and Revolution so far right?  I believe Sunrise is supposed to be getting closer but is not done yet.

Matt

---

**From:** Ashley Patterson Beaty <ashley@ardeidaegroup.com>
**Sent:** Wednesday, March 13, 2024 2:34 PM
**To:** Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA)
<matthew.c.senska.civ@us.navy.mil>
**Cc:** Tom Hicks <tom.hicks@h4egroup.com>
**Subject:** [Non-DoD Source] Re: Orsted - OSW Electromagnetic Emissions Agreement
(Narragansett Bay OPAREA)

Matt,

Orsted is preparing to provide OSW survey notifications to Fleet Forces for the Narragansett OPAREA. Surveys are planned for the upcoming 1-2 months.

Would you like to finalize the draft agreement between Navy and Orsted? Alternatively, would Orsted survey notifications and coordination be sufficient?

Best regards,

Ashley

On Tue, Feb 27, 2024 at 8:09 AM Ashley Patterson Beaty <ashley@ardeidaegroup.com> wrote:

> Good Morning Matt,
>
> Orsted is preparing to provide OSW survey notifications for the Narragansett OPAREA.
>
> In MAY 2023, you initially reviewed a draft agreement (attached) to establish a protocol for Orsted to notify Navy stakeholders of its planned survey activities. To be efficient, the agreement would apply to all Orsted offshore wind lease agreements.
>
> BOEM's lease and COP requires Orsted to *"enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities."*
>
> Would you like to finalize the draft agreement between Navy and Orsted? Alternatively, would Orsted survey notifications and coordination be sufficient?
>
> Best regards,
>
> Ashley
>
>
> ---------- Forwarded message ---------
> From: **Ashley Patterson Beaty** <ashley@ardeidaegroup.com>
> Date: Tue, Jun 20, 2023 at 9:58 AM
> Subject: Re: [URL Verdict: Unknown][Non-DoD Source] RE: South Fork -

Electromagnetic Emissions Agreement
To: Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA)
<matthew.c.senska.civ@us.navy.mil>
Cc: Tom Hicks <tom.hicks@h4egroup.com>

Matt,

Good morning, we are checking in regarding the proposed draft agreement for Orsted to fulfill BOEM's requirements for survey EMF coordination.

This agreement would establish a protocol for Orsted to notify the appropriate Navy stakeholders of its planned survey activities. To be efficient, the agreement would be applicable to all Orsted offshore wind lease agreements.

Would you like to proceed with this type of agreement? If so, we welcome any legal review and/or comments for Orsted as a next step.

Thank you,

Ashley

On Tue, May 9, 2023 at 2:57 PM Ashley Patterson Beaty
<ashley@ardeidaegroup.com> wrote:

Matt,

Thank you for reviewing the draft agreement for Orsted to fulfill BOEM's requirements for survey EMF coordination. We appreciate and will standby for next steps.

Best regards,

Ashley

Ashley Patterson Beaty

Principal

Ardeidae Group

P: (202) 674-5305

www.ardeidaegroup.com

On Tue, May 2, 2023 at 8:25 AM Senska, Matthew C CIV USN ASSTSECNAV EIE
DC (USA) <matthew.c.senska.civ@us.navy.mil> wrote:

Thanks.  This looks pretty straight forward on a quick read.  I'll share with a couple
of the folks who will be on the receiving end of the notifications for any thoughts.

R/Matt

**From:** Ashley Patterson Beaty <ashley@ardeidaegroup.com>
**Sent:** Monday, May 1, 2023 7:55 AM
**To:** Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA)
<matthew.c.senska.civ@us.navy.mil>
**Cc:** Tom Hicks <tom.hicks@h4egroup.com>
**Subject:** [URL Verdict: Unknown][Non-DoD Source] RE: South Fork -
Electromagnetic Emissions Agreement

Matt,

We are following up on behalf of Orsted per our JAN 25 meeting.

At your suggestion, Orsted prepared a draft agreement to fulfill the BOEM
requirements in the Lease and COP which require Orsted to coordinate
electromagnetic emissions associated with survey activities with the appropriate
command headquarters.

This agreement would establish a protocol for Orsted to notify the appropriate
Navy stakeholders of its planned survey activities. To be efficient, the agreement
would be applicable to all Orsted offshore wind lease agreements.

The attached draft is intended to gauge your feedback prior to Orsted or DoD
engaging review by respective legal staff.

Given South Fork activities, this is timely and we welcome your feedback on next
steps and whether this approach is suitable.

Best regards,

Ashley


---------- Forwarded message ---------
From: **Ashley Patterson Beaty** <ashley@ardeidaegroup.com>
Date: Mon, Mar 27, 2023 at 10:18 AM
Subject: RE: South Fork - Electromagnetic Emissions Agreement
To: Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA)
<matthew.c.senska.civ@us.navy.mil>
Cc: Tom Hicks <tom.hicks@h4egroup.com>


Good Morning Matt,


We are following up on behalf of Orsted per our JAN 25 call.


BOEM requires Orsted to have a form of agreement to coordinate electromagnetic
emissions associated with survey activities for South Fork and other Orsted
offshore wind projects.


We prepared a draft agreement and welcome your feedback if this is the right
approach for DoD/Navy. We're happy to jump on a quick call if helpful.


Thank you,

Ashley



---------- Forwarded message ---------
From: **Ashley Patterson Beaty** <ashley@ardeidaegroup.com>
Date: Tue, Feb 21, 2023 at 1:18 PM
Subject: Re: South Fork - Electromagnetic Emissions Agreement
To: Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA)
<matthew.c.senska.civ@us.navy.mil>
Cc: Tom Hicks <tom.hicks@h4egroup.com>


Hi Matt,

We thought this may be a good time to follow up regarding the draft agreement prepared by Orsted to fulfill the BOEM requirement to coordinate electromagnetic emissions associated with survey activities with the appropriate command headquarters.

We hope this was a helpful starting point and welcome your feedback on whether this is a suitable form of agreement.

Thank you,

Ashley

---------- Forwarded message ---------
From: **Ashley Patterson Beaty** <ashley@ardeidaegroup.com>
Date: Mon, Feb 6, 2023 at 5:17 PM
Subject: Re: [URL Verdict: Unknown][Non-DoD Source] Re: South Fork - Electromagnetic Emissions Agreement
To: Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA) <matthew.c.senska.civ@us.navy.mil>
Cc: Tom Hicks <tom.hicks@h4egroup.com>

Matt,

Following our JAN 25 meeting, Orsted prepared a draft agreement to fulfill the BOEM requirements in the Lease and COP which require Orsted to coordinate electromagnetic emissions associated with survey activities with the appropriate command headquarters.

This agreement would establish a protocol for Orsted to notify the appropriate stakeholders of its planned survey activities. To be efficient, the agreement would be applicable to all Orsted lease agreements.

The Appendix references a Sample Orsted Mariners' Briefing which are posted twice weekly and can be found here: Offshore Wind Farm Information for Mariners | Ørsted (orsted.com).

Subscribers receive an email twice a week notifying them an updated Briefing is available for viewing. Under the Agreement with DoD, Orsted would add DoD contacts to the Mariners Briefing subscription list, and could do same for the Survey Forecasts by email (sample attached).

We hope this draft is a good starting point to gauge your feedback prior to Orsted or DoD engaging review by respective legal staff.

Thank you,

Ashley

On Wed, Jan 25, 2023 at 12:19 PM Ashley Patterson Beaty <ashley@ardeidaegroup.com> wrote:

> Matt,
>
> For good measure, let's keep today's call with Orsted. We appreciate your time and this comprehensive update below.
>
> Thank you and talk soon.
>
> Best,
>
> Ashley

>> On Jan 25, 2023, at 9:57 AM, Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA) <matthew.c.senska.civ@us.navy.mil> wrote:
>>
>> Good morning –
>>
>> I looked into this with the Navy team and we're not anticipating much potential for negative effects from survey activities.  The likely outcome is requesting a notification when conducting surveys or maybe a schedule for survey activities planned.
>>
>> With that said, I'd like to confirm what survey activities are planned for the construction/operation phase of the project and give the team a chance to confirm that approach.

The Site Assessment Plan for what was Deepwater Wind at the time just proposed a met buoy, which I assume is still out there.  It mentions bathymetric and geophysical surveys conducted prior to the SAP.

My quick scan of the COP also didn't identify any specific survey plans.   The DEIS mentions geological and geophysical surveys as part of construction of the project, but again didn't see specifics for future work.  There are plenty of references to completed surveys.  But those are large documents where I'm fishing with keyword searches, so maybe I missed it.

If you'd still like to have a phone call later today, I'm available.  Or it may make sense to table that until we can review the anticipated surveys, if there are any.  Thanks.

R/Matt

---

**From:** Ashley Patterson Beaty <ashley@ardeidaegroup.com>
**Sent:** Thursday, January 19, 2023 2:05 PM
**To:** Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA) <matthew.c.senska.civ@us.navy.mil>
**Cc:** Tom Hicks <tom.hicks@h4egroup.com>
**Subject:** Re: [URL Verdict: Unknown][Non-DoD Source] Re: South Fork - Electromagnetic Emissions Agreement

Thank you Matt, yes let's plan on Jan 25 at 2pm ET. I'll send a calendar shortly. We appreciate it!

> On Jan 19, 2023, at 1:08 PM, Senska, Matthew C CIV USN ASSTSECNAV EIE DC (USA) <matthew.c.senska.civ@us.navy.mil> wrote:

> Hi Ashley – I'll need to huddle with some of the Navy folks first to refresh my memory.  Can we tentatively say the 25th at 2 PM?  I'll hopefully have what I need by then.

> R/Matt

**From:** Ashley Patterson Beaty
<ashley@ardeidaegroup.com>
**Sent:** Wednesday, January 18, 2023 8:21 AM
**To:** Senska, Matthew C CIV USN ASSTSECNAV
EIE DC (USA) <matthew.c.senska.civ@us.navy.
mil>
**Cc:** Tom Hicks <tom.hicks@h4egroup.com>
**Subject:** [URL Verdict: Unknown][Non-DoD
Source] Re: South Fork - Electromagnetic
Emissions Agreement

Matt,

Following up on below, are you available for a brief
Orsted call next Monday AM, 23 Jan or next
Wednesday afternoon 25 Jan?

Thank you!

Ashley

On Fri, Jan 13, 2023 at 12:10 PM Ashley Patterson
Beaty <ashley@ardeidaegroup.com> wrote:

> Hi Matt,
>
> Orsted is seeking clarity on a BOEM requirement
> for an Electromagnetic Emissions Agreement
> with Fleet Forces relative to South Fork survey
> activities.
>
> Would you be available for a call with Orsted
> next week anytime after 1pm ET Tuesday or
> Thursday?
>
> Below is the requirement we'd like to connect on
> over a brief call:
>
> 1. 4.4. Electromagnetic Emissions.
>    (Planning) (Construction) (Operation).
>    Before entering any designated defense
>    operating area, warning area, or water
>    test area for the purpose of carrying out

any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 calendar days of entering into it. The Lessee must include a summary of associated activities in the Lessee's annual self-inspection reports.

Thank you!

Ashley


Ashley Patterson Beaty

Principal

Ardeidae Group

www.ardeidaegroup.com


**Draft Orsted DOD Agreement Notification of DOD for EMF Purposes Feb 2023.docx**
60K

# EXHIBIT 5

# DRAFT

**AGREEMENT AMONG**
**THE DEPARTMENT OF DEFENSE, AND**
**ORSTED,**
**ADDRESSING NOTIFICATION OF SURVEY ACTIVITIES**

This is an agreement among the Department of Defense (DoD), acting through the Military Aviation and Installation Assurance Siting Clearinghouse, and Orsted.  Together, these entities are referred to as "parties" and individually as a "party."  Any reference to "DoD parties" means DoD, the Department of the Navy (DON), and the Department of the Air Force (DAF), and does not indicate that one party acts for or on behalf of the other.  In this agreement, DoD does not include the United States Army Corps of Engineers when engaged in its civil works program, including any permitting actions.

This agreement is entered into pursuant to section 183a of title 10, United States Code (U.S.C.), and part 211 of title 32, Code of Federal Regulations (CFR).

The parties acknowledge that the Secretary of the Interior is responsible for administration of energy development, including identification of locations for leasing and development, on the outer continental shelf (OCS) as designated by the Outer Continental Shelf Lands Act (43 U.S.C. section 1331 et. seq.).  The Secretary of Interior, through the Bureau of Ocean Energy Management (BOEM), has issued various leases on the Outer Continental Shelf (OCS) for the purposes of constructing and operation of offshore renewable energy installations (OREIs).  For purposes of this agreement, the following Lessees are collectively referred to herein as "Orsted" whereby Orsted has ownership of such companies: Bay State Wind LLC; Orsted North America Inc.; Ocean Wind, LLC; Revolution Wind, LLC; Skipjack Offshore Energy, LLC; South Fork Wind, LLC; and Sunrise Wind, LLC.

> **Commented [APB1]:** Matt, we provide here the Orsted offshore wind projects (the Lessees).

### SECTION 1.  PURPOSE.

**A.  Background; Leases.**  The Secretary of Interior, through the Bureau of Ocean Energy Management (BOEM), has issued to Orsted various leases on the Outer Continental Shelf (OCS) for the purposes of constructing and operation of offshore renewable energy installations (OREIs). A common condition of the leases is:

> Electromagnetic Emissions:  The Lessee, prior to entry into any designated defense operating area, warning area, or water test area, for the purpose of commencing survey activities undertaken to support SAP or COP submittal must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities.  The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters.

**B.  COP; Agreement.** The Lessee is required to provide BOEM with a copy of an agreement with the appropriate command headquarters within 15 calendar days of entering into such agreement, pursuant to the Conditions of Construction and Operations Plan Approval (COP).  A

# DRAFT

common condition of the COP is:

> Electromagnetic Emissions. (Planning) (Construction) (Operation). Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 calendar days of entering into it. The Lessee must include a summary of associated activities in the Lessee's annual self-inspection reports.

**C. Purpose.** The purpose of this agreement is to formalize a protocol by which Orsted will notify DoD of Orsted's offshore activities and to coordinate the Electromagnetic Emissions associated with such survey activities with the appropriate command headquarters.

### SECTION 2. DEFINITIONS.

**A. BOEM.** Bureau of Ocean Energy Management, a technical bureau of the Department of Interior.

**B. CFIUS.** Committee on Foreign Investment in the United States

**C. DoD.** The Department of Defense, Military Aviation and Installation Assurance Siting Clearinghouse.

**D. Lease.** The commercial lease issued by BOEM to the Orsted for the construction and operation of Offshore Renewable Energy Installations (OREIs).

**E. OREI:** Offshore Renewable Energy Installation

**F. POC:** Points of Contact

**G. Siting Clearinghouse.** The Military Aviation and Installation Assurance Siting Clearinghouse established pursuant to 10 U.S.C. section 183a.

**H. U.S.C.** United States Code.

# DRAFT

## SECTION 3.  PROTOCOL.

**A.  General.**  This protocol is structured to ensure Orsted may construct and operate its projects without adversely impacting DoD military operations and readiness.  Orsted shall notify DoD via email as described in Section 3.B Notification below.

**B.  Notification; Command Headquarters.**

1. Orsted notifies the public of its activities, particularly the maritime community, and including DoD and other federal, state, and local authorities through dissemination of its twice-weekly Mariners' Briefing to all who subscribers.  See Appendix A to this agreement for an example of an Orsted Mariners' Briefing.

2. Additionally, Orsted routinely drafts forecasts of its survey activity for internal management purposes.  See Appendix B to this agreement for an example of a survey forecast.  Orsted agrees to share these forecasts with DoD and the appropriate command headquarters, and DoD agrees to maintain these documents with the confidentiality normally accorded proprietary information provided by private enterprise.

3. DoD email addresses to be included in applicable notifications (and to be maintained by Orsted) include:

   a. usaf.pentagon.saf-ie.mbx.saf-iei-encroachment@mail.mil
   b. Christopher.Jarboe@navy.mil (Pax River)
   c. james.casey.ctr@navy.mil (Fleet Forces)
   d. Steven.f.sadlowski.civ@us.navy.mil (Submarine Base Groton)

4. DoD may at its discretion direct Orsted to add or delete DoD email addresses to the list in subparagraph B.3 above.  Orsted will confirm changes to DoD email notification list, and maintain all associated correspondence as appendices to this Agreement.

**C.  Coordination; Approval.**  The parties agree that Orsted is authorized to proceed with its intended activities, as related in the Mariners' Briefing, survey forecasts, or other documentation that may be provided to DoD and the appropriate command headquarters, unless DoD expresses an objection or concern, which shall be provided to Orsted by contacting [INSERT EMAIL] within [INSERT days] of Orsted providing the survey forecast.

DoD agrees not to object to the construction and operation of Orsted projects before any other federal, state, or local regulatory entity with jurisdiction over Orsted projects, provided that Orsted is in material compliance with the terms of this agreement and that, as of the effective date of the agreement, Orsted has disclosed to the DoD parties in writing all relevant facts necessary for the DoD parties to be able to fully assess Orsted's potential adverse impacts on military operations and readiness and risks to national security.

**D.  Other Regulatory Actions.**  This agreement shall not prevent or limit DoD from communicating in any form with any regulatory body or agency with jurisdiction or possible jurisdiction over matters affecting DoD missions.

**Commented [EL2]:** These are email address currently on our subscriber list.  We can add any others DOD would like.

**DRAFT**

SECTION 4.  ASSIGNMENT.

**A.  Right to Assign.**  This agreement shall be binding upon the Orsted and its successors and assigns.  If Orsted and its successors or assigns (assignors) elect to sell, convey, mortgage, assign, or otherwise transfer all or any part of its interests and obligations in the assets comprising Orsted's projects to any third party (assignee), assignor shall cause such assignee to expressly acknowledge the existence of this agreement.  The assignor shall provide a copy of this agreement to the assignee.  The assignee shall provide new point of contact information (as in Section 6) to the DoD parties.

**B.  Notice of Assignment to CFIUS.**  If the prospective assignee is a foreign national or foreign-owned or -controlled business entity, assignor and the proposed assignee shall jointly provide notice of the proposed transaction to CFIUS to the extent required by applicable regulations (subpart D of 31 CFR part 800) and provide a copy of the notice to the DoD.  Nothing in this agreement shall prohibit or limit DoD from objecting to the transaction before CFIUS, nor limit communications with CFIUS during national security reviews and investigations, and, should mitigation result, during mitigation, tracking, and post-consummation monitoring and enforcement, pursuant to applicable statutes and regulations.

**C.  Effect of Assignment.**  Upon an assignment, assignor shall be relieved of any obligations or liabilities under this agreement to the extent that the assignee has assumed in writing such obligations or liabilities and provided that Orsted has provided a copy of the assignment, including the assumption of obligations and liabilities, to the DoD parties.

SECTION 5.  EFFECTIVE DATE AND EXPIRATION.

**A.  Effective Date.**  This agreement becomes effective on the date when all parties have signed it.

**B.  Expiration.**  This agreement shall expire and have no further force and effect upon the occurrence of the earlier of the following:

1.  Termination of the BOEM lease agreement.

2.  An Orsted project is decommissioned.

3.  Termination of the agreement by written mutual agreement of the parties.

**C.  Actions Prior to Expiration.**  Any activities engaged in by the parties that occurred prior to expiration of this agreement shall remain valid and continue in effect, notwithstanding the expiration of the agreement.

SECTION 6.  POINTS OF CONTACT AND NOTIFICATION.

**A.  Points of Contact (POCs).**  The following persons shall be the primary POCs for the parties for purposes of this agreement.  Any notice, request, or other communication to be

**DRAFT**

provided pursuant to this agreement shall be delivered to the POCs.  Either party may change its POC by providing written notification of the change to the other parties at least 30 days in advance of the change taking effect.

1. DoD.  Executive Director, Military Aviation and Installation Assurance Siting Clearinghouse, 3400 Defense Pentagon, Room 5C646, Washington, DC 20301-3400, osd.DoD-siting-clearinghouse@mail.mil

> **Commented [APB3]:** Matt, let us know if Navy should be included.

2. Orsted.  Head of Marine Affairs, Edward LeBlanc, 399 Boylston St., 12th Floor Boston, MA 02116, edwle@orsted.com

**B.  Notification.**  Any written notice required by or provided for in this agreement shall be sent by routine email.

### SECTION 7.  BREACH AND DISPUTE RESOLUTION.

If a party believes that another party has breached this agreement, it shall provide written notice of the breach within 30 days of discovery of the breach to all other parties and provide the breaching party a reasonable opportunity (but in all cases at least 60 days from the delivery date of such notice) to cure the breach.  Failure to provide notice within such 60-day period only waives the rights with respect to the periods from after the expiration of such 60-day period and until the date when the notice was given.  If there is a dispute between the involved parties as to whether a breach occurred, the involved parties agree to attempt to resolve the dispute beginning with Orsted and representatives of the DoD.  Disputes may be elevated, on the part of the DoD to the Executive Director of the Siting Clearinghouse.  If the breach is not cured or resolved after this initial dispute resolution process, either party may seek to enforce this agreement.  Each party specifically reserves any and all rights or causes of action it may have both at law and in equity to require compliance with any provision of this agreement.  Each party reserves the right to enforce or refrain from enforcing against another party the terms of this agreement as it sees fit and failure to enforce does not act to excuse future breaches.

### SECTION 8.  GENERAL PROVISIONS.

**A.  Amendments.**  Either party to this agreement may request that it be amended, whereupon the parties agree to consult to consider such amendments.  Any amendment to this agreement shall become effective when signed by each party unless its terms provide for a different effective date.

**B.  Integration.**  This agreement contains the entire agreement and understanding between the parties with respect to the subject matter contained herein, thereby merging and superseding all prior agreements and representations by the parties with respect to such subject matter.

**C.  Governing Law.**  This agreement shall be governed by and construed in accordance with the laws of the United States as may be applicable.

**DRAFT**

**D.  Interpretation.**  In the event an ambiguity or question of intent or interpretation arises, this agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of authorship of any of the provisions of this agreement.  Any reference to any Federal, state, interstate, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, as they may have been amended from time to time, unless the context requires otherwise.

**E.  Headings and Titles.**  The headings or section titles contained in this agreement are inserted solely for convenience and do not constitute a part of this agreement between the parties, nor should they be used to aid in any manner in the construction of this agreement.

**F.  Severability.**  If any term, provision, or condition of this agreement is held to be invalid, void, or unenforceable by a governmental authority and such holding is not or cannot be appealed further, then such invalid, void, or unenforceable term, provision, or condition shall be deemed severed from this agreement and all remaining terms, provisions, and conditions of this agreement shall continue in full force and effect.  The parties shall endeavor in good faith to replace such invalid, void, or unenforceable term, provision, or condition with valid and enforceable terms, provisions, or conditions which achieve the purpose intended by the parties to the greatest extent permitted by law.

**G.  Waivers; Remedies Cumulative.**  There is no implied waiver of rights under this agreement.  No failure or delay on the part of a party in exercising any of its rights under this agreement or in insisting upon strict performance of provisions of this agreement, no partial exercise by either party of any of its rights under this agreement, and no course of dealing between the parties shall constitute a waiver of the rights of any party under this agreement, other than the requirement to raise a matter of breach within 30 days of discovery.  Any waiver shall be effective only by a written instrument signed by the party granting such waiver, and such waiver shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply with this agreement.  The remedies provided in this agreement are cumulative and not exclusive of any remedies provided by law.

**H.  CFIUS.**  Nothing in this agreement shall relieve Orsted or its successors or assigns from complying with 31 CFR part 800 (Mergers, Acquisitions, and Takeovers by Foreign Persons) nor prevent or limit the parties from communicating in any form with CFIUS.

**I.  Anti-Deficiency.**  For the DoD parties, this agreement is subject to the availability of appropriated funds and sufficient resources.  No provision in this agreement shall be interpreted to require obligation or payment of funds in violation of the Anti-Deficiency Act, 31 U.S.C. section 1341.

**J.  Disclosure.**  The parties may freely disclose this agreement with any person or entity, and DoD will post the agreement on the Siting Clearinghouse website.  Orsted may mark any part of any document it believes to be proprietary or competition sensitive that it wants DoD or the DAF to exempt from disclosure.  The DoD parties will only disclose any such marked information in accordance with the provisions of 5 U.S.C. section 552 (the Freedom of Information Act).

**DRAFT**

**K.  No Third Party Beneficiaries.**  Nothing in this agreement, express or implied, is intended to give to, or shall be construed to confer upon, any person not a party any remedy or claim under or by reason of this agreement.  This agreement shall be for the sole and exclusive benefit of the parties and their respective successors and assigns.

**L.  Full and Complete Satisfaction.**  The completion of the obligations of each of the parties under this agreement constitute the full and complete satisfaction of those obligations.

**M.  Other Federal Agencies.**  This agreement does not bind any Federal agency, other than the DoD parties, nor waive required compliance with any law or regulation.

**N.  Signature/Counterparts.**  The parties represent and warrant that the signatories below have authority to sign on behalf of and bind each respective party, and that no other signature is required to bind that party.  This agreement may be executed in several counterparts, each of which shall be deemed an original, all of which shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have executed and delivered this agreement.

**FOR THE DEPARTMENT OF DEFENSE**

_____            _____
Steven J. Morani                                          Date
Principal Deputy Assistant Secretary of Defense
for Sustainment (Logistics)
Acting Assistant Secretary of Defense for Sustainment


**FOR ORSTED**

_____            _____
Edward G. LeBlanc                                      Date
Head of Marine Affairs, Orsted Americas
Authorized Person

# DRAFT

## APPENDICES

A.                                    Sample Orsted Mariners' Briefing
B.                                    Sample Orsted Survey Forecast

**Commented [APB4]:** Matt, see samples enclosed in my email



# EXHIBIT 6

**From:**         Laura Gould
**Sent:**         Thursday, March 14, 2024 4:43 PM
**To:**          Daniel.j.hurley.ctr@us.navy.mil; matthew.senska@navy.mil
**Cc:**          Ashley Patterson Beaty; tom.hicks@h4egroup.com; Colin Macomber
**Subject:**      Orsted Offshore Windfarm Survey Schedule-March
**Attachments:**  Orsted Offshore Windfarm Surveys.pdf

Dear Mr. Senska and Mr. Hurley,

In accordance with the Conditions of Construction and Operations Plan Approval for Ørsted's Offshore Wind Farm Projects, South Fork Wind and Revolution Wind, Ørsted must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with survey activities taking place within any designated defense operating area, warning area, or water test area. Ørsted's windfarm projects are located within the Narragansett Defense Operating Area. Ørsted is currently in the process of negotiating an agreement with the U.S. Navy to comply with this condition. The attached survey schedule is provided to the U.S. Navy in an effort to comply with the intent of the COP Condition while an agreement is finalized.

Attached to this email is the windfarm survey schedule for March (including some projected surveys in the coming months).  Please let me know if any additional information is required. Thank you.

Reference: Conditions of Construction and Operations Plan Approval South Fork Wind and Revolution Wind, Condition 4.4:
*Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 days of entering into the agreement.*

Laura Gould

Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Region Americas

Tel. +18572082922
lgoul@orsted.com



Learn more at us.orsted.com

399 Boylston St., 12th Floor
Boston, MA 02116



Ørsted handles personal data as stated in our [Privacy Policy](#) for business relations

March 2024

**Ørsted Offshore Windfarm Site Investigation, Construction, and O&M planned survey activity 2024**

| SOUTH FORK WIND: Site Investigation Planned Surveys | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Site Investigation has completed all planned survey activity. | | | | | | | | |

| SOUTH FORK WIND: Construction Planned Surveys | | | 2024 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Activity | Vessel & Flag State | Description | Jan | Feb | March | April | May | June |
| Seabed Monitoring Survey | *Windserve Odyssey, US* | Multibeam Echo Sounder (MBES), SFW Lease Area and Export Cable Route | | | | April 8th, Approx 10 days in length | | |
| | | | | | | | | |

| REVOLUTION WIND: Site Investigation Planned Surveys | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Site Investigation has completed all planned survey activity. | | | | | | | | |

| REVOLUTION WIND: Construction Planned Surveys | | | 2024 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Activity | Vessel & Flag State | Description | Jan | Feb | March | April | May | June |
| Construction Surveys | *Bella Marie, US Windserve Odyssey, US* | MBES & SSS surveys along the REV01 Export Cable Route (from KP 0.4 to KP 12.7) | Boulder clearance* | Boulder ID Boulder clearance Nearshore campaign | Boulder clearance MP installations | MP installations | | |
| Foundation Survey | *Rockpiper, Cyprus* | MBES survey at all WTG/OSS locations where rock installation is performed for scour protection | | | Rock Installation | Rock Installation | | |
| *NEP: Northeast Program; NtM: USCG Notice to Mariners; MBES: Multibeam Echo Sounder; SSS: Side Scan Sonar; IAC: inter-Array Cables; WTG: Wind Turbine Generators; OSS: Offshore Substation; MP: Monopile* | | | | | | | | |

March 2024

| SUNRISE WIND: Site Investigation Planned Surveys | | | 2024 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Activity | Vessel & Flag State | Description | Jan | Feb | March | April | May | June |
| 3D UHRS subsurface boulders | TBC | 58 WTG locations + 1 "reshoot" | | | | | | *Tentative start end June* |
| SUNRISE WIND: Construction Planned Surveys | | | Jan | Feb | March | April | May | June |
| Activity | Vessel & Flag State | Description | Jan | Feb | March | April | May | June |
| Route Surveys | TBC | Pre-survey by Boskalis, using MBES and SSS | | | | | | 2-3 week duration starting in June |
| *UHRS: Ultra High Resolution Seismic; HDD: Horizontal Directional Drilling* | | | | | | | | |

| *Site Investigation Planned Surveys Lease 500 "Starboard Wind"* | | | 2024 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Activity | Vessel & Flag State | Description | Jan | Feb | March | April | May | June |
| *GP COP survey* | TBC | *Full suite of GP equipment; ~8 months of survey on site and along ECR* | | | | | *~Start late May* | |
| *GP COP survey – nearshore* | TBC | *TBC; potential MOB In July* | | | | | | |

*ECR: Export Cable Route*

March 2024



# EXHIBIT 7

| | |
|---|---|
| **From:** | Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil> |
| **Sent:** | Tuesday, December 10, 2024 9:15 AM |
| **To:** | Laura Gould |
| **Cc:** | matthew.senska@navy.mil |
| **Subject:** | RE: Orsted Offshore Windfarm Survey Schedule-December |

INTERNAL

INTERNAL

Ms. Gould, December schedule received and acknowledged. No questions or concerns with the activities scheduled.

Regards,

Dan Hurley
USFF N46524 Encroachment Manager
(757) 836-5040
Daniel.j.hurley.ctr@us.navy.mil

**From:** Laura Gould <LGOUL@orsted.com>
**Sent:** Wednesday, December 4, 2024 11:14 AM
**To:** Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>; matthew.senska@navy.mil
**Subject:** [Non-DoD Source] Orsted Offshore Windfarm Survey Schedule-December

INTERNAL

Dear Mr. Senska and Mr. Hurley,

In accordance with the Conditions of Construction and Operations Plan Approval for Ørsted's Offshore Wind Farm Projects, South Fork Wind and Revolution Wind, Ørsted must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with survey activities taking place within any designated defense operating area, warning area, or water test area. Ørsted's windfarm projects are located within the Narragansett Defense Operating Area. Ørsted is currently in the process of negotiating an agreement with the U.S. Navy to comply with this condition. The attached survey schedule is provided to the U.S. Navy in an effort to comply with the intent of the COP Condition while an agreement is finalized.

Attached to this email is the windfarm survey schedule for December.  Please let me know if any additional information is required. Thank you.

Reference: Conditions of Construction and Operations Plan Approval South Fork Wind and Revolution Wind, Condition 4.4:
*Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all*

*electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 days of entering into the agreement.*

Laura Gould

Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Region Americas

Tel. +18572082922
lgoul@orsted.com



Learn more at us.orsted.com

399 Boylston St., 12th Floor
Boston, MA 02116



Ørsted handles personal data as stated in our Privacy Policy for business relations

| | |
|---|---|
| **From:** | Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil> |
| **Sent:** | Thursday, January 2, 2025 11:10 AM |
| **To:** | Laura Gould; matthew.senska@navy.mil |
| **Cc:** | Colin Macomber; Jones, Michael H CIV USN USFFC (USA) |
| **Subject:** | RE: Orsted Offshore Windfarm Survey January 2025 |

INTERNAL

INTERNAL

Thank you Laura. Will review and get back to you if there are any concerns.

Regards,

Dan

**From:** Laura Gould <LGOUL@orsted.com>
**Sent:** Thursday, January 2, 2025 10:40 AM
**To:** Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>; matthew.senska@navy.mil
**Cc:** Colin Macomber <COMAC@orsted.com>
**Subject:** [Non-DoD Source] Orsted Offshore Windfarm Survey January 2025

INTERNAL

Dear Mr. Senska and Mr. Hurley,

In accordance with the Conditions of Construction and Operations Plan Approval for Ørsted's Offshore Wind Farm Projects, South Fork Wind and Revolution Wind, Ørsted must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with survey activities taking place within any designated defense operating area, warning area, or water test area. Ørsted's windfarm projects are located within the Narragansett Defense Operating Area. Ørsted is currently in the process of negotiating an agreement with the U.S. Navy to comply with this condition. The attached survey schedule is provided to the U.S. Navy in an effort to comply with the intent of the COP Condition while an agreement is finalized.

Attached to this email is the windfarm survey schedule for January 2025.  Please let me know if any additional information is required. Thank you.

Reference: Conditions of Construction and Operations Plan Approval South Fork Wind and Revolution Wind, Condition 4.4:
*Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 days of entering into the agreement.*

Laura Gould

Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Region Americas

Tel. +18572082922
lgoul@orsted.com



Learn more at us.orsted.com

399 Boylston St., 12th Floor
Boston, MA 02116



Ørsted handles personal data as stated in our <u>Privacy Policy</u> for business relations

| | |
|---|---|
| **From:** | Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil> |
| **Sent:** | Monday, March 17, 2025 8:44 AM |
| **To:** | Laura Gould; matthew.senska@navy.mil |
| **Cc:** | Colin Macomber; Jeff Westermeyer |
| **Subject:** | RE: Orsted Offshore Windfarm Survey Activity Report March 2025 |

Laura, no significant concerns for this activity.

Thanks,

V/r,

Dan Hurley
SAIC Contractor Support
USFF N46524
Encroachment Management
(757) 836-5040 (desk)
(757) 685-1459 (cell)
Daniel.j.hurley.ctr@us.navy.mil
Daniel.j.hurley1.ctr@navy.smil.mil

---

**From:** Hurley, Daniel J CTR (USA)
**Sent:** Friday, March 7, 2025 10:28 AM
**To:** Laura Gould <LGOUL@orsted.com>; matthew.senska@navy.mil
**Cc:** Colin Macomber <COMAC@orsted.com>; Jeff Westermeyer <JEFWE@orsted.com>
**Subject:** RE: Orsted Offshore Windfarm Survey Activity Report March 2025

Received Laura, thank you.

Checking with our components, will let you know of any issues/concerns.

V/r,

Dan Hurley
SAIC Contractor Support
USFF N46524
Encroachment Management
(757) 836-5040 (desk)
(757) 685-1459 (cell)
Daniel.j.hurley.ctr@us.navy.mil
Daniel.j.hurley1.ctr@navy.smil.mil

---

**From:** Laura Gould <LGOUL@orsted.com>
**Sent:** Friday, March 7, 2025 10:03 AM

**To:** Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>; matthew.senska@navy.mil
**Cc:** Colin Macomber <COMAC@orsted.com>; Jeff Westermeyer <JEFWE@orsted.com>
**Subject:** [Non-DoD Source] Orsted Offshore Windfarm Survey Activity Report March 2025

INTERNAL

Dear Mr. Senska and Mr. Hurley,

In accordance with the Conditions of Construction and Operations Plan Approval for Ørsted's Offshore Wind Farm Projects, South Fork Wind, Revolution Wind, and Sunrise Wind, Ørsted must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with survey activities taking place within any designated defense operating area, warning area, or water test area. Ørsted's windfarm projects are located within the Narragansett Defense Operating Area. Ørsted is currently in the process of negotiating an agreement with the U.S. Navy to comply with this condition. The attached survey schedule is provided to the U.S. Navy in an effort to comply with the intent of the COP Condition while an agreement is finalized.

Attached to this email is the windfarm survey schedule for February 2025.  Please let me know if any additional information is required. Thank you.

Reference: Conditions of Construction and Operations Plan Approval South Fork Wind, Revolution Wind, and Sunrise Wind, Condition 4.4:
*Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 days of entering into the agreement.*

Laura Gould

Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Commercial

Tel. +18572082922
lgoul@orsted.com



Learn more at us.orsted.com

399 Boylston St., 12th Floor
Boston, MA 02116



Ørsted handles personal data as stated in our <u>Privacy Policy</u> for business relations

**From:**               Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>
**Sent:**                 Monday, July 7, 2025 1:12 PM
**To:**                     Laura Gould; matthew.senska@navy.mil
**Cc:**                     Colin Macomber; Jeff Westermeyer
**Subject:**           RE: Orsted Offshore Windfarm Survey Activity Report July 2025

Thank you for the update Laura. I have reviewed the schedule and charts, at this time no additional information required.

Warm regards,

V/r,

Dan Hurley
SAIC Contractor Support
USFF N46524
Encroachment Management
(757) 836-5040 (desk)
(757) 685-1459 (cell)
Daniel.j.hurley.ctr@us.navy.mil
Daniel.j.hurley1.ctr@navy.smil.mil

---

**From:** Laura Gould <LGOUL@orsted.com>
**Sent:** Monday, July 7, 2025 11:47 AM
**To:** matthew.senska@navy.mil; Hurley, Daniel J CTR (USA) <daniel.j.hurley.ctr@us.navy.mil>
**Cc:** Colin Macomber <COMAC@orsted.com>; Jeff Westermeyer <JEFWE@orsted.com>
**Subject:** [Non-DoD Source] Orsted Offshore Windfarm Survey Activity Report July 2025

**INTERNAL**

Dear Mr. Senska and Mr. Hurley,

In accordance with the Conditions of Construction and Operations Plan Approval for Ørsted's Offshore Wind Farm Projects, South Fork Wind, Revolution Wind, and Sunrise Wind, Ørsted must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with survey activities taking place within any designated defense operating area, warning area, or water test area. Ørsted's windfarm projects are located within the Narragansett Defense Operating Area. Ørsted is currently in the process of negotiating an agreement with the U.S. Navy to comply with this condition. The attached survey schedule is provided to the U.S. Navy in an effort to comply with the intent of the COP Condition while an agreement is finalized.

Attached to this email is the windfarm survey schedule for July/August 2025.  Please let me know if any additional information is required. Thank you.

Reference: Conditions of Construction and Operations Plan Approval South Fork Wind, Revolution Wind, and Sunrise Wind, Condition 4.4:

*Before entering any designated defense operating area, warning area, or water test area for the purpose of carrying out any survey activities under the approved COP, the Lessee must enter into an agreement with the commander of the appropriate command headquarters to coordinate the electromagnetic emissions associated with such survey activities. The Lessee must ensure that all electromagnetic emissions associated with such survey activities are controlled as directed by the commander of the appropriate command headquarters. The Lessee must provide BOEM with a copy of the agreement within 15 days of entering into the agreement.*

Laura Gould

Best regards,
**Laura Gould**
Marine Affairs NEP Compliance Manager
NA Marine Affairs
Commercial

Tel. +18572082922
lgoul@orsted.com



Learn more at us.orsted.com

399 Boylston St., 12th Floor
Boston, MA 02116



Ørsted handles personal data as stated in our Privacy Policy for business relations