# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF COLUMBIA**

| | |
|---|---|
| REVOLUTION WIND, LLC,<br><br>       *Plaintiff*,<br><br>  v.<br><br>DOUG BURGUM, in his official capacity as<br>Secretary of the U.S. Department of the Interior;<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR;<br><br>MATTHEW GIACONA, in his official capacity<br>as Acting Director of the Bureau of Ocean Energy<br>Management;<br><br>BUREAU OF OCEAN ENERGY<br>MANAGEMENT;<br><br>KENNETH STEVENS, in his official capacity as<br>Principal Deputy Director Exercising the<br>Delegated Authorities of the Director of the<br>Bureau of Safety and Environmental Enforcement;<br>and<br><br>BUREAU OF SAFETY AND<br>ENVIRONMENTAL ENFORCEMENT,<br><br>       *Defendants*,<br>and<br><br>GREEN OCEANS,<br><br>       *Defendant-Intervenor*. | Case No.: 1:25-cv-02999-RCL<br><br><u>Expedited Hearing Requested</u> |

**THIRD DECLARATION OF MELANIE GEARON IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND STAY
PENDING REVIEW**

Pursuant to 28 U.S.C. § 1746(2), I, Melanie Gearon, declare as follows:

1.     This is my third declaration in this matter.  My role at Orsted North America Inc. ("Ørsted") as the Head of Northeast Permitting, including for the commercial-scale Revolution Wind Farm and Revolution Wind Export Cable (together, the "Project"), my familiarity with the Project's permitting and environmental review, and my relevant background experience are described in my first Declaration in Support of Revolution Wind, LLC's ("Revolution Wind") Motion for a Preliminary Injunction and Stay Pending Review of Department of the Interior Bureau of Ocean Energy Management's ("BOEM") August 22, 2025 Order "to halt all ongoing activities related to the Revolution Wind Project on the outer continental shelf (OCS)" (the "First Stop Work Order").  *See* Dkt. 9-1 at ¶¶ 1-6.

2.     I have reviewed the December 22, 2025 Director's Order issued by the Acting Director of BOEM to Revolution Wind "to suspend all ongoing activities related to the Revolution Wind Project on the Outer Continental Shelf for the next 90 days for reasons of national security" ("the Second Stop Work Order").  I have also reviewed the December 22, 2025 press release posted on the Department of the Interior's website titled, "The Trump Administration Protects U.S. National Security by Pausing Offshore Wind Leases".[1]

3.     I execute this Declaration in support of Revolution Wind's second Motion for a Preliminary Injunction and Stay Pending Review in this case based on my personal knowledge of the matters referred to herein and, if called upon to do so, could and would testify truthfully thereto. I am over 18 years of age and competent to testify about the matters set forth herein.

---

[1] U.S. Department of the Interior, The Trump Administration Protects U.S. National Security by Pausing Offshore Wind Leases (Dec. 22, 2025), available at https://www.doi.gov/pressreleases/trump-administration-protects-us-national-security-pausing-offshore-wind-leases.

4.    Throughout construction, including since this Court enjoined the First Stop Work Order on September 22, 2025, Revolution Wind has continued to participate in routine meetings with BOEM and the Bureau of Safety and Environmental Enforcement ("BSEE"), approximately bi-weekly, to discuss construction updates, plans, reports, mitigation agreements and other matters relating to the Project, with the exception of the period of time that the U.S. Federal Government shutdown from October 1, 2025 to November 12, 2025.  The bi-weekly meeting scheduled for October 1, 2025 did occur (i.e. the first day of the shutdown), however, only BSEE attended. The most recent of these bi-weekly meetings was held with BOEM and BSEE on December 10, 2025. Five of these meetings have been held since the First Stop Work Order was enjoined, and each meeting typically lasts thirty minutes to an hour.  During these meetings neither BOEM nor BSEE raised any national security concerns.  Prior to the Second Stop Work Order, Revolution Wind had continued construction and development of the multi-billion dollar Project in reliance this ongoing coordination with BOEM and BSEE.

5.    Throughout 2025, including since the First Stop Work Order was enjoined, Ørsted's Marine Affairs team has also continued to meet approximately weekly with the United States Coast Guard ("USCG") for general check-ins, even during the U.S. Federal Government shutdown period (October 1 – November 12), regarding all of Ørsted's U.S. projects, including the Revolution Wind Project.  Representatives from BOEM, BSEE, and the National Oceanic and Atmospheric Administration were frequently in attendance at USCG's invitation.  The most recent of these weekly meetings were held with USCG on December 15, 2025.  Thirteen of these meetings have been held since the First Stop Work Order was enjoined, and each meeting typically lasts fifteen to thirty minutes.  During these meetings, neither USCG nor any other agency attending raised any national security concerns.  Prior to the Second Stop Work Order, Revolution Wind had

continued construction and development of the Project in reliance this ongoing coordination with USCG and other agencies.

6.    Throughout 2025, including since the First Stop Work Order was enjoined, the Revolution Wind certification team continued to meet regularly, typically weekly, with BSEE to discuss construction updates, design and installation compliance, and aspects of the certification and verification process, even during the U.S. Federal Government shutdown period (October 1 – November 12, 2025). The certification and verification process refers to the activities carried out by the Project's Certified Verification Agent (DNV Renewables Certification), as required under BSEE's regulations. *See* 30 C.F.R. § 285.708. Discussions focus on offshore inspections to verify functionality of the critical safety systems and equipment, appropriate documentation regarding facility fabrication, design and installation, and satisfaction of safety and engineering-related conditions in Revolution Wind's Construction and Operations Plan. The last weekly meeting was held on December 16, 2025. Thirteen of these meetings have been held since the First Stop Work Order was enjoined, and each meeting typically lasts thirty minutes. During these meetings, BSEE never raised any national security concerns. Revolution Wind has continued construction and development of the Project in reliance this ongoing coordination with BSEE.

7.    The many significant benefits from the Project are described in detail in my prior Declaration. *See* Dkt. 9-1, ¶¶ 42-48. As explained in the Project's Final Environmental Impact Statement ("FEIS"), the Project is anticipated to create thousands of full-time equivalent jobs through direct, indirect, and induced effects of the Project, during its construction, and an estimated 236 full-time equivalent jobs annually for the Project's operations and maintenance work. Dkt. 9-1, ¶ 46. Project delay or cancellation puts these jobs at risk. The Second Stop Work Order has

already disrupted the work of many.  Since the Second Stop Work Order, approximately 200 workers, from both offshore vessels put on standby and onshore port facilities, have been idled.

8.    The New England grid operator, ISO New England Inc. ("ISO NE") is aware of the Second Stop Work Order and has issued a statement acknowledging that "Revolution Wind is . . . largely complete and the ISO anticipates the project to come online in 2026" and that the Project, along with Vineyard Wind, which also received a stop work order, is "included in [ISO NE's] near-term and future modeling and analyses to ensure adequate electricity for New England."[2]  In its statement, ISO NE explained that the Projects "are particularly important to system reliability in the winter when offshore wind output is highest and other forms of fuel supply are constrained."[3] ISO NE also noted that "canceling or delaying [the Projects] will increase costs and risks to reliability in our region."[4]  Relatedly, ISO NE explained that "delays of new generating resources also will adversely affect New England's economy and industrial growth, including potential future data centers."[5]

9.    According to Connecticut's Department of Energy & Environmental Protection ("DEEP"), Revolution Wind is expected to provide cost savings to Connecticut and New England ratepayers "[b]y providing a new source of low-marginal cost power in New England[,]" further "caus[ing] wholesale energy and capacity market costs in ISO New England to be lower."[6] "Regionally, these wholesale market benefits from Revolution Wind are expected to be in the

---

[2] ISO New England statement on Department of the Interior offshore wind announcement (Dec. 22, 2025), available at https://isonewswire.com/2025/12/22/iso-new-england-statement-on-department-of-the-interior-offshore-wind-announcement/.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *See* Dkt. 9 at 56, Revolution Wind's Motion for a Preliminary Injunction and Stay Pending Review of First Stop Work Order (citing Decl. of Comm'r Katherine S. Dykes ¶ 17, *State of New York v. Trump*, No. 25-cv-11221-WGY, Dkt. 211 (D. Mass filed Aug. 28, 2025)).

hundreds of millions of dollars each year, of which approximately 25% of the benefits will accrue to Connecticut ratepayers, based on [the] state's share of total regional load."[7]  DEEP also stated that "[b]y 2028, these wholesale market savings are estimated to reach roughly $500 million dollars a year."[8]

---

[7] *Id.*
[8] Connecticut Department of Energy & Environmental Protection, "DEEP Preliminary Estimates of Energy Cost Impacts Associated with Revolution Wind Stop Work Order," (Sept. 9, 2025), available at https://portal.ct.gov/-/media/deep/energy/procurements/deep-preliminary-estimates-of-energy-cost-impacts-associated-with-revolution-wind-stop-work-order.pdf.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746(2) that the foregoing is true and correct.

Executed on December 31, 2025 at Grosse Pointe Farms, Michigan.

Melanie Gearon