# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| REVOLUTION WIND, LLC,<br><br>   *Plaintiff*,<br><br> v.<br><br>DOUGLAS J. BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior;<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR;<br><br>MATTHEW GIACONA, in his official capacity as Acting Director of the Bureau of Ocean Energy Management;<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT;<br><br>KENNETH STEVENS, in his official capacity as Principal Deputy Director Exercising the Delegated Authorities of the Director of the Bureau of Safety and Environmental Enforcement; and<br><br>BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT,<br><br>   *Defendants*,<br><br>and<br><br>GREEN OCEANS,<br><br>   *Defendant-Intervenor*. | Case No.: 1:25-cv-02999-RCL |

**REBUTTAL DECLARATION OF EDWARD LEBLANC IN SUPPORT OF PLAINTIFF REVOLUTION WIND, LLC'S MOTION FOR A PRELIMINARY INJUNCTION AND STAY PENDING REVIEW**

Pursuant to 28 U.S.C. § 1746(2), I, Edward LeBlanc hereby declare as follows:

1.      This is my third declaration submitted in this matter. My role at Orsted North America Inc. ("Ørsted") as the Head of Marine Affairs, including for the commercial-scale Revolution Wind Farm and Revolution Wind Export Cable (together, the "Project"), my experience directing and overseeing a range of activities, such as de-conflicting offshore wind project construction and operations with other uses of the seas, compliance with navigational safety requirements, coordination with the U.S. Coast Guard, Department of the Navy ("U.S. Navy"), Department of the Air Force ("U.S. Air Force"), the Department of War, and the Federal Aviation Administration, and my relevant background and experience (including my service in the military) are described in my previously-filed Rebuttal Declaration in Support of Revolution Wind, LLC's ("Revolution Wind") Reply in Support of its Motion for a Preliminary Injunction and Stay Pending Review of Department of the Interior, Bureau of Ocean Energy Management's ("BOEM") August 22, 2025 Order "to halt all ongoing activities related to the Revolution Wind Project on the outer continental shelf (OCS)" (the "First Stop Work Order"). See Dkt. 31-14 at ¶¶ 1-6. This Court granted Revolution Wind's Motion for Preliminary Injunction and Stay Pending Review and enjoined the First Stop Work Order on September 22, 2025. Dkt. 36.

2.      This Rebuttal Declaration builds on my Second Declaration of Edward Leblanc in Support of Plaintiff's Motion for a Preliminary Injunction and Stay Pending Review. Dkt. 48-4. I have reviewed the Federal Defendants' Opposition to Revolution Wind's Motion for Preliminary Injunction, the declaration of the U.S. Department of the Interior's Deputy Assistant Secretary for Land and Minerals Management Jacob Tyner and the exhibits attached thereto, and the declaration of the Deputy Under Secretary of War for Acquisition and Sustainment, Dale R. Marks.

3.      I execute this Rebuttal Declaration in support of Revolution Wind's Motion for a

Preliminary Injunction and Stay Pending Review regarding the Second Stop Work Order in this case based on my personal knowledge of the matters referred to herein and, if called upon to do so, could and would testify truthfully thereto. I am over 18 years of age and competent to testify about the matters set forth herein.

4. As I explained in my Second Declaration in this case, Ørsted has extensive experience worldwide working with military and national security governmental agencies (such as the North Atlantic Treaty Organization), including, but not limited to, mitigating radar interference and potential threats from adversarial actors associated with offshore facilities, including offshore wind facilities. This experience includes offshore the United Kingdom (where thousands of offshore wind facility turbines are located), including more than 1,000 installed by Ørsted alone, Northern Europe, the Baltics, Asia and the United States.

5. Ørsted has and continues to work cooperatively with military and national security governmental agencies in multiple countries to identify measures to meet the specific needs of those agencies. There are a multitude of readily available tried-and-tested solutions that can be employed to mitigate interference with military defense and national security capabilities. Ørsted has first-hand experience of a range of both land-based and offshore measures.

6. Ørsted regularly works with military and national security governmental agencies to identify and deploy mitigation or enhancement measures during the offshore wind facility's design phase. Ørsted also has experience installing and deploying measures at operational offshore wind facilities and those under construction. Ørsted, in partnership with international defense contractors Terma and SAAB, installed and successfully tested supplementary infill radar on Ørsted's Hornsea One offshore wind facility—which was already in operation, and was the largest offshore wind facility in the world at the time.

7.      Thus far, neither the Department of the Interior nor the Department of War has granted Ørsted's requests for access to the information on which BOEM relied in issuing the Order, including not granting access to three U.S. citizens with qualified security clearances, including a retired Coast Guard Vice Admiral and a 27-year Navy veteran who has a surface warfare background and experience in surveillance and missile defense, and who is employed by of one of the international defense contractors with which Ørsted partnered on Hornsea One. In my decades of experience, I have never seen an instance in which the federal government perceived a threat involving critical energy infrastructure or national security concerns and failed to engage with the company about those concerns.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746(2) that the foregoing is true and correct.

Executed on January 10, 2026, at Naples, Maine.

_____
Edward LeBlanc