**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| REVOLUTION WIND, LLC, | |
| *Plaintiff*, | |
| v. | Case No.: 1:25-cv-02999-RCL |
| DOUGLAS J. BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior, *et al.*, | |
| *Defendants*, | |
| and | |
| GREEN OCEANS, | |
| *Intervenor-Defendant*. | |
| STATE OF RHODE ISLAND, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.: 1:25-cv-04328-RCL (consolidated) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | |
| *Defendants*. | |

**REVOLUTION WIND, LLC'S OPPOSITION TO FEDERAL DEFENDANTS' MOTION
FOR EXTENSION OF TIME TO LODGE THE ADMINISTRATIVE RECORDS**

Plaintiff Revolution Wind, LLC ("Revolution Wind") seeks to invalidate two unlawful orders issued on August 22, 2025 and December 22, 2025 by the Department of the Interior's Bureau of Ocean Energy Management ("BOEM"), suspending Revolution Wind Project activities on the Outer Continental Shelf ("First Stop Work Order" and "Second Stop Work Order," respectively). This Court stayed and preliminarily enjoined the First Stop Work Order, but that

did not stop BOEM from issuing the Second Stop Work Order.  This Court, like every other court that has considered the nearly identical December 2025 stop work orders, has also now preliminarily enjoined the Second Stop Work Order, allowing construction to resume.  But both the First Stop Work Order and Second Stop Work Order, along with the December 2025 orders issued to other offshore wind projects, are key steps in an overall path of continuous, successive attempts, over the course of nearly a year, and purportedly based on the same overbroad and legally incorrect interpretation of the governing statute, to achieve the Administration's publicly-stated goal of stopping offshore wind by halting construction.

This case was first filed on September 4, 2025, over six months ago.  Dkt. 1.  After multiple requests to extend the time to answer, *see* Dkts. 40, 66, thereby delaying production of the administrative record as required by the local rules, Federal Defendants now expressly ask this Court to extend by 25 days their March 23, 2026 deadline to produce the administrative records for the First and Second Stop Work Orders to the parties and to file the certified index of the administrative records.  Federal Defendants currently argue that the Second Stop Work Order expires on March 22, 2026, despite having previously acknowledged that the order's text means it can be renewed indefinitely.  And Federal Defendants ignore the fact that the First Stop Work Order has no end date.  Although Federal Defendants argue that an extension will allow for "mitigation" discussions between Federal Defendants, Revolution Wind, and the Department of War, both Federal Defendants and the Department of War remain unwilling to discuss the purported national security concerns or potential "mitigation" in any meaningful way.  Specifically, as of the date of this filing, Revolution Wind has yet to receive unclassified summaries of the information allegedly supporting the Second Stop Work Order, the Department of War has refused to disclose the classified information to Revolution Wind's representatives who

2

hold the requisite security clearances, and neither the Department of War nor BOEM has provided any relevant new information or otherwise meaningfully engaged with Revolution Wind, even after Revolution Wind provided additional information on radar capabilities at BOEM's request. Indeed, in the now close to three months that have passed since the Second Stop Work Order was issued without notice or process, no federal representative has suggested any measure for consideration by Revolution Wind. Nor have they responded to materials submitted by Revolution Wind on potential radar-capability enhancements that could address the concerns that Secretary Burgum has articulated publicly, a refusal to engage that cannot be justified by restrictions on classified information.

Federal Defendants' motion is a thinly veiled attempt to prevent judicial scrutiny of the unlawful First and Second Stop Work Orders and Federal Defendants lack good cause to support their request. Federal Defendants have identified no cognizable harm that they will suffer in the absence of an extension; the only currently-scheduled deadline is to prepare the administrative records consistent with local rule requirements—hardly a burdensome task given the amount of time that has passed since Revolution Wind first filed its complaint and that the Government has already filed administrative records in two other offshore wind cases challenging similar stop work orders. Revolution Wind would be harmed if Federal Defendants are permitted to impede the litigation process with yet another almost month-long extension, particularly based upon the speculative assertions made here. For these reasons, and those set forth below, this Court should deny the requested extension.

## BACKGROUND

The Revolution Wind Farm and Export Cable (together, the "Project") constitute an offshore wind energy project located on the Outer Continental Shelf that is now delivering electric

power to the New England electric grid.[1]  Upon completion of construction and commissioning it will deliver substantial additional energy necessary to support reliability and expected economic growth in New England, particularly in Rhode Island and Connecticut, where it will provide enough energy to power more than 350,000 homes.  Am. Compl. ¶¶ 4, 11.  In addition to providing reliable clean energy, the Project has employed more than 2,000 people to date across construction, manufacturing, shipbuilding, and operations, and will create hundreds of additional jobs over the lifetime of the Project, along with other investments in the community.  *Id.* ¶ 11.  Indeed, to date, more than 800 local union labor full-time equivalents have worked on the construction of the Project.  *Id.*

Despite the substantial anticipated benefits of the Project and the billions of dollars invested by Revolution Wind in reliance on Federal Defendants' consensus decision to permit the Project more than two years ago, the Project has been under constant threat for over a year since the Administration started its campaign to end offshore wind in the United States.  *Id.* ¶¶ 12, 12-32.

Prior to the issuance of the First and Second Stop Work Orders against Revolution Wind, this Administration tried to halt another offshore wind project.  The first illegal stop work order against a fully-permitted offshore wind project was issued in April 2025, when BOEM issued a stop work order halting construction for a month on the Empire Wind Project due to purported concerns raised by the National Oceanic and Atmospheric Administration.  *Id.* ¶ 144.  BOEM subsequently amended that order a month later to allow construction to proceed.  *Id.*  The next stop work order was issued against Revolution Wind on August 22, 2025, when BOEM issued an unlawful stop work order halting offshore construction on the Project, including on specious

---

[1] Press Release, *Revolution Wind Begins Delivering Power to New England*, https://revolution-wind.com/news/2026/03/revolution-wind-begins-delivering-power-to-new-england (Mar. 13, 2026).

national security grounds. *Id.* ¶ 2. That Order (the First Stop Work Order issued to this Project) was swiftly enjoined by this Court as the "height of arbitrary and capricious action." Tr. of Prelim. Inj. Hrg. 41:18-19, Dkt. 39. The Administration's third attempt included a round of nearly-identical December 2025 stop work orders (issued to five separate offshore wind projects), all of which have been enjoined or otherwise stayed. These actions, including the First and Second Stop Work Orders at issue here, are all part of a pattern of Federal Defendants' continued unlawful conduct targeting offshore wind.[2] In all instances, BOEM has claimed that the orders are based on Subsection 8(p) of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1337(4) ("OCSLA")—although that justification was notably absent from the actual text of the most recent orders.

## LEGAL STANDARD

In determining whether to grant a motion to extend the deadline for production of the administrative record and filing of the certified index, the Court must determine whether Federal Defendants have established "good cause" for the extension. Fed. R. Civ. P. 6(b)(1). "What constitutes good cause necessarily varies with the circumstances of each case." *United States v. HC2, Inc.*, NO. 1:21-cv-1197 (JDB), 2026 WL 657173, at *1 (D.D.C. Mar. 9, 2026) (internal quotation marks omitted). However, good cause generally exists "if the party seeking relief can show that the deadlines cannot reasonably be met despite the party's diligence." *Watt v. All Clear*

---

[2] Just four days before the Second Stop Work Order at issue in this case was signed, the U.S. District Court for the District of Massachusetts entered a judgment declaring unlawful and setting aside the Administration's pause on issuing all wind energy authorizations that Defendants had employed pursuant to President Trump's executive memorandum titled "Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects," 90 Fed. Reg. 8363 (Jan. 20, 2025). Judgment, *New York v. Trump*, No. 1:25-cv-11221-PBS (D. Mass. Dec. 18, 2025), Dkt. 240. The Government has filed an appeal of that judgment. *See New York, et al. v. Trump, et al.*, No. 26-1174 (1st Cir.).

*Business Solutions, LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012) (internal quotation marks omitted).

**ARGUMENT**

Federal Defendants lack good cause to extend the relevant administrative record deadline in this case for close to another month. Here, Federal Defendants have made no attempt to show that the administrative record deadline "cannot reasonably be met despite [Federal Defendant's] diligence." *Watt*, 840 F. Supp. 2d at 326 (internal quotation marks omitted). This is unsurprising, as such a claim would be specious given that Federal Defendants have already provided the administrative record in two similar cases challenging stop work orders, which are virtually identical to each other and relatively short. *See Empire Leaseholder LLC v. Burgum*, No. 1:26-cv-00004, Dkt. 40-2 (D.D.C. Feb. 13, 2026); *Vineyard Wind 1 LLC v. U.S. Department of the Interior*, No. 1:26-cv-10156-BEM, Dkt. 86-1 (D. Mass. March 6, 2026), both attached hereto as Exhibit A. Federal Defendants simply argue that some claims might be "mooted" later this month, and that Federal Defendants need to conserve their resources for purported "discussions" regarding "mitigation measures." Mot. at 3. But Federal Defendants do not take (and have never taken) the position that the First Stop Work Order expires, their own statements contradict the idea that the Second Stop Work Order "expires," and Federal Defendants have refused to discuss radar concerns or enhancements in any meaningful way with Revolution Wind's cleared representatives.

No good cause exists to grant Federal Defendants' requested extension and, as such, this motion should be denied.

## I.    GRANTING AN EXTENSION WOULD NOT PROMOTE JUDICIAL ECONOMY.

Federal Defendants argue that Revolution Wind's claims are "likely to be mooted or impacted by the ongoing administrative proceeding and any future BOEM decision." Mot. at 3.

6

At the threshold, this argument makes no sense, because it ignores the First Stop Work Order, which is only halted by the existing preliminary injunction, and would remain in effect regardless of whether the Second Stop Work Order "expires."  In any event, Federal Defendants' justification rests on two distinct fictions.  **First**, Federal Defendants argue that the Second Stop Work Order "expires" on March 22, 2026.  Mot. at 2.  But Federal Defendants' own statements belie that assertion.  Given that the Second Stop Work Order states that "BOEM may further extend" the suspension period, Am. Compl., Ex. B, Dkt. 52-2, in response to a question from this Court at oral argument, counsel for Federal Defendants conceded that the Stop Work Order could extend "forever."  Tr. at 29:2-7, Dkt. 65.

**Second**, Federal Defendants suggest that a stay would promote judicial economy because the parties are "engaged" in discussions regarding measures to address the government's purported concerns and "it is likely the parties would be able to explore a resolution of at least some of Plaintiffs' claims without further litigation."  Mot. 2-3.  This, unfortunately, could not be further from the truth.  Although Revolution Wind has made multiple attempts to discuss measures to address Federal Defendants' purported concerns with them, they continue to refuse meaningful engagement.  Decl. of Bryan Stockton in Support of Revolution Wind's Opp'n to Fed. Defs.' Mot. for Extension of Time to Lodge the Admin. Records ¶¶ 3-8.  Federal Defendants have not provided any information as to the substance of the purported national security threats, refused to discuss the supposed threats with Revolution Wind's experts with Top Secret/Sensitive Compartmented Information ("TS/SCI") national security clearance, and have not provided any unclassified summaries to Revolution Wind that would allow it to understand what measures would be particularly effective to address the purported concerns.  *Id.*  Nor have Federal Defendants acknowledged receipt of the information about potential radar-capability enhancements that

Revolution Wind submitted on February 23, 2026, let alone engaged with any of it. *Id.* ¶ 8. This specific refusal to engage is particularly telling, because with those materials Revolution Wind was responding to Secretary Burgum's *public* statements about his radar-related concerns. *Cf.* Supp. Compl. ¶¶ 161, 265. Accordingly, no disclosure of classified information would have been necessary for Federal Defendants to respond, and yet they still did not. Overall, it is questionable, to say the least, whether Federal Defendants ever truly intended to consider additional measures here. On February 12, 2026, the President reiterated—building upon his January remarks at a White House summit with oil executives, *see* Dkt. 62-1 at 15—that the Administration is "fighting very hard to ensure that [wind farms] don't get built," and in particular that the Administration is "trying to terminate" leases for the five under-construction projects, including Revolution Wind. *Transcript: President Trump Repeals Government Climate Change Finding, 2.12.26*, Senate Democrats (Feb. 12, 2026).[3] On March 17, 2026, the President similarly stated, "I'm proudly telling you that we're going to try and have no windmills built in the United States."[4] There is no judicial economy in staying this case without resolution on the limits of BOEM's authority under 43 U.S.C. § 1337(p) and the process due to Revolution Wind. Such a course of action would waste the resources already expended in this case and allow Federal Defendants to instead pursue another

---

[3] Transcript available at: https://www.democrats.senate.gov/newsroom/trump-transcripts/transcript-president-trump-repeals-government-climate-change-finding-21226. Video available at: https://www.youtube.com/watch?v=JnkR8MbPKaE&t=1228s.

[4] Dana Bash, Brett McGurk, *Trump Meets With Taoiseach Of Ireland Amid War With Iran; Trump: "NATO Is Making A Very Foolish Mistake"; Trump On Iran: "Not Ready To Leave Yet" But Will In "Near Future"; Trump: "Disappointed" In NATO For Not Assisting U.S. In Iran*, CNN Inside Politics (aired March 17, 2026, at 12:00 ET), video of meeting available at: https://www.whitehouse.gov/videos/president-trump-participates-in-a-bilateral-meeting-mar-17-2026/; *see also Davos 2026: Special Address by Donald J Trump, President of the United States of America*, World Economic Forum (Jan. 21, 2026), https://www.weforum.org/stories/2026/01/davos-2026-special-address-donald-trump-president-united-states-america/ ("Instead of building ineffective money losing windmills, *we're taking them down* and not approving any.") (emphasis added).

adverse and unlawful action against the Project (based on yet another post-hoc rationalization) that would force Revolution Wind to seek relief from this Court again, as Federal Defendants tacitly acknowledge, Mot. at 3. Furthermore, Revolution Wind's challenge to the First Stop Work Order would remain active.

Underlying Federal Defendants' argument is the supposition that Revolution Wind's case will somehow become "moot[]" as a result of yet-to-be-determined and unspecified action that may or may not occur on or after March 22, 2026. Mot. at 3. But courts in this district routinely reject such speculative arguments in connection with motions to stay, which is effectively what Federal Defendants seek here. Indeed, in response to Federal Defendants' stay request in Empire Wind's challenge to its December 2025 stop work order, Judge Nichols found that "the government's concern about potential future actions is too speculative, at this stage, for considerations of judicial economy to weigh in its favor." Minute Order, *Empire Leaseholder LLC v. Burgum*, 1:26-cv-00004-CJN (Mar. 9, 2026). And Secretary Burgum and this Administration's repeated unlawful efforts to halt all offshore wind projects undermines Federal Defendants' arguments. *Supra* at 4-5, 8. While this issue would be litigated at the appropriate time, these facts—including the repeated, improper invocation of OCSLA Subsection 8(p)—present a textbook case of agency action that is "capable of repetition" and "yet evading" final review on the merits. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322-23 (D.C. Cir. 2009).

## II.     FEDERAL DEFENDANTS HAVE FAILED TO SHOW DILIGENCE IN MEETING THE DEADLINE TO PRODUCE THE ADMINISTRATIVE RECORD.

Federal Defendants argue that an extension would allow them "to focus their limited resources on the additional review envisioned by the December Suspension Order instead of litigation." Mot. at 3-4. But Federal Defendants fail to "explain how defense of this suit, which

falls largely to lawyers at the Department of Justice, will divert substantial . . . resources" from the agency defendants. *See Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 22 (D.D.C. 2019). It is difficult to imagine why indexing the administrative record would be time-intensive given that Federal Defendants have openly admitted to relying on the same evidence for all five December 2025 stop work orders issued to different projects, and that Federal Defendants have already filed a certified index of the administrative record in *Empire Leaseholder LLC v. Burgum*, No. 1:26-cv-00004, Dkt. 40 (D.D.C. Feb. 13, 2026), and in *Vineyard Wind 1 LLC V. U.S. Department of the Interior*, No. 1:26-cv-10156-BEM, Dkt. 86-1 (D. Mass. March 6, 2026). Those indices reflect nearly identical administrative records, and Federal Defendants filed the *Vineyard* record on March 6, 2026, after seeking a stay (which was rejected days later) in the *Empire Wind* case and seeking an extension in this case. As this Court has recognized, "if anything, the existence of parallel litigation in a more advanced posture should lessen the work the agency must complete in this case." *Gona v. U.S. Citizenship & Immigr. Servs.*, No. 1:20-CV-3680-RCL, 2021 WL 1226748, at *1 (D.D.C. Apr. 1, 2021) (Lamberth, J.); *see also* Minute Order, *Empire Leaseholder LLC v. Burgum*, 1:26-cv-00004-CJN (Mar. 9, 2026). And with respect to the administrative record associated with Revolution Wind's challenge to the First Stop Work Order, Federal Defendants have had many more months to pull that together.

Federal Defendants' argument that they will have to divert resources from engaging with Revolution Wind and the Department of War regarding enhancements to existing capabilities is not credible. As discussed, Federal Defendants and the Department of War have not been engaged in any meaningful discussions with Revolution Wind, despite Revolution Wind's repeated outreach and attempts, including during extensive periods without any litigation deadlines. *See supra* at 7-8.

**CONCLUSION**

For the reasons set forth herein, the Court should deny Federal Defendants' motion for an extension.  Pursuant to Local Civil Rule 7(c), a proposed order is attached.


Dated:  March 20, 2026                    Respectfully submitted,

                                           */s/ Janice M. Schneider*

                                          Janice M. Schneider (D.C. Bar No. 472037)
                                          Stacey L. VanBelleghem (D.C. Bar No. 988144)
                                          Roman Martinez (D.C. Bar No. 1001100)
                                          Devin. M. O'Connor (D.C. Bar No. 1015632)
                                          Rachael L. Westmoreland (D.C. Bar No. 90034032)
                                          LATHAM & WATKINS LLP
                                          555 11th Street NW, Suite 1000
                                          Washington, D.C. 20004
                                          Tel:  (202) 637-2200
                                          Fax:  (202) 637-2201
                                          Email: janice.schneider@lw.com
                                                  stacey.vanbelleghem@lw.com
                                                  roman.martinez@lw.com
                                                  devin.o'connor@lw.com
                                                  rachael.westmoreland@lw.com

                                          *Counsel for Plaintiff Revolution Wind, LLC*